IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

CASE NO.: 19-15160-EE

---

BRIAN CULVER,
Plaintiff/Appellant,

v.

SHANNON WITHERS, ET AL
Defendants/Appellees.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA, PANAMA CITY
DIVISION
CASE NO.:  5:18-cv-160-TKW-HTC

---

SUPPLEMENTAL APPENDIX OF DEFENDANTS/APPELLEES

---

**LAWRENCE KEEFE**
United States Attorney


*/s/ Herbert S. Lindsey*                    .
Herbert S. Lindsey
Assistant United States Attorney
Texas Bar No.00784476
111 North Adams Street
Fourth Floor
Tallahassee, FL 32301
(850) 942-8430
Herbert.lindsey@usdoj.gov

# Index

# INDEX of DEFENDANTS/APPELLEES SUPPLEMENTAL APPENDIX

Docket/Tab #

| | |
|---|---|
| Docket Sheet | DS |
| Complaint | 1 |
| Motion to Dismiss Plaintiff's Complaint | 32 |
| First Amended Complaint | 37 |
| Motion to Dismiss Amended Complaint | 40 |
| Order and Report and Recommendation | 43 |
| Plaintiff's Objections to the Magistrate's Report and Recommendation | 45 |
| Order Adopting Report and Recommendation | 46 |
| Second Report and Recommendation | 48 |
| Plaintiff's Objections to Second Report and Recommendation | 49 |
| Motion for Expert Witness and Submission of Recidivism Report | 50 |
| Order Adopting Second Report and Recommendation | 51 |
| Notice of Appeal | 53 |
| Motion for Leave to Proceed In Forma Pauperis | 57 |
| Order Denying Motion for Leave to Proceed In Forma Pauperis | 58 |
| USCA Order Granting Motion for Leave to Proceed In Forma Pauperis | 63 |

Notes:  The appellant is proceeding pro se.  The above documents were cited in the government's brief and/or the appellant's brief.  Specifically, Doc-37 has a notation in the docket that reads, "Sealed Attachments: #1 Exhibit A1 thru G; Modified on 7/16/2019 to reflect exhibits sealed per chambers". Therefore, Exhibits A1 thru G will be placed in a sealed envelope.

# Docket Sheet

# Doc. DS

CLOSED,APPEAL,CLERK_1,R&R

# U.S. District Court
## Northern District of Florida (Panama City)
## CIVIL DOCKET FOR CASE #: 5:18-cv-00160-TKW-HTC

| | |
|---|---|
| CULVER v. WITHERS | Date Filed: 07/09/2018 |
| Assigned to: JUDGE T KENT WETHERELL II | Date Terminated: 12/09/2019 |
| Referred to: MAGISTRATE JUDGE HOPE T CANNON | Jury Demand: None |
| Case in other court:  USCA, 19-15160-E | Nature of Suit: 555 Prison Condition |
| Cause: 28:1331 Fed. Question | Jurisdiction: Federal Question |

**Plaintiff**

**BRIAN CULVER**                    represented by    **BRIAN CULVER**
                                                      26299-001
                                                      FCC YAZOO CITY
                                                      PO BOX 5000
                                                      YAZOO CITY, MS 39194
                                                      PRO SE

V.

**Defendant**

**SHANNON WITHERS**                 represented by    **HERBERT STANLEY LINDSEY**
                                                      US ATTORNEY - TALLAHASSEE
                                                      FL
                                                      NORTHERN DISTRICT OF
                                                      FLORIDA
                                                      111 N ADAMS ST
                                                      4TH FL
                                                      TALLAHASSEE, FL 32301
                                                      850-942-8430
                                                      Fax: 850-942-8424
                                                      Email: herbert.lindsey@usdoj.gov
                                                      *ATTORNEY TO BE NOTICED*

                                                      **ZACK SMITH**
                                                      US ATTORNEY - PENSACOLA FL
                                                      NORTHERN DISTRICT OF
                                                      FLORIDA
                                                      21 E GARDEN ST
                                                      STE 400
                                                      PENSACOLA, FL 32502-5675
                                                      Email: zack.smith@usdoj.gov
                                                      *TERMINATED: 04/26/2019*

**Defendant**

**STEPHANIE RUSH**
*CHIEF PSYCHOLOGIST*

represented by **HERBERT STANLEY LINDSEY**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**RAMON RIVERA**
*SOMP COORDINATOR*

represented by **HERBERT STANLEY LINDSEY**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ZACK SMITH**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MICHELLE PROULX**
*SOMP PSYCHOLOGIST*

represented by **HERBERT STANLEY LINDSEY**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ZACK SMITH**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/09/2018 | 1 | COMPLAINT against MICHELLE PROULX, RAMON RIVERA, STEPHANIE RUSH, SHANNON WITHERS, filed by BRIAN CULVER. (4 Service copies) (alb) (Entered: 07/10/2018) |
| 07/09/2018 | 2 | MOTION for Leave to Proceed in forma pauperis by BRIAN CULVER. (alb) (Entered: 07/10/2018) |
| 07/09/2018 | 3 | MOTION to Appoint Counsel by BRIAN CULVER. (alb) (Entered: 07/10/2018) |
| 07/10/2018 | 4 | Notice to Pro Se Litigant. (alb) (Entered: 07/10/2018) |
| 07/25/2018 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE CHARLES J KAHN, JR notified that action is needed Re: 1 Complaint, 2 MOTION for Leave to Proceed in forma pauperis, 3 MOTION to Appoint Counsel. (alb) (Entered: 07/25/2018) |
| 08/02/2018 | 5 | ORDER Directing Monthly Payments be made from Prison Account of Pltf BRIAN CULVER; Granting 2 Pltf's MOTION for Leave to Proceed in forma pauperis. The clerk shall assess pltf $20.61 as an initial partial filing fee. Pltf shall have thirty (30) days to submit initial partial filing fee. The clerk shall mail a copy of this order with appropriate cover letter to Marianna FCI, Administrator of Inmate Accounts. Signed by MAGISTRATE JUDGE CHARLES J KAHN, JR on 8/2/18. *Fee status updated to in forma pauperis*( Fee due by **9/1/2018**.)(mjm) Copy of order mailed to Pltf and to Administrator of Inmate Accounts at Marianna FCI. (Entered: 08/02/2018) |
| 08/20/2018 | 6 | |

| | | |
|---|---|---|
| | | Initial Partial Filing fee: $ 24.84, receipt number FLN300012159. (alb) (Entered: 08/21/2018) |
| 08/21/2018 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE CHARLES J KAHN, JR notified that action is needed Re: 6 Initial Partial Filing Fee Received. (alb) (Entered: 08/21/2018) |
| 09/14/2018 | 7 | Partial Filing fee: $ 300.00, receipt number FLN300012232 (alb) (Entered: 09/14/2018) |
| 10/16/2018 | 8 | ORDER. The clerk shall prepare a Notice of a Lawsuit and Request to Waive Service of a Summons (For Use by Prisoners and Pro Se Plaintiffs Proceeding In Forma Pauperis) form for each defendant and send the forms to plaintiff. within 21 days of the date of this order, plaintiff shall sign and return to the clerk the Notices. ( Miscellaneous Deadline for the Notices - **11/6/2018**.) (Order and forms mailed.) Signed by MAGISTRATE JUDGE CHARLES J KAHN, JR on 10/16/2018. (alb) (Entered: 10/17/2018) |
| 10/29/2018 | 9 | Partial Filing fee: $ 5.47, receipt number FLN300012335. (alb) (Entered: 10/30/2018) |
| 11/05/2018 | 10 | NOTICE of Change of Address and Correction Concerning Judges O, by BRIAN CULVER. FCC Yazoo City USP, PO Box 5000, Yazoo City MS 39194. (alb) (Entered: 11/07/2018) |
| 11/06/2018 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE CHARLES J KAHN, JR notified that action is needed Re: 8 Order. (Received Notices of Lawsuit and Request to Waive Service of Summons.) (alb) (Entered: 11/06/2018) |
| 11/08/2018 | 11 | ORDER re 10 Notice of Change of Address and Correction Concerning Judges Order. The clerk shall update the docket to reflect plaintiff's current address. Also, plaintiff is correct in that this matter is a Bivens action filed pursuant to 28 U.S.C. § 1331; it will proceed as such. Signed by MAGISTRATE JUDGE CHARLES J KAHN, JR on 11/8/2018. (alb) (Entered: 11/08/2018) |
| 11/08/2018 | 12 | ORDER. The clerk shall issue a summons for each defendant and refer the summonses, 6 copies of this order, the 1 service copies of the complaint, a completed Notice of a Lawsuit and Request to Waive Service of a Summons. (For Use by Prisoners and Pro Se Plaintiffs Proceeding In Forma Pauperis) form for each defendant, and 8 AO-399 forms (Waiver of the Service of Summons) (prepared by the clerk) to the United States Marshals Service. The clerk also shall prepare 2 copies of plaintiff's 1 complaint and 2 copies of the summons for each defendant. The clerk shall forward these documents to the USMS as well. The clerk shall refer this file to the undersigned if a waiver form is returned for insufficient address or for similar reason, if service on a defendant is returned unexecuted, or if the USMS has filed a statement of costs incurred for making personal service. the clerk shall forward to plaintiff a form for consenting to trial by the magistrate judge, with this case number written on it. (Order and forms sent as directed) ( Miscellaneous Deadline for status of summons - by **12/26/2018**.) Signed by MAGISTRATE JUDGE CHARLES J KAHN, JR on 11/8/2018. (alb) (Entered: 11/08/2018) |
| | | |

| 11/08/2018 | 13 | ORDER denying without prejudice 3 Motion to Appoint Counsel. Signed by MAGISTRATE JUDGE CHARLES J KAHN, JR on 11/8/2018. (alb) (Entered: 11/08/2018) |
| 11/16/2018 | 14 | Filing fee: $ 3.91, receipt number FLN300012395. (alb) (Entered: 11/16/2018) |
| 12/27/2018 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE CHARLES J KAHN, JR notified that action is needed Re: 12 Order. (No returns of service filed.) (alb) (Entered: 12/27/2018) |
| 02/27/2019 | 15 | SUMMONS Returned Executed MICHELLE PROULX served on 2/6/2019, answer due 4/8/2019. (alb) (Entered: 02/27/2019) |
| 02/27/2019 | 16 | SUMMONS Returned Executed RAMON RIVERA served on 2/6/2019, answer due 4/8/2019. (alb) (Entered: 02/27/2019) |
| 02/27/2019 | 17 | SUMMONS Returned Executed SHANNON WITHERS served on 2/6/2019, answer due 4/8/2019. (alb) (Entered: 02/27/2019) |
| 02/27/2019 | 18 | Summons Returned Unexecuted as to STEPHANIE RUSH. (No longer employed with BOP) (alb) (Entered: 02/27/2019) |
| 02/27/2019 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE CHARLES J KAHN, JR notified that action is needed Re: 18 Summons Returned Unexecuted. (alb) (Entered: 02/27/2019) |
| 03/05/2019 | 19 | ORDER REASSIGNING CASE. Case reassigned to MAGISTRATE JUDGE HOPE T CANNON for all further proceedings. MAGISTRATE JUDGE CHARLES J KAHN, JR no longer assigned to case. Signed by CHIEF JUDGE MARK E WALKER on 3/1/2019. (erl)**Please use the new judge's initials for all future filings: 5:18cv160-MCR/HTC. (Entered: 03/05/2019) |
| 03/06/2019 | 20 | ORDER re 1 Complaint. The clerk shall prepare a service copy of the complaint, a completed Request to Waive Service of Process Form (the NUSM-1 waiver form) and 2 Waiver of Service of Summons forms (the AO-399 form) for Defendant Stephanie Rush and forward to the USMS (specifically, Jennifer Tallarico, 401 SE 1st Avenue, 2nd floor, Gainesville, FL 32601-6285.) The USMS shall notify the Court if the waiver form is returned for insufficient address or similar reason, if service on Defendant Stephanie Rush is returned unexecuted or if Defendant Stephanie Rush has not returned a waiver of service form (AO-399 form) after 30 days from the mailing of the complaint and waiver of service forms to the Defendants last known address. ( Miscellaneous Deadline for status of service - by **4/22/2019**.) Signed by MAGISTRATE JUDGE HOPE T CANNON on 3/6/2019. (alb) Modified on 3/7/2019 documents mailed to USMS in Gainesville (alb). (Entered: 03/07/2019) |
| 03/26/2019 | 21 | Partial Filing fee: $ 15.78, receipt number FLN300012769 (alb) (Entered: 03/26/2019) |
| 04/03/2019 | 22 | NOTICE to the clerk regarding mail delay, by BRIAN CULVER. (alb) (Entered: 04/05/2019) |
| 04/05/2019 | 23 | |

| | | |
|---|---|---|
| | | NOTICE of Appearance by ZACK SMITH on behalf of MICHELLE PROULX, RAMON RIVERA, SHANNON WITHERS (SMITH, ZACK) (Entered: 04/05/2019) |
| 04/05/2019 | 24 | MOTION for Extension of Time to File Answer by MICHELLE PROULX, RAMON RIVERA, SHANNON WITHERS. (SMITH, ZACK) (Entered: 04/05/2019) |
| 04/08/2019 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE HOPE T CANNON notified that action is needed Re: 24 MOTION for Extension of Time to File Answer. Referred to HOPE T CANNON. (alb) (Entered: 04/08/2019) |
| 04/09/2019 | 25 | ORDER granting, as requested, 24 Motion for Extension of Time to Answer. Signed by MAGISTRATE JUDGE HOPE T CANNON on April 9, 2019. (amk) (Entered: 04/09/2019) |
| 04/09/2019 | | Set Deadlines/Hearings re 25 Order. MICHELLE PROULX answer due 5/8/2019; RAMON RIVERA answer due 5/8/2019; SHANNON WITHERS answer due 5/8/2019. (alb) (Entered: 04/10/2019) |
| 04/23/2019 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE HOPE T CANNON notified that action is needed Re: 20 Order. (No filings for Stephanie Rush.) (alb) (Entered: 04/23/2019) |
| 04/23/2019 | 26 | WAIVER OF SERVICE Returned Executed STEPHANIE RUSH waiver sent on 4/1/2019, answer due 7/1/2019. (alb) (Entered: 04/23/2019) |
| 04/26/2019 | 27 | NOTICE of Appearance by HERBERT STANLEY LINDSEY on behalf of SHANNON WITHERS (LINDSEY, HERBERT) (Entered: 04/26/2019) |
| 05/03/2019 | 28 | MOTION for Extension of Time to File Response/Reply *to Plaintiff's Amended Complaint* by MICHELLE PROULX, RAMON RIVERA, STEPHANIE RUSH, SHANNON WITHERS. (LINDSEY, HERBERT) (Entered: 05/03/2019) |
| 05/03/2019 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE HOPE T CANNON notified that action is needed Re: 28 MOTION for Extension of Time to File Response to Plaintiff's Amended Complaint. Referred to HOPE T CANNON. (alb) (Entered: 05/03/2019) |
| 05/06/2019 | 29 | ORDER granting, as requested, 28 Motion for Extension of Time to File Response/Reply to Plaintiff's Amended Complaint (Internal deadline for referral to judge if response not filed earlier: **6/21/2019**). Signed by MAGISTRATE JUDGE HOPE T CANNON on May 6, 2019. (amk) (Entered: 05/06/2019) |
| 06/07/2019 | 30 | DECLARATION FOR ENTRY OF DEFAULT, by BRIAN CULVER. (alb) (Entered: 06/07/2019) |
| 06/07/2019 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE HOPE T CANNON notified that action is needed Re: 30 DECLARATION FOR ENTRY OF DEFAULT. (alb) (Entered: 06/07/2019) |
| 06/10/2019 | 31 | ORDER re 30 Plaintiffs Declaration for Entry of Default. All Defendants have until **6/21/2019** in which to file a consolidated response to Plaintiff's complaint. To the extent Plaintiff's Declaration for Entry of Default (ECF Doc. 30 ) can be |

| | | |
|---|---|---|
| | | construed as a motion for entry of default, it is DENIED as premature. The clerk shall forward to Plaintiff copies of ECF Docs. 25 and 29 , along with a copy of this order. (Documents mailed as ordered.) Signed by MAGISTRATE JUDGE HOPE T CANNON on 6/10/2019. (alb) (Entered: 06/11/2019) |
| 06/18/2019 | 32 | MOTION to Dismiss *Plaintiff's Complaint* by MICHELLE PROULX, RAMON RIVERA, STEPHANIE RUSH, SHANNON WITHERS. (Internal deadline for referral to judge if response not filed earlier: **7/2/2019**). (LINDSEY, HERBERT) (Entered: 06/18/2019) |
| 06/18/2019 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE HOPE T CANNON notified that action is needed Re: 32 Defendants' Motion to Dismiss Plaintiff's Complaint. Referred to HOPE T CANNON. (alb) (Entered: 06/18/2019) |
| 06/19/2019 | 33 | ORDER re 32 MOTION to Dismiss Plaintiff's Complaint. Plaintiff shall have 14 days from the date of this order in which to respond.(Internal deadline for referral to judge if response not filed earlier: **7/3/2019**). Signed by MAGISTRATE JUDGE HOPE T CANNON on 6/19/2019. (alb) (Entered: 06/20/2019) |
| 07/05/2019 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE HOPE T CANNON notified that action is needed Re: 33 Order. (No response filed.) (alb) (Entered: 07/05/2019) |
| 07/08/2019 | 34 | MOTION for Extension of Time to Amend Complaint, by BRIAN CULVER. (alb) (Entered: 07/09/2019) |
| 07/08/2019 | 35 | NOTICE Concerning Notification Problems, by BRIAN CULVER. (alb) (Entered: 07/09/2019) |
| 07/09/2019 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE HOPE T CANNON notified that action is needed Re: 34 MOTION for Extension of Time to Amend, 35 Notice Concerning Notification Problems. Referred to HOPE T CANNON. (alb) (Entered: 07/09/2019) |
| 07/12/2019 | 36 | ORDER GRANTING 34 MOTION for Extension of Time. Plaintiff shall have until **8/1/2019** to file an amended complaint or file a response to the Defendant's motion to dismiss. Signed by MAGISTRATE JUDGE HOPE T CANNON on 7/12/2019. (alb) (Entered: 07/12/2019) |
| 07/12/2019 | | **Duplicate - ORDER granting 34 Motion for Extension of Time to Amend. Signed by MAGISTRATE JUDGE HOPE T CANNON on 7/12/2019. (erl) (Entered: 10/08/2019) |
| 07/16/2019 | 37 | FIRST AMENDED COMPLAINT against , FEDERAL BUREAU OF PRISONS, MICHELLE PROULX, RAMON RIVERA, STEPHANIE RUSH, SHANNON WITHERS, ADAM MCCORD, filed by BRIAN CULVER. (Sealed Attachments: # 1 Exhibit A1 thru G) (alb) Modified on 7/16/2019 to reflect exhibits sealed per chambers (alb). (Entered: 07/16/2019) |
| 07/16/2019 | 38 | ORDER REASSIGNING CASE. Case reassigned to JUDGE T KENT WETHERELL II for all further proceedings. JUDGE M CASEY RODGERS no longer assigned to case. Signed by CHIEF JUDGE MARK E WALKER on |

| | | |
|---|---|---|
| | | 7/16/2019. (erl)**Please use the new judge's initials for all future filings: 5:18cv160-TKW/HTC. (Entered: 07/16/2019) |
| 07/18/2019 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE HOPE T CANNON notified that action is needed Re: 37 Amended Complaint. (alb) (Entered: 07/18/2019) |
| 07/23/2019 | 39 | ORDER. The 37 First Amended Complaint is accepted and is the operative pleading in this case. The 32 MOTION to Dismiss relating to the original complaint, is, thus, DENIED WITHOUT PREJUDICE, as moot. MICHELLE PROULX answer due 8/15/2019; RAMON RIVERA answer due 8/15/2019; STEPHANIE RUSH answer due 8/15/2019; SHANNON WITHERS answer due 8/15/2019. Signed by MAGISTRATE JUDGE HOPE T CANNON on 7/23/2019. (alb) (Entered: 07/23/2019) |
| 07/23/2019 | | **Duplicate - ORDER denying 32 Motion to Dismiss. Signed by MAGISTRATE JUDGE HOPE T CANNON on 7/23/2019. (erl) (Entered: 10/08/2019) |
| 08/15/2019 | 40 | MOTION to Dismiss *Plaintiff's Amended Complaint* by MICHELLE PROULX, RAMON RIVERA, STEPHANIE RUSH, SHANNON WITHERS. (Internal deadline for referral to judge if response not filed earlier: **8/29/2019**). (LINDSEY, HERBERT) (Entered: 08/15/2019) |
| 08/16/2019 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE HOPE T CANNON notified that action is needed Re: 40 MOTION to Dismiss *Plaintiff's Amended Complaint. Referred to HOPE T CANNON. (alb) (Entered: 08/16/2019)* |
| 08/16/2019 | 41 | ORDER, re 40 MOTION to Dismiss. Plaintiff shall have until **9/6/2019** to file a response. Signed by MAGISTRATE JUDGE HOPE T CANNON on 8/16/2019. (alb) (Entered: 08/16/2019) |
| 08/26/2019 | 42 | Plaintiff's Motion in Opposition to Defendant's 40 MOTION to Dismiss filed by BRIAN CULVER. (alb) (Entered: 08/26/2019) |
| 08/26/2019 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE HOPE T CANNON notified that action is needed Re: 40 MOTION to Dismiss *Plaintiff's Amended Complaint,* 42 Response in Opposition to Motion. Referred to HOPE T CANNON. (alb) (Entered: 08/26/2019) |
| 09/24/2019 | 43 | ORDER and REPORT AND RECOMMENDATION. It is ORDERED within fourteen days from the date of this order, Plaintiff shall show cause why his claims for injunctive relief should not be dismissed as moot. And it is RECOMMENDED that Plaintiff's claims for monetary relief against Defendants be DISMISSED for failure to state a claim. re 40 MOTION to Dismiss Plaintiff's Amended Complaint. (Show Cause Response due by **10/8/2019**.) ( Internal deadline for referral to district judge if objections are not filed earlier: **10/22/2019**.) Signed by MAGISTRATE JUDGE HOPE T CANNON on 9/24/2019. (alb) (Entered: 09/25/2019) |
| 10/07/2019 | 44 | Plaintiff's Submission to Show Cause, by BRIAN CULVER re 43 Order and Report and Recommendation, by BRIAN CULVER. (alb) (Entered: 10/07/2019) |

| 10/07/2019 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE HOPE T CANNON notified that action is needed Re: 44 Plaintiff's Submission to Show Cause. (alb) (Entered: 10/07/2019) |
| 10/11/2019 | 45 | Plaintiff's Objections to the Magistrates 43 Report and Recommendations by BRIAN CULVER. (alb) (Entered: 10/11/2019) |
| 10/11/2019 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE T KENT WETHERELL II notified that action is needed Re: 45 Objection to 43 Report and Recommendations. (alb) (Entered: 10/11/2019) |
| 10/18/2019 | 46 | ORDER ADOPTING 43 REPORT AND RECOMMENDATION. The claims for monetary relief in Plaintiffs amended complaint (Doc. 37 ) are DISMISSED with prejudice. The case is referred to the magistrate judge to consider Plaintiffs response to the order to show cause and for such additional proceedings as may be necessary. Signed by JUDGE T KENT WETHERELL II on 10/18/2019. (alb) (Entered: 10/18/2019) |
| 10/23/2019 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE HOPE T CANNON notified that action is needed Re: 46 Order Adopting Report and Recommendation. (alb) (Entered: 10/23/2019) |
| 11/04/2019 | 47 | MOTION for Clarification re 46 Order Adopting Report and Recommendation, by BRIAN CULVER. (alb) (Entered: 11/05/2019) |
| 11/05/2019 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE T KENT WETHERELL II notified that action is needed Re: 47 MOTION for Clarification re 46 Order Adopting Report and Recommendation. (alb) (Entered: 11/05/2019) |
| 11/14/2019 | 48 | SECOND REPORT AND RECOMMENDATION That Plaintiff's claims for injunctive and declaratory relief be DISMISSED for Plaintiffs failure to state a claim. R&R flag set Signed by MAGISTRATE JUDGE HOPE T CANNON on 11/14/2019. Internal deadline for referral to district judge if objections are not filed earlier: 12/12/2019. (alb) (Entered: 11/14/2019) |
| 12/02/2019 | 49 | Plaintiff's OBJECTION to Magistrate's 48 Second Report and Recommendations, by BRIAN CULVER. (alb) (Entered: 12/03/2019) |
| 12/03/2019 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE T KENT WETHERELL II notified that action is needed Re: 49 Objection to Report and Recommendations, 48 Second REPORT AND RECOMMENDATION. (alb) (Entered: 12/03/2019) |
| 12/06/2019 | 50 | MOTION for Expert Witness and Submission of Recidivism Report by BRIAN CULVER. (alb) (Entered: 12/09/2019) |
| 12/09/2019 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE T KENT WETHERELL II notified that action is needed Re: 50 MOTION for Expert Witness and Submission of Recidivism Report. (alb) (Entered: 12/09/2019) |
| 12/09/2019 | 51 | ORDER ADOPTING 48 REPORT AND RECOMMENDATION. The claims for declaratory and injunctive relief in Plaintiff's amended complaint (Doc. 37 ) are DISMISSED with prejudice. The motion for clarification (Doc. 47 ) and the motion for expert witness and submission of recidivism report (Doc. 50 ) are |

| | | |
|---|---|---|
| | | DENIED as moot. Signed by JUDGE T KENT WETHERELL II on 12/9/2019. (alb) (Entered: 12/09/2019) |
| 12/09/2019 | 52 | CLERK'S JUDGMENT re 51 Order Adopting Report and Recommendation. 90 Day Deadline set for destruction of working file **3/9/2020.** (alb) (Entered: 12/09/2019) |
| 12/23/2019 | 53 | NOTICE OF APPEAL as to 51 Order Adopting Report and Recommendation, 52 Clerk's Judgment. (alb) Modified on 12/27/2019 to fix file date. (alb). (Entered: 12/27/2019) |
| 12/23/2019 | 54 | Appeal Instructions re: 53 Notice of Appeal : The Transcript Request Form is available on the Internet at http://www.flnd.uscourts.gov/forms/Attorney/ECCA_transcript_form_fillable.pdf **PLEASE NOTE** Separate forms must be filed for each court reporter. Transcript Order Form due by **1/6/2020.** (alb) (Entered: 12/27/2019) |
| 12/27/2019 | 55 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 53 Notice of Appeal. (alb) (Entered: 12/27/2019) |
| 12/30/2019 | 56 | USCA Case Number 19-15160-E and USCA PROCEDURAL LETTER re for 53 NOTICE OF APPEAL as to 51 Order Adopting Report and Recommendation, 52 Clerk's Judgment. USCA Appeal # 19-15160-E. (alb) (Entered: 01/03/2020) |
| 01/10/2020 | 57 | MOTION for Leave to Proceed in forma pauperis by BRIAN CULVER. (alb) (Entered: 01/10/2020) |
| 01/10/2020 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE HOPE T CANNON notified that action is needed Re: 57 MOTION for Leave to Proceed in forma pauperis. Referred to HOPE T CANNON. (alb) (Entered: 01/10/2020) |
| 01/14/2020 | | Reset Deadlines re 53 Notice of Appeal : Clerk to check status of Appeal on **3/6/2020.** (No transcripts.) USCA Appeal # 19-15160-E. (alb) (Entered: 01/14/2020) |
| 01/21/2020 | 58 | ORDER. Plaintiff's motion for leave to proceed in forma pauperis on appeal (ECF Doc. 57) is DENIED. Plaintiff shall pay the full appellate filing fee of $505.00 within thirty (30) days from the date of this order. The Clerk is directed to send a copy of this order to the United States Court of Appeals for the Eleventh Circuit. Signed by JUDGE T KENT WETHERELL II on 1/21/2020. (copy emailed to USCA) (sdw) (Entered: 01/21/2020) |
| 01/30/2020 | 59 | Plaintiffs MOTION for Reconsideration of the Denial of 58 Order on Motion for Leave to Proceed in forma pauperis, by BRIAN CULVER. (alb) (Entered: 01/31/2020) |
| 01/31/2020 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE T KENT WETHERELL II notified that action is needed Re: 59 MOTION for Reconsideration of the 58 Order on Motion for Leave to Proceed in forma pauperis. (alb) (Entered: 01/31/2020) |
| 02/03/2020 | 60 | ORDER denying 59 Motion for Reconsideration. Signed by JUDGE T KENT WETHERELL II on 02/03/2020. (alb) (Entered: 02/03/2020) |

| 02/27/2020 | 61 | CONSENT to payment of appeal fee from prison account re 53 Notice of Appeal (Copy to Finance) USCA Case # 19-15160-E. (alb) (Entered: 03/04/2020) |
| 03/13/2020 | | Reset Deadlines re 53 Notice of Appeal : Clerk to check status of Appeal on **6/10/2020**. USCA Case # 19-15160-E. (alb) (Entered: 03/13/2020) |
| 03/27/2020 | 62 | Partial Appeal Filing fee: $ 85.99, receipt number FLN300013728. (alb) (Entered: 03/27/2020) |
| 05/08/2020 | 63 | ORDER of USCA. Plaintiff's motion for leave to proceed on appeal is GRANTED because he can raise at least one non-frivolous issue on appeal. Re: 53 Notice of Appeal. USCA case 19-15160. (alb) (Entered: 05/11/2020) |
| 06/11/2020 | | Reset Deadlines re 53 Notice of Appeal : Clerk to check status of Appeal on **8/11/2020**. USCA Case # 19-15160-E. (alb) (Entered: 06/11/2020) |
| 06/12/2020 | 64 | Pursuant to F.R.A.P. 11(c), the Clerk of the District Court for the Northern District of Florida certifies that the record is complete for purposes of this appeal re: 53 Notice of Appeal, Appeal No. 19-15160-EE. The record on appeal is available electronically with the exception of: 37 -1 SEALED Exhibits A1-G. Exhibit transmitted to USCA vial email. (alb) Modified on 6/16/2020 USCA Case # 19-15160-E. (Entered: 06/16/2020) |
| 08/12/2020 | | Reset Deadlines re 53 Notice of Appeal : Clerk to check status of Appeal on **10/13/2020**. (alb) (Entered: 08/12/2020) |

| **PACER Service Center** | | |
| --- | --- | --- |
| **Transaction Receipt** | | |
| 09/15/2020 12:16:27 | | |
| **PACER Login:** | Herbertsl | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 5:18-cv-00160-TKW-HTC |
| **Billable Pages:** | 8 | **Cost:** | 0.80 |

# Complaint

# Doc. 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF FLORIDA

Brian Culver,
     Plaintiff          )
                           )
                           )     COMPLAINT

v.                         )     Civil Action No. 5:18cv16D-MCR-CJK

Shannon D. Withers, WARDEN;
Stephanie Rush, CHIEF PSYCHOLOGIST;
Ramon Rivera, SOMP COORDINATOR;
Michelle Proulx, SOMP PSYCHOLOGIST;
et. al.
     Defendants

## I. JURISDICTION AND VENUE

1. This civil action is being brought under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics 403 U.S. 388 (1971). Plaintiff seeks declaratory relief pursuant 28 U.S.C. Section 2201 and 2202. Plaintiff seeks injunctive relief authorized by 28 U.S.C. Section 2283 & 2284 and Rule 65 of the Federal Rules of Civil Procedure.

2. The Federal Court for the Northern District of Florida is an appropriate venue under 28 U.S.C. Section 1391(b)(2) because it is where the events giving rise to the claims occurred.

## II. PLAINTIFF

3. Plaintiff, Brian Culver, is and was at all times mentioned herein a prisoner of The United States of America in the custody of the United States Federal Bureau of Prisons. Plaintiff is currently confined at FCI Marianna in Marianna Florida.

## III. DEFENDANTS

4. Defendant, Shannon D. Withers, is the warden at FCI Marianna. He is legally responsible for the overall operations of FCI Marianna and any policies and practices.

5. Defendant, Stephanie Rush, is the chief psychologist at FCI Marianna. She
   is legally responsible for the overall operations of the psychology
   department at FCI Marianna.

6. Defendant, Ramon Rivera, is the SOMP (Sex Offender Management Program)
   coordinator at FCI Marianna. He is legally responsible for the overall
   operations of SOMP. He is responsible for policies and practices which are
   specifically directed toward inmates in SOMP at FCI Marianna.

7. Defendant, Michelle Proulx, is the SOMP psychologist at FCI Marianna. She
   is legally responsible for the welfare and treatment of inmates who are in
   SOMP. She supervises the SOMP treatment specialist and oversees how SOMP
   specific policies and practices are implemented and enforced at FCI Marianna.

8. Each defendant is sued individually and in his or her official capacity.

IV.   FACTS

9. The Federal Bureau of Prisons created a Sex Offender Management Program (SOMP)
   to assist in the effective management of its population of sexual offenders
   and to provide services that minimize this population's risk for sexual
   re-offense. FCI Marianna is designated as a SOMP institution.

10. A primary goal of SOMP institutions is to reduce the need to place sexual
    offenders in protective custody, and to create an institution climate
    conducive to voluntary participation in treatment. SOMP is not treatment
    but is only a management program used by the Bureau of Prisons.

11. A key component of SOMP is "risk management". Risk management services are
    designed to reduce the likelihood that sexual offenders in Bureau institutions
    engage in future acts of a sexually offensive nature. Risk is determined
    by an initial risk assessment which is used to guide treatment and management
    decisions. Effective management of sexual offenders in prison requires
    accurate assessment of risk relevant behavior.

12. Risk relevant behavior is an individualized determination and is defined
    as institutional behavior related to an individual's sexual offending history

that indicates risk of future sexual offending upon release. When an individual has been found to be engaging in behavior that is risk relevant for him, he may be placed on a Correctional Management Plan ("CMP"). When one is placed on a "CMP", personal property may be restricted. Examples of categories of personal property subject to restrictions for one placed on a "CMP" include: Items that may be used as sexual paraphernalia such as photos or drawings depicting adults or children in sexually explicit or suggestive poses or situations; materials that promote the sexual exploitation of children; or written correspondence in which individuals are discussed in a sexual way. Plaintiff has never been placed on a "CMP".

13. As part of plaintiff's initial risk assessment upon arrival at FCI Marianna, Plaintiff has had a "Static 99" assessment conducted on him. A Static 99 is an assessment tool used to determine the likelihood of recidivism based upon an offender's offense conduct and history. The lower the score on the Static 99, the less likely one is to reoffend. Plaintiff's score was a "0".

14. The Bureau's Sex Offender Management Policy requires each institution with a Sex Offender Management Program to have an institutional supplement that reflects that institution's unique characteristics and specifies how it will monitor inmates for risk relevant behavior.

15. Defendants Ramon Rivera and Michelle Proulx created a policy and practice under FCI Marianna's institutional supplement that exceeds monitoring and bans all family photos for those labeled "sex offender" if the photo contains a picture of a minor child unless that minor child is the biological or adopted child of the inmate.

16. The policy and practice does not apply to any inmate at FCI Marianna if they are not labeled "sex offender". The policy and practice simply targets those who are a member of a particular group without considerations for the individual's offense, offense history, what the picture is of, or the institutional conduct of the individual who is receiving the picture.

17. Defendants Shannon D. Withers and Stephanie Rush have approved and implemented this policy.

18. The policy and practice bans appropriate pictures such as:  Pictures taken with family members in the visiting rooms at FCI Marianna, Group family photos such as Christmas Cards, family reunion pictures and birth announcements.

19. Based upon this policy, family photos were confiscated from the plaintiff. The family photos were of the plaintiff's nephews who were on his approved visitation list and have visited him several times at FCI Marianna.  Plaintiff has no criminal history of ever victimizing males and these family members were in no way his "victims".  Plaintiff has been incarcerated for over 11 years and has never engaged in any institutional behavior that could be deemed risk relevant or even questionable.  There is no nexus between the plaintiff's behavior and a risk associated with him having appropriate photos.

20. Upon information and belief, sex offenders have one of the lowest recidivism rates of any crime and there is no research or established facts to show banning one from having pictures of their family (which represent meaningful ties to the community [which has been shown to reduce recidivism]) reduces recidivism or for that matter has anything to do with recidivism.

21. Upon information and belief, family photos do not jeopardize the safety and security of FCI Marianna because non-sex offenders can have photos of their families.  The policy and practice of banning family photos serves no neutral purpose because it targets a group for no other reason but membership in that particular group.

22. Plaintiff alleges that the defendants in this complaint have created and enforced an unwarranted policy and practice that deprives plaintiff of his personal property and will continue to deprive him of property for no valid penological or therapeutic reasons.

23. Plaintiff alleges that there were appropriate means already in place at FCI Marianna which could have addressed any problems with family photos (i.e. Correctional Management Plans for those misusing photos).  The policy and practice created and implemented was a gross overreaction to a problem.

## V.  EXHAUSTION OF LEGAL REMEDIES

24. Plaintiff, Brian Culver, used the prison grievance procedure available at
FCI Marianna to try and solve the problem.  On September 8, 2017 plaintiff,
Brian Culver, presented facts relating to this complaint (Attachment A).
On September 19, 2017 plaintiff was sent a response saying that the grievance
had been denied (Attachment B).  On October 2, 2017 plaintiff appealed the
denial of the grievance (Attachment C).  On December 12, 2017 the appeal
was denied (Attachment D).  On January 4, 2018 plaintiff appealed to the
Central Office in Washington D.C. (Attachment E).  On March 2, 2018 the
Central Office appeal was denied (Attachment F).

## VI.  LEGAL CLAIMS

25. Plaintiff realleges and incorporates by reference paragraphs. 1-24.

26. Defendants Ramon Rivera and Michelle Proulx created a policy and enacted
a practice that directly led to the confiscation of plaintiff's personal
property (family photographs) and forbids future access to personal property
(family photographs) in violation of plaintiff's First Amendment rights
under the United States Constitution.  Photographs are protected by the
First Amendment and prison walls do not form a barrier seperating prison
inmates from the protections of the United States Constitution, especially
when there is no legitimate penological reason.

27. Defendants Ramon Rivera and Michelle Proulx created, implemented and enforced
a policy and practice that bans all of plaintiff's family photos if they
contain a minor in them, unless the minor is the biological or adopted child
of the plaintiff.  This policy and practice rejects an entire category of
photographs without considering the specific photo, plaintiff's offense
history, plaintiff's institutional conduct, or plaintiff's risk assessment.
This violates plaintiff's right to due process which is guaranteed by the
United States Constitution.

28. Defendants Ramon Rivera and Michelle Proulx created, implemented, and enforced
a policy and practice that deprives plaintiff of personal property for no
other reason but plaintiff's criminal charge.  Deprivation of property is
considered punishment.  Because there is no nexus with this punishment and
plaintiff's institutional behavior or a legitimate neutral penological goal,

this punishment violates the United States Constitution's prohibition against ex post facto punishment. The court has already imposed punishment for plaintiff's crimes and said punishment did not include any type of limits on his access to family photographs of loved ones.

29. Defendants Ramon Rivera and Michelle Proulx created, implemented, and enforced a policy and practice that violates plaintiff's right to equal protection under the law. The policy and practice targets plaintiff simply because he is a member of a particular group without consideration of his individual offense history or institutional conduct. Inmates who are not labeled "sex offenders" at FCI Marianna can have photographs of ANY of their family members. There is no penological, therapeutic, or fact based reason to target plaintiff because he is labeled "sex offender" in relation to having appropriate photographs of his family.

30. Defendants Ramon Rivera and Michelle Proulx upheld, implemented, and enforced a policy and practice which violates plaintiff's Constitutional rights after being given fair notice that said practice and policy was unconstitutional.

31. Defendants Shannon D. Withers and Stephanie Rush approved and upheld the policy and practice created by defendants Ramon Rivera and Michelle Proulx and continues to uphold and enforce the policy and practice.

32. All defendants in this complaint willfully and knowingly upheld and enforced the unconstitutional policy and practice after being given fair notice that said policy and practice was in violation of the United States Constitution.

33. Defendants Ramon Rivera and Michelle Proulx personally met with the plaintiff and were given fair notice of the violations plaintiff has claimed in this complaint. Defendants continued to enforce the unconstitutional policy and practice with deliberate indifference to plaintiff's rights.

34. The policy and practice is invalid because it impinges upon freedoms protected by the United States Constitution and is not reasonably related to legitimate penological interest and is an exaggerated response to such objectives.

VII.  PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays that this court enter judgment granting plaintiff:

35. A declaration that the acts and omissions described herein violated plaintiff's rights and the policy and practice banning family photos simply because the photo contains a minor who is not the plaintiff's biological or adopted child is a violation of the constitution and laws of the United States.

36. A preliminary and permanent injunction ordering all of the defendants to cease the practice of banning family photos simply because they contain a minor who is not the plaintiff's biological or adopted child and to revise the policy to remove this provision.

37. Compensatory damages in the amount of $1 (one dollar) against each defendant, jointly and severally.

38. Punitive damages in the amount of $100 (one hundred) against each defendant.

39. A jury trial on all issues triable by jury.

40. Plaintiff's cost in this suit.

41. Any additional relief this court deems just, proper, and equitable.

DATE: 7-2-18

RESPECTFULLY SUBMITTED BY: _____
                          Brian Culver

VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at FCI Marianna, Marianna, FL. on 7-2-18

_____
Brian Culver

U.S. DEPARTMENT OF JUSTICE                                    REQUEST FOR ADMINISTRATIVE REMEDY
Federal Bureau of Prisons

A

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: ~~XXXXXXXXXXX~~ Culver, Brian     26277-001     Creek B     FCI Marianna
LAST NAME, FIRST, MIDDLE INITIAL     26299-001          UNIT          INSTITUTION
                                      REG. NO.

**Part A– INMATE REQUEST** I am requesting that this institution's practice of rejecting all family photos which contain minors who are not the inmate's adopted or biological children CEASE and the SOMP Handbook and all related policies which allow this practice to be AMENDED.  This practice and related policies violate my First Amendment rights, due process, and equal protection under the law. It is also an absurd over exaggerated response, an abuse of discretion, and does not serve any penological or rehabilitation needs.

    The response to my BP-8 simply recited a policy that is not germane to the issues I raised.  As a result, the response is effectively a Non-Response. The issue is the practice of rejecting normal family photos which are neither sexually explicit or "publications" of which the BP-8's response references. I reconize and agree that the warden has broad discretion to reject materials deemed to pose a risk to the safe and secure operation of the institution. However, it is an abuse of this discretion to have policies and practices in place that rejects ALL photos (including one's family) simply because they contain a minor.  Furthermore, the term "risk relevant" is an individualized clinical determination that should be used based upon an individual not as an excuse for systematic rejections as it is at this institution. [Continued on attached page]

9-8-17                                          _____
DATE                                            SIGNATURE OF REQUESTER

**Part B– RESPONSE**




_____                             _____
DATE                                            WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                      CASE NUMBER: _____
_____

                                                CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.       UNIT        INSTITUTION

SUBJECT: _____

_____                             _____
DATE                                            RECIPIENT'S SIGNATURE (STAFF MEMBER)     BP-229(13)

Culver, Brian                    Reg. No. 26299-001        BP-9

**A-2**

Program Statement 5580-08 section 2.(h) states: "Ordinarily, photographs, **Particularly those of family and friends**, are approved since they represent meaningful ties to the community". The Supreme Court has ruled that photos are protected under the First Amendment of the U.S. Constitution. see Kaplan v. California 413 U.S. 115 **(1973)** The Supreme Court has also held that a prison regulation is invalid if the regulation is (1) not reasonably related to legitimate penological interest or (2) and exaggerated response to such objectives. see Beard V. Banks 548 U.S. 521 (2006).

I concede there may be a problem with SOME individuals at FCI Marianna using photographs in an inappropriate way, however, I am not part of that problem nor have I ever been. Because of this, there is no valid reason to reject my personal family photos based upon an overbroad policy and exaggerated responses to a problem with which I have nothing to do with. There are appropriate ways to deal with these individuals who abuse photos already in place. These individual can be placed on a CMP which restricts their access to photos etc.. Rejecting my personal family photos when I have done NOTHING wrong effectively places me on an UNWARRANTED CMP. This is a gross violation of due process, fundamental fairness, and equal protection under the law which are all guaranteed under the United States Constitution and these rights are not lost simply because one is an inmate.

U.S. Department of Justice   RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY

Federal Bureau of Prisons

Part B - RESPONSE

Remedy ID - 915343-F1

This is in response to your Request for Administrative Remedy receipted
September 14, 2017, in which you indicate your mail is being improperly
rejected.  Specifically, you state the rejection of mail containing
children, other than biological and adopted children, violates Bureau of
Prisons' policy and your Constitutional rights.

A review of your request revealed, the photos in question are reviewed
under the Institution Supplement 5324.10C Sex Offender Programs, and
Program Statement 5265.14 Correspondence.  All inmates at FCI Marianna
with a conviction of a classified sex offense under the Adam Walsh Act are
given a Sex Offender Management Program (SOMP) Inmate Handbook.  The SOMP
handbook indicates that "pictures or drawings of any child with the
exception of those deemed immediate family (i.e. children by birth,
adoption, or legal means, and grandchildren from any of the above), and
who are not a victim of their sexual offending behaviors as listed within
their PSR or other legal documentation" will be treated as contraband.
The items are treated as contraband as "constituting sexual risk factors
(i.e., have the potential to contribute to future sexual offending)".  In
accordance with the Institution Supplement 5324.10C Sex Offender Programs
and Program Statement 5265.14 Correspondence, the photos are deemed
"detrimental to the security and good order of the institution".

Additionally, you contend the photos are not detrimental to the security
of the institution.  However, due to the nature of the photos, this
material is deemed as risk relevant.  Therefore, it is detrimental to the
security and good order of the institution.

**This response is for informational purposes only.**  If dissatisfied with
this response, you may appeal to the Regional Director, Southeast Regional
Office, at 3800 Camp Creek Parkway, SW, Building 2000 Atlanta, Georgia
30331-6226.  Your appeal must be received in the Regional Director's
Office within 20 calendar days of the date of this response.

_____                    9/9/17
B.E. Blackmon, Warden                        _____
                                             Date

This response was delivered by my unit team on   Sept. 21   , 2017.

_____                    _____
Inmate Signature                             Staff Signature

U.S. Department of Justice

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this paper.

| From: | Culver, Brian | 26299-001 | Creek B | FCI Marianna |
|-------|-------------|-----------|---------|--------------|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

Part A - REASON FOR APPEAL  I am appealing the response to my BP-9 (attachment A) because the response did not address the specific problem of which I was addressing.  Ironically, the response exemplifies the problem.  I did not dispute the fact that Marianna FCI has an institutional supplement (PS 5324-10c) and a SOMP Handbook provision (Paragraph f pg. 4) which considers all photos (including approved family members from an inmate's visitation list) "Contraband" if said photo contains a minor who is not the inmates adopted or biological child.  I am specifically claiming that this institutional supplement and the SOMP Handbook provision are a gross violation of my First Amendment right, due process, and equal protection under the law because it is overbroad, an exagerrated response to a problem, and unfairly targets a particular segment of the BOP population simply because of their class.

Marianna FCI had a problem with a small minority of individuals labeled "sex offenders" sharing photos of minor children for deviant purposes.  Rather than using options which were already in place (i.e. CMP, issuing "shots", transfering if these measures did not work), Marianna FCI created institutional supplements and a SOMP Handbook to ban ALL individuals who are labeled a "sex offender" from possessing ANY photo which has a minor in it unless the minor is the inmate's biological or adopted child.

10-2-17

DATE

CONT . . . . . . . .

SIGNATURE OF REQUESTER

**Part B - RESPONSE**

| DATE | | REGIONAL DIRECTOR |
|------|--|-------------------|

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE

CASE NUMBER: _____

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____

| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|--|----------------------------------|----------|------|-------------|

SUBJECT: _____

| DATE | | SIGNATURE, RECIPIENT OF REGIONAL APPEAL |
|------|--|----------------------------------------|

BP-230(13)

C-2

Culver, Brian          26299-001          Creek B          FCI Marianna     BP-10

Such an absurd group punishment would never be implimented in any other sitution.  For example:  Marianna FCI currently has a profound problem with chronic drug usage, sales, and distribution by inmates at its facility.  This problem is not only "detrimental" to the safe and secure operation of the institution, it is a FELONY.  Everyone is aware that these drugs are coming in via the mailroom and/or visitation.  However, Marianna FCI has not created a "Drug Offender Handbook" nor have they instituted institutional supplements which apply to anyone with a history of drug offenses or a current drug offense.  They would never bar them from receiving mail and/or visits.  This would be seen as an absurd exaggerated response to a problem that violates the Constitutional rights of the drug offenders who have nothing to do with the problem.  The United States Constitution also applies to me and I have nothing to do with the problem which initiated the overbraod ban on ALL photos which may contain a minor child that is not my biological or adopted child.

Marianna FCI hides behind this institutional supplement and the SOMP Handbook and abuses terms such as "risk relevant" and "safe and secure" operations of the institution to deprive me (as well as the entire class of those labeled "sex offender") Constitutional rights afforded to other inmates.  There is no way that approriate family photos of my nephews (who are on my visitation list and has visited me here at FCI Marianna) are "risk relevant" nor could these photos (which would have been locked in my locker) pose a risk to the "Safety and Security" of the institution.

Most ironic of all in this situation is the fact that if one takes a photo here at FCI Marianna, it is given to them in a Walmart envelope which is covered with numerous photos of minor children who are not their biological or adopted child. (see attachment F)  However, my family photos pose a risk to the sate and secure operation of the institution and are "risk relevant" to me?  Furthermore, risk relevant is defined as any institutional behavior that my contribute to me committing further crimes upon my release.  I essentially have life in prison and I am not getting out therefore "risk relevant" is not applicable to me.

Marianna FCI has abused its power and discretion by creating an institutional supplement and SOMP Handbook which violates my Constitutional rights and is overbroad.  I am respectfully asking that the institutional supplement and the SOMP Handbook provision that bans ALL photos that contain minor children who are not an inmates biological or adopted child be amended.

ATTACHMENT "F"



It's **easy** to transfer photos from your **smartphone** and **tablet** to create prints and gifts.

**FASTEST WAY**




Download the FUJIFILM KIOSK PHOTO TRANSFER APP and select only the images you would like to transfer.

**or**



**CONNECT VIA CABLE**




Transfer your entire photo library.

**Walmart** ✺ Photo
powered by **FUJIFILM**

---

**Make it Personal.**

C-3

Last Name (Apellido) Culver B
First Name (Nombre) C-B
Phone (Teléfono) 26299-001

**Walmart** ✺ Photo
powered by **FUJIFILM**

8 & 5x7 Photo Cards, Invites and Thank Yous.

Order instore or at walmart.com/photo

Regional Administrative Remedy Appeal No.: 915343-R1
Part B – Response

This is in response to your Regional Administrative Remedy Appeal receipted October 10, 2017. You appeal the Warden's response to your administrative remedy. You request the Sex Offender Management Program (SOMP) Handbook and Institution Supplement at FCI Marianna be altered because it violates your Constitutional Rights.

The Institution Supplement at FCI Marianna states that when inmates with a sexual offense receive photographs through the mail, "SOMP Staff reserve the right to review photographs to determine appropriateness related to risk-relevancy." In addition, the SOMP Inmate Handbook details categories of inappropriate or risk relevant material which, at the discretion of the Warden, can be reasonably expected to adversely affect the security, safety, or good order of the institution.

Our investigation revealed you are currently serving a sentence for possession and production of child pornography. On April 19, 2017 and July 14, 2017, SOMP staff were contacted because mail addressed to you included photographs of pubescent males in bathing clothes, and pictures of prepubescent and adolescent males and females. These photographs were determined by SOMP staff to be risk-relevant due to your offense history of production and possession of child pornography, and staff recommended rejection of the mail.

Accordingly, your Regional Administrative Remedy Appeal is denied. If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534. Your appeal must be received in the General Counsel's Office within 30 days from the date of this response.

12/12/17
_____
Date

_____
Regional Director, SERO



Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13) including any attachments must be submitted with this appeal.

| From: | Culver, Brian | 26299-001 | Creek B | FCI Marianna |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL.** I am filing this appeal pursuant PS 1330.18 (Administrative Remedy Program) page 6 Section 12's provision which states "the inmate may consider the absence of a response to be a denial at that level". As of the date indicated on this submission, no response has been received.

I am filing this appeal because at no level of the administrative remedy process has anyone ever addressed the actual issue. The responses have only rested the policy and never addresses the two major problems with the policy. Marianna's Institutional Supplement (MNA 5324.10c attachment A pg. 3, paragraph f) and Marianna's SOMP Handbook's (pg. 4 paragraph 1) ban on ALL photos which contain a minor child who is not the biological or adopted child of the inmate is overbroad, violates the authorization given under BOP PS 5324.10, and deprives inmates of Constitutional rights they still retain.

**PLEASE ADDRESS THE FOLLOWING SPECIFIC CLAIMS:**

1) BOP PS 5324.10 states: "Each institution with a sex offender management program is required to have an Institutional supplement that reflects that institution's unique characteristics and specifies how it will monitor inmates for risk-relevant behavior. Specific items to be covered are listed in section 4.8". (PS 5324.10 pg. 2) It must be noted that section 4.8 of this program statement is concerning restricting property when one is placed on a Correctional Management Plan (CMP). CONT......

| 1-4-18 | |
|---|---|
| DATE | SIGNATURE OF REQUESTER |

**Part B - RESPONSE**




| | |
|---|---|
| DATE | GENERAL COUNSEL |

ORIGINAL: RETURN TO INMATE                    CASE NUMBER

**Part C - RECEIPT**

CASE NUMBER

Return to: _____

| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT

| DATE | SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL |

BP-231(13)

The only reference to any type of blanket restriction on personal property in this section refers to <u>Residential Treatment</u> facilities and even in that case it speaks of blanket restrictions applying to a <u>Housing Unit</u> which houses the program participants. This BOP Policy specifically states: "Restrictions on personal property and publications are imposed when an inmate uses those items as sexual stimulus in furtherance of his/her sexual defiancy. Because the potential for exist for inmates to exchange personal property within an institution, imposing restriction on individual inmates does not guarantee a lack of access to sexual stimulus materials. For this reason, the presence of sexual stimulus materials in residential sex offender treatment units poses a threat to the successful rehabilitation of program participants. To maintain a theraputic mileu in housing units with a specialized treatment or rehabilitation mission (e.g. SOTP-R, Committ-ment and Treatment), wardens may exercise their discretion in issuing unit-wide restrictions on specific catagories of personal property and publications to prevent the exchange of sexual stimulus material between inmates." (PS 5324.10 pg. 4)

Two key points are contained in this program statement: 1) This Program Statement allows for the warden to use his/her discretion to implement "UNIT-WIDE" (not institutional-wide) restrictions at "RESIDENTIAL TREATMENT FACILITIES" (which Marianna is NOT). 2) The Program Statement speaks of "SEXUAL STIMULUS" materials, not normal family photos.

Marianna has somehow interpreted this section of the BOP Policy as giving them permission to implement an institutional-wide restriction that bans all photos of children (even one's own family....including pictures taken in the visiting room) simply because one is labeled a sex offender even when one is not on a Correctional Management Plan (CMP). This is a total abuse of discretion and a misunderstanding of BOP Policy PS 5324.10.

I reallege and incorporate all the claims and requests I have made in my BP-9 and BP-10 in reference to the Constitutional issues. Marianna's institutional ban violates the Constitutional Rights I still retain as an inmate and a federal court would most likely agree based upon the supporting case law.

I respectfully ask for Marianna's Institutional Supplement and SOMP Handbook to be revised to remove this ridiculous overbroad ban on ALL photos which contain a minor who is not the inmate's biological or adopted child. Such a ban is inappropriate for on who is not on a CMP and is outside of the authorization given to local institutions pursuant BOP PS 5324.10.

Administrative Remedy Number 915343-A2
Part B - Response

This is in response to your Central Office Administrative Remedy
Appeal wherein you contest FCI Marianna actions of banning inmates
from possessing photos which contain a photo of minor children who
are not the biological or adoptive children of the inmate.    For
relief, you request the Institutional Supplement and SOMP Handbook
be changed.

Our review of your appeal reveals that the Warden and Regional
Director adequately addressed the issues raised in your lower level
filings and we concur with the responses provided.   The Warden has
the discretion to prohibit access to items when it is determined to
jeopardize the safety, security, and orderly operation of the
facility.   We find this use of discretion to be of sound correctional
judgement in a facility that operates a Sex Offender Management
Program.   You provide no new evidence that proves staff members are
acting contrary to established policy and procedures or outside the
scope of their duties.

Accordingly, your appeal is denied.


3 | 2 | 18
_____                    _____
Date                               Ian Connors, Administrator
                                   National Inmate Appeals

Brian Culver 26299-001
Federal Correctional Institution
PO Box 7007
Marianna, FL 32447

CHECKED
JUN 0 9 2018

Clerk, U.S. District Court
30 Government Street
Panama City, FL 32401-27




# Motion to Dismiss Plaintiff's Complaint

# Doc. 32

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**BRIAN CULVER,**

    **Plaintiff,**


       **vs.**                                      **Case No.:**
                                                  **5:18-cv-160-MCR-HTC**

**SHANNON D. WITHERS, WARDEN,**
**STEPHANIE RUSH, CHIEF PSYCHOLOGIST,**
**RAMON RIVERA, SOMP COORDINATOR,**
**MICHELLE PROULX, SOMP PSYCHOLOGIST,**
    **Defendants.**

_____/


## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Plaintiff, a federal prisoner, brings this action pursuant to <u>Bivens</u>, claiming that his First and Fifth Amendment rights were violated by individuals at FCI Marianna in their enforcement of a sex offender management program (SOMP) institution supplement that restricts photographs that an inmate in the SOMP can possess.  Plaintiff's claims should be dismissed for two reasons: (1) special factors counsel against extending <u>Bivens</u> to this new context; and (2) even if a <u>Bivens</u> action could be maintained, Defendants are entitled to qualified immunity because Plaintiff has not established a violation of his clearly established constitutional rights.

## I.    Introduction

Plaintiff is currently serving a sentence for possession and production of child pornography.  Doc. 1 Attachment D.  On April 19, 2017 and July 14, 2017, SOMP staff were contacted because mail addressed to Plaintiff included "photographs of pubescent males in bathing clothes, and pictures of prepubescent and adolescent males and females."  Id.  These photographs were reviewed under the Institution Supplement 5324.10C Sex Offender Programs and Program Statement 5265.14 Correspondence.  Doc. 1 Attachment B.  All inmates at FCI Marianna with a conviction of certain sex offenses under the Adam Walsh Act are given a Sex Offender Management Program (SOMP) Inmate Handbook.  Id.  The handbook indicates that "pictures or drawings of any child with the exception of those deemed immediate family (i.e. children by birth, adoption, or legal means, and grandchildren from any of the above), and who are not a victim of their sexual offending behaviors as listed within their PSR or other legal documentation" will be treated as contraband.  Id.  The photographs were determined by SOMP staff to be risk-relevant due to Plaintiff's offense history of production and possession of child pornography, and staff recommended rejection of the mail.  Doc. 1 Attachment D.  The items were treated as contraband, "constituting sexual risk factors (i.e., having the potential to contribute to future sexual offending)."  Doc. 1 Attachment B.  In accordance with the Institution Supplement 5324.10C Sex Offender Programs and Program

Statement 5265.14 Correspondence, the photos were deemed "detrimental to the security and good order of the institution." <u>Id</u>.

## II.   STATEMENT OF PLAINTIFF'S CLAIMS

On July 9, 2018, Plaintiff filed this action under <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 402 U.S. 388 (1971), suing Dr. Ramon Rivera, SOMP Coordinator, and Dr. Michelle Proulx, SOMP Psychologist, alleging that they are responsible for creating and implementing the SOMP institution supplement that violated his constitutional rights. <u>Doc. 1</u>. Plaintiff also sued Warden Shannon Withers, FCI Marianna, and Dr. Stephanie Rush, retired Chief Psychologist at FCI Marianna, alleging that they approved and upheld the policy and practice created by Rivera and Proulx. <u>Doc. 1</u>. The gravamen of Plaintiff's complaint is that the photographs mailed to him were allegedly of his nephews, and were examined and rejected by SOMP staff pursuant to FCI Marianna's SOMP institution supplement. <u>Doc. 1</u>. Plaintiff does not allege that the Defendants examined and rejected the photographs that he complains were rejected. <u>Doc. 1</u>. Plaintiff alleges that the SOMP institution supplement violated: (1) his First Amendment rights; (2) his Fifth Amendment due process right because the "policy and practice rejects an entire category of photographs without considering the specific photo, Plaintiff's offense history, Plaintiff's institutional conduct, or Plaintiff's risk assessment;" (3) the "Constitution's prohibition against ex post facto

3

punishment;" and (4) his equal protection rights because "the policy and practice targets Plaintiff simply because he is a member of a particular group without consideration of his individual offense history or institutional conduct." Doc. 1.

### III.   MOTION TO DISMISS STANDARD

Although the Plaintiff need not submit detailed facts of every part of his complaint, he must provide more than statutory or constitutional labels and statements of legal conclusions in order to prove that he is entitled to relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, (2007). To survive a Rule 12(b)(6) motion to dismiss, the Plaintiff must state enough facts so that a claim for relief is plausible on its face. Id. at 570. While all factual allegations are taken as true, the court is not required to take as true legal conclusions masked as factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 677, (2009). Where these factual allegations do no more than infer the mere possibility of misconduct the threshold of plausibility that would give rise to an entitlement for relief has not been met. Id. at 679. The pleading standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678. A plaintiff must assert, "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555.

Assuming all of the factual allegations in the Plaintiff's Complaint to be true, a Bivens action is not available to remedy his complaints, and, even if it were, the

Defendants' alleged conduct did not rise to the level of a constitutional violation, much less a violation of clearly established law.  See Iqbal, 556 U.S. at 679 (2009).

## IV.   ARGUMENT

The Court should dismiss Plaintiff's constitutional claims against all Defendants. No Bivens remedy is available here because Plaintiff's claims presents a new context for which the Supreme Court has never extended an implied remedy under the Constitution; alternative processes preclude a Bivens remedy; and other special factors counsel hesitation in extending Bivens. Moreover, Defendants are entitled to qualified immunity on all claims.

### A. THE COURT SHOULD REFRAIN FROM CREATING A BIVENS REMEDY.

Plaintiff contends that his claims are actionable under Bivens. Doc. 1.  They are not. A Bivens action is a limited, judicially created damages remedy for certain constitutional tort claims against certain federal employees. See  Bivens, 403 U.S. at 397.  In Bivens, the Supreme Court took the unprecedented step of creating an implied cause of action directly under the Fourth Amendment for an unreasonable search and seizure when federal officers entered and searched the plaintiff's apartment without a warrant, handcuffed him, and arrested him. 403 U.S. at 390, 397. The Court implied a cause of action in the absence of statutory authorization only after finding that "no special factors counsel[led] hesitation" in creating such a remedy. Id. at 396. In the more than forty years since Bivens, the Supreme Court has

created an implied right of action in only two other cases: under the Fifth Amendment's due process clause for gender discrimination arising out of a Congressman's firing of his female administrative assistant, Davis v. Passman, 442 U.S. 228, 248-49 (1979), and under the Eighth Amendment's cruel and unusual punishment clause arising out of prison officials' failure to provide medical treatment for a prisoner's asthma, resulting in death, Carlson v. Green, 446 U.S. 14, 19 (1980). "These three cases—Bivens, Davis, and Carlson—represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." Ziglar v. Abbasi, 137 S. Ct. 1843, 1855 (2017).

In 2017, in Abbasi, the Supreme Court "made clear that expanding the Bivens remedy is now a 'disfavored' judicial activity." 137 S. Ct. at 1857 (quoting Iqbal, 556 U.S. at 675). This is because expansion of Bivens to a new context is best left to Congress, not the courts. As the Court put it, "[w]hen a party seeks to assert an implied cause of action under the Constitution . . . separation-of-powers principles are . . . central to the analysis," and "[w]hen an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them." Id. (internal quotations and citation omitted). "In most instances, the Court's precedents now instruct, the Legislature is in the better position to consider if 'the public interest would be

served' by imposing a 'new substantive legal liability.'" Id. (quoting Schweiker v. Chilicky, 487 U.S. 412, 426-27 (1988)).

The "antecedent" question for courts in any Bivens case is whether to devise a new remedy. See Hernandez v. Mesa, 137 S. Ct. 2003, 2006 (2017). "[T]he first question a court must ask . . . is whether the claim arises in a new Bivens context, *i.e.*, whether 'the case is different in a meaningful way from previous Bivens cases decided by this Court.'" Abbasi, 137 S. Ct. at 1864.  If the case presents a new context, then courts consider two questions before devising a new Bivens remedy: first, whether an "alternative, existing process for protecting the [plaintiff's] interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages[;]" second, whether other "special factors" counsel hesitation before authorizing a new kind of federal Bivens litigation. Wilkie v. Robbins, 551 U.S. 537, 550 (2007).

**B. Each of Plaintiff's Claims Presents a New Context.**

"The proper test for determining whether a case presents a new Bivens context" is whether it "is different in a meaningful way from previous Bivens cases decided by [the Supreme] Court[.]" Abbasi, 137 S. Ct. at 1859. A "context is new" when there is an extension, however "modest," of the claims approved of in Bivens, Davis, or Carlson. See id. at 1859, 1864.  Following Abbasi, prior circuit and district court precedents that allowed for a Bivens remedy must be reevaluated. Cf. Rager v.

7

Augustine, 760 F. App'x 947, 953 (11th Cir. 2019) (noting, after Abbasi, "it is by no means clear that a damages remedy is warranted for a First Amendment . . . claim like this one").[1] "[D]ifferences that are meaningful enough to make a given context a new one," include: an officer's rank; the constitutional right at issue; the generality or specificity of alleged conduct; the extent of judicial guidance as to how an official should respond to the matter; the legal mandate under which the official was operating; the risk of intrusion by the judiciary into the functioning of other branches of government; or the presence of other special factors not considered in previous Bivens cases. Abbasi, 137 S. Ct. at 1859-60.

Here, Plaintiff's constitutional claims are markedly different from Bivens, Davis, or Carlson. Plaintiff contends that photographs of children that were mailed to him and rejected by the institution "are protected by the First Amendment"; alleges a Fifth Amendment due process claim, saying that the SOMP institution supplement deprives him of personal property "for no other reason but Plaintiff's

---

[1] See also Vanderklok v. United States, 868 F.3d 189, 199-200 (3d Cir. 2017) (explaining Third Circuit's "past pronouncements" on First Amendment Bivens claim was "not controlling" post-Abbasi); Butts v. Martin, 877 F.3d 571, 589 (5th Cir. 2017) (remanding for whether Bivens remedy is available because although "this Circuit has largely permitted Bivens [retaliation] claims against prison officials," after Abbasi it "remains inconclusive"); Sanford v. Bruno, No. 17-cv-5132, 2018 WL 2198759, at *4 (E.D.N.Y. May 14, 2018) ("[P]ost-[Abbasi], even where a Court of Appeals had previously found a Bivens remedy, that court or a district court must reconsider whether one is available."); Free v. Peikar, No. 17-CV-00159, 2018 WL 905388, at *5 (E.D. Cal. Feb. 15, 2018) ("While the Ninth Circuit has previously held that Bivens may be extended to First Amendment claims . . . it has recently revisited this question in light of Abbasi[.]" (citations omitted)).

8

criminal charge"; claims that the rejection of the photographs constitutes ex post facto punishment; and avers that the SOMP institution supplement discriminates against a group of inmates (sex offenders) without particularized consideration of each inmate's personal conduct and characteristics, in violation of the Fifth Amendment equal protection guarantee.

These claims "bear little resemblance" to Bivens, Davis, or Carlson. They implicate mostly different constitutional rights than were at issue in those cases. See Abbasi, 137 S. Ct. at 1860. For example, the Supreme Court has never extended Bivens to allow a remedy for any claim under the First Amendment,[2] or any Fifth Amendment procedural due process, equal protection, or ex post facto claim, in the context of federal prisons or under the factual circumstances of which Plaintiff complains. Butts, 877 F.3d at 588 ("Because the Supreme Court has not recognized a Bivens remedy in the First Amendment context, Butts's claim likely presents a new context[.]"); McRae v. Lockett, No. 5:17-CV-299-OC-02PRL, 2019 WL 2303264, at *5 (M.D. Fla. May 30, 2019) (finding, after Abbasi, inmate's "First and Fifth Amendment claims present a new Bivens context," and that alternative processes and special factors counsel against extending Bivens); Banks v. LaRose, No. 4:17-CV-2479, 2018 WL 1942195, at *3 (N.D. Ohio Apr. 25, 2018) (finding

---

[2] On numerous occasions, the Supreme Court has noted that it has *never* recognized First Amendment Bivens claims in *any* context. Wood v. Moss, 134 S. Ct. 2056, 2066 (2014); Reichle v. Howard, 566 U.S. 658, 663 n.4 (2012); Iqbal, 556 U.S. at 675; Bush, 462 U.S. at 368.

new context, after Abbasi, for inmate alleging equal protection violations based on inmate classification); Buenrostro v. Fajardo, No. 1:14-CV-00075, 2017 WL 6033469, at *3 (E.D. Cal. Dec. 5, 2017) ("The Supreme Court has never recognized a Bivens remedy for a Fifth Amendment due process claim relating to the alleged failure of a prison official to provide due process" or for "any clause of the First Amendment"), aff'd 2019 WL 2207662 (9th Cir. May 22, 2019).

Because all of Plaintiff's claims plainly involve new Bivens contexts, this Court must evaluate (1) "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages," Wilkie, 551 U.S. at 550; and (2) whether other "special factors counsel[] hesitation in the absence of affirmative action by Congress." Abbasi, 137 S. Ct. at 1857.

### C. Alternative Existing Processes Preclude a *Bivens* Remedy.

"[I]f there is an alternative remedial structure present in a certain case, that *alone* may limit the power of the Judiciary to infer a new Bivens cause of action." Abbasi, 137 S. Ct. at 1858 (emphasis added). "For if Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" Id. (quoting Wilkie, 551 U.S. at 550). "So long as the plaintiff had an avenue for some redress, bedrock

principles of separation of powers foreclose[] judicial imposition of a new substantive liability." Malesko, 534 U.S. at 69; accord Schweiker, 487 U.S. at 423, 425 (noting that alternative processes need not provide "complete relief" so long as they provide "adequate remedial mechanisms for constitutional violations").

Here, Plaintiff has available to him other processes, provided through statutory and regulatory means, through which he can receive some form of review and redress for his claims. These processes are not theoretical – Plaintiff has sought relief through BOP's administrative grievance process, and can file an injunctive relief claim against BOP under the APA. See McRae, 2019 WL 2303264, at *6 (concluding, post-Abbasi, that inmate alleging First and Fifth Amendment claims "had alternative remedies available to him" including filing "a civil rights action seeking injunctive relief"). The availability of these alternative processes preclude his Bivens action.

BOP's administrative remedy program is implemented through regulations, 28 C.F.R. §§ 542.10-.19, which "allow an inmate to seek formal review of an issue relating to *any* aspect of his/her own confinement." 28 C.F.R. § 542.10 (emphasis added). Plaintiff sought review through BOP's administrative remedy program and received notices from BOP at various levels explaining why an action was taken, and what policy or program governed the relevant decisions. Doc. 1 Attachments A, B, C, D, E, and F.

"'Alternative remedial structures' can take many forms, including administrative, statutory, equitable, and state law remedies." <u>Vega v. United States</u>, 881 F.3d 1146, 1154 (9th Cir. 2018). Following <u>Abbasi</u>, courts have consistently found that BOP's administrative remedy program, whether by itself or in conjunction with other processes, can preclude a <u>Bivens</u> remedy for inmate claims like those at issue in this case. <u>Id.</u> at n.4 ("[T]he [administrative remedy program] provides an adequate, and more appropriate, remedy to vindicate Vega's rights to access the courts and to procedural due process."); <u>Buenrostro</u>, 2017 WL 6033469, at *3 ("Plaintiff has alternative remedies available to him, including the [BOP's] administrative grievance process, the filing of a writ of habeas corpus, and injunctive relief."). This Court should conclude the same with respect to Plaintiff's claims.

In addition to BOP's administrative remedy program, Plaintiff can potentially avail himself to equitable remedies in federal court. For instance, under the Administrative Procedures Act, Plaintiff can obtain court review of BOP actions to determine if they are "contrary to [a] constitutional right," or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A)-(B). Joining other circuits, the Eleventh Circuit has recognized that "judicial review under the APA may, in some circumstances, foreclose a <u>Bivens</u> claim." <u>Miller v. U.S. Dep't of Agric. Farm Servs. Agency</u>, 143 F.3d 1413, 1426 (11th Cir. 1998); <u>W. Radio Serv. Co. v. U.S. Forest Serv.</u>, 578 F.3d 1116, 1123 (9th

Cir. 2009);  Big Cats of Serenity Springs, Inc. v. Rhodes, 843 F.3d 853, 862 & n.4 (10th Cir. 2016). Here, the APA, in concert with BOP's Administrative Remedy Program, provide a constitutionally adequate, alternative process for Plaintiff's claims.

### D. Special Factors Counsel Against Extending *Bivens* to Plaintiff's Claims.

In addition to the alternative processes to which Plaintiff can avail himself, "other special factors" counsel hesitation before authorizing the new kind of federal Bivens litigation sought here. See Abbasi, 137 S. Ct. at 1861. As the Abbasi Court explained, the "inquiry [into other special factors] must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Id. at 1857-58. "[T]o be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative." Id.

Here, where a federal prisoner seeks to extend a Bivens remedy for the sorts of constitutional claims Plaintiff raises, there are special factors that counsel hesitation. First, through frequent and intense action in regulating federal prisons and prisoner litigation, Congress has demonstrated an intent to limit prisoner suits, and has never allowed a damages remedy for federal prisoners, let alone for claims like those asserted by Plaintiff. Second, separation-of-powers principles counsel against judiciary interference in federal prison operations, especially in the area of

13

sex offender programs, when Congress has delegated the authority to ensure safety and order in those prisons to the Executive. Third, a <u>Bivens</u> action is an inappropriate vehicle for vindicating Plaintiff's claims, which, are really an attack on BOP policy rather than some rogue conduct by federal officers.

### 1. Despite frequent and intense action in the context of federal prisons, Congress has never provided an individual damages remedy.

In the context of day-to-day management and operations of federal prisons, there are "sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy." <u>See</u> <u>Abbasi</u>, 137 S. Ct. at 1865. This is because "Congress' failure to provide a damages remedy might be more than mere oversight, and [its] silence might be more than 'inadvertent,'" in the federal prison setting, where "Congressional interest has been 'frequent and intense.'" <u>Abbasi</u>, 137 S. Ct. at 1862 (citing <u>Schweiker</u>, 487 U.S. at 423, 425). Despite decades of repeated and extensive Congressional action in federal prison operations and litigation, Congress never enacted a statute entitling federal prisoners to a civil damages action, and "when Congress fails to provide a damages remedy in circumstances like these, it is much more difficult to believe that 'congressional inaction' was 'inadvertent.'" <u>See</u> <u>id.</u>

The Civil Rights Act of 1871, 42 U.S.C. § 1983, "entitles an injured person to money damages if a *state* official violates his or her constitutional rights." <u>Abbasi</u>, 137 S. Ct. at 1854 (emphasis added). "Congress did not create an analogous statute

for federal officials." Id. "[I]n the 100 years leading up to Bivens, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government." Id.  Not until 1971, in Bivens, did the judiciary, not the legislature, provide a private right of action against federal officials for damages arising under certain constitutional provisions, and not until 1980, in Carlson, did the Supreme Court, for the first and only time, extend such a suit to a federal inmate who lost his life due to a failure to receive medical care.

In 1995, "[s]ome 15 years after Carlson was decided, Congress passed the Prison Litigation Reform Act [(PLRA)] of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court." Abbasi, 137 S. Ct. at 1865 (citing 42 U.S.C. § 1997e). Through the PLRA, Congress addressed "a sharp rise in prisoner litigation in the federal courts." Woodford v. Ngo, 548 U.S. 81, 84 (2006). "The PLRA contains a variety of provisions designed to bring this litigation under control," id., and includes "a series of controls on prisoner suits . . . designed to prevent sportive filings in federal court," Skinner v. Switzer, 562 U.S. 521, 535 (2011). These constraints include stringent exhaustion requirements, 42 U.S.C. § 1997e(a), and limitations on inmate suits unrelated to physical harm or safety, id. § 1997e(e). The PLRA also created the so-called three-strikes rule, preventing prisoners with a history of "frivolous" or "malicious" lawsuits from bringing civil actions at the public's expense, unless "under imminent

danger of serious physical injury." 28 U.S.C. § 1915(g). Importantly, as the Supreme Court has noted, the PLRA "does not provide for a standalone damages remedy against federal jailers." See Abbasi, 137 S. Ct. at 1865.

Here, Plaintiff seeks to extend Bivens into numerous contexts. The Court should hesitate before taking the extraordinary step of implying a constitutional damages remedy here. As demonstrated by the PLRA, Congress' "interest has been 'frequent and intense'" in regulating federal prisons, and it has never provided a damages remedy for federal prisoners. See Abbasi, 137 S. Ct. at 1862. As the Court in Abbasi noted, "in any inquiry respecting the likely or probable intent of Congress, the silence of Congress is relevant; and here that silence is telling." Id. at 1862 & 1865 (noting that because the PLRA "does not provide for a standalone damages remedy against federal jailers . . . . this suggests Congress chose not to extend the . . . damages remedy to cases involving other types of prisoner mistreatment"). Heeding these pronouncements in Abbasi, courts have since hesitated before extending Bivens damages claims into federal prisons. E.g., Buenrostro, 2017 WL 6033469, at *3 ("Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new Bivens claim."). This Court should do the same.

**2. Separation-of-powers counsel against judiciary intervention with day-to-day administration of the SOMP at FCI Marianna because Congress delegated the safe and orderly operation of prisons to the Executive.**

"When a party seeks to assert an implied cause of action under the Constitution itself, . . . separation-of-powers principles are or should be central to the analysis." Abbasi, 137 S. Ct. at 1857. In the context of federal prisons, and with respect to regulation of daily activities at the FCI Marianna SOMP in particular, separation-of-powers is an additional special factor that should cause this Court to hesitate before expanding a Bivens remedy.

Congress has long delegated the management of federal prisons to the Executive (namely, the Attorney General and BOP). And as the Supreme Court has stated, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." See Turner v. Safley, 482 U.S. 78, 84-86 (1987). "[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." Id. at 84. Instead, "[p]rison administration is . . . a task that *has been committed to the responsibility of [the Legislative and Executive] branches, and separation of powers concerns counsel a policy of judicial restraint*." Id. at 85 (emphasis added).

Here, separation-of-powers principles inherent in Congress' delegation of running federal prisons to the Attorney General and BOP should cause the Court

hesitation before establishing a new <u>Bivens</u> damages remedy. This is particularly true for the claims brought by Plaintiff, a sex offender, concerning the SOMP institution supplement photograph restriction at FCI Marianna. Institutional policies about what materials sex offenders may possess in prison rest peculiarly in the province of BOP, which has a particular interest in what materials, if allowed, would compromise the safety and security of the institution. Recognizing these separation-of-powers concerns, courts since <u>Abbasi</u> have refrained from expanding a <u>Bivens</u> remedy in the federal prison context.[3] This Court should do the same for Plaintiff's claims concerning the SOMP institution supplement.

### 3. A *Bivens* action is an improper avenue for attacking BOP policy.

"[A] <u>Bivens</u> action is not 'a proper vehicle for altering an entity's policy.'" <u>Abbasi</u>, 137 S. Ct. at 1860 (quoting <u>Malesko</u>, 534 U.S. at 74). "<u>Bivens</u> . . . is concerned solely with deterring the unconstitutional acts of individual officers." <u>Malesko</u>, 534 U.S. at 71. A remedy under <u>Bivens</u> is not meant to "deter[] . . . the conduct of a policymaking entity." <u>Id.</u> Rather, a suit for injunctive relief against the agency "has long been recognized as the proper means for preventing entities from acting unconstitutionally." <u>Id.</u> at 74.

---

[3] <u>See</u> <u>Buenrostro</u>, 2017 WL 6033469, at *4; <u>Attkisson v. Holder</u>, No. 1:17-CV-364, 2017 WL 5013230, at *7 (E.D. Va. Nov. 1, 2017); <u>Ochoa v. Bratton</u>, No. 16-CV-2852, 2017 WL 5900552, at *7 (S.D.N.Y. Nov. 28, 2017); <u>Rager v. Augustine</u>, 5:15-cv-35, Doc. 178, (N.D. Fl. Nov. 8, 2017).

Here, Plaintiff's claims concerning the implementation and enforcement of the SOMP institution supplement, which restricts the types of photographs a sex offender may possess in prison, is an improper attack on BOP policies and Program Statements, and are better suited, if at all, for challenge under the APA, not Bivens. See Bunn v. Conley, 309 F.3d 1002, 1009 (7th Cir.2002) ("The APA applies to the Bureau of Prisons . . . and therefore may be the appropriate way to contest the Bureau's implementation of [a Program Statement]"). Plaintiff's Complaint here expressly challenges BOP's SOMP institution supplement photograph restriction policy as it relates to sex offenders' possession of photographs. See Doc. 1. Using statutory guidance from Congress, BOP has employed its delegated authority to promulgate program statements governing the treatment of sex offender inmates and the materials they may possess in prison. Just because low-level federal employees implement and execute such policies does not make a Bivens suit the appropriate vehicle for Plaintiff's claims. Put plainly, "a Bivens action is not 'a proper vehicle for altering an entity's policy.'" Abbasi, 137 S. Ct. at 1860.

"Special factors" are "[t]aken together," and considered in the aggregate. See Abbasi, 137 S. Ct. at 1857-58, 1860-63; Chappell, 462 U.S. at 304. Here, the alternative available processes to which Plaintiff can avail himself, along with the other special factors present in the context of federal prisons, counsel against

implying the non-statutory, personal damages remedy for the claims for which Plaintiff seeks relief.

### E. Claims against Defendants Rush and Withers Should be Dismissed as Plaintiff Fails to Allege Facts to Support their Personal Involvement in any Constitutional Violation.

Plaintiff names as defendants Warden Withers and Dr. Rush due to their supervisory roles at FCI Marianna.  Doc. 1.  Plaintiff alleges that both defendants, in their capacity as Warden and Chief Psychologist, are "legally responsible" for the overall operations of FCI Marianna (for the Warden) and the FCI Marianna Psychology Program (Dr. Rush).  Id.  In Plaintiff's statement of his claim, he identifies no personal involvement by Withers or Rush in the rejection of the photographs that he complains about other than that they allegedly "approved and upheld the policy and practice created by [Defendants Rivera and Proulx] and continue to uphold and enforce the policy and practice."  Id.

Plaintiff fails to identify any personal participation by Withers or Rush in the actual rejection of the photographs in question pursuant to the SOMP institution supplement.  Because liability in a Bivens suit is personal, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. "[V]icarious liability is inapplicable to Bivens" actions. Id. ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat*

20

*superior*."); see also Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003);

Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). "Supervisory liability may

be shown only when the supervisor personally participated in the acts that comprise

the constitutional violation, or where there is the existence of a causal connection

linking the supervisor's actions with the violation." Holmes v. Fink, No. 1:13-cv-

00012-JHH-TMP, 2013 U.S. Dist. LEXIS 184331, at *12 (N.D. Ala. Nov. 21, 2013)

(citing Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988)). A single incident does

not ordinarily establish the requisite causal connection. Brady v. Fla. Dep't of Labor

& Empl. Sec., 133 F.3d 797, 802 (11th Cir. 1998); Brown v. Crawford, 906 F.2d

667, 671 (11th Cir. 1990). Plaintiff has not shown any participation by Withers or

Rush in any alleged violation of his constitutional rights.

Accordingly, all claims against Defendants Withers and Rush should be

dismissed for failure to state a claim because other than as supervisors at FCI

Marianna, Plaintiff fails to identify how they were involved in allegedly violating

his constitutional rights.

## F.  QUALIFIED IMMUNITY

### 1.  At all relevant times, Defendants were simply doing their jobs, thus satisfying step 1 of the qualified immunity analysis.

"Qualified immunity protects government officials performing discretionary

functions as long as their conduct 'does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'" See Sharp

v. Fisher, 532 F.3d 1180, 1183 (11th Cir. 2008)(quoting Beshers v. Harrison, 495 F.3d 1260, 1265 (11th Cir.2007)). Qualified immunity relieves government officials from the need to "constantly err on the side of caution" by protecting them from liability and the burdens of litigation. See Holmes v. Kucynda, 321 F.3d 1069, 1077 (11th Cir.2003)(citations omitted). To receive qualified immunity, the officer must first show that he acted within his discretionary authority. See Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir.2002). In determining whether an employee acted within his discretionary authority, the Eleventh Circuit engages in a "two-fold" inquiry. See Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir.2004)(quoting McCoy v. Webster, 47 F.3d 404, 407 (11th Cir.1995)). At the first step, the court asks "whether the government employee was … performing a legitimate job-related function (that is, pursuing a job-related goal)." Id. "Put another way, to pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, but for the alleged constitutional infirmity, would have fallen within his legitimate job description." Id. At the second step, the court asks whether the government employee was performing the job-related function "through means that were within his power to utilize." Id.

Here, the acts Plaintiff complains about (creating a SOMP institution supplement concerning restrictions on the possession of photographs by those in the

SOMP and enforcing that institution supplement) were taken by the Defendants within the scope of their day-to-day job duties as BOP officials, Plaintiff's Complaint makes this clear. Doc. 1. Holloman ex rel. v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004)(explaining that a government employee acts within the scope of discretionary authority when he performs legitimate job-related functions through means that were in his power to use).

## 2. There Has Been No Violation of Plaintiff's Constitutional Rights and Defendants are entitled to qualified immunity.

"Once the Defendants have established that they were acting within their discretionary authority, the burden shifts to the plaintiff[] to show that qualified immunity is not appropriate." Gonzalez, 325 F.3d at 1234. To determine whether qualified immunity is appropriate after the court determines that the Defendants were acting within their discretionary authority, the court must consider two different issues. Saucier v. Katz, 533 U.S. 194, 200 (2001). The court looks at: (1) whether the facts, taken in the light most favorable to the Plaintiff, demonstrate that the Defendant official's conduct violated a constitutional right of the Plaintiff, and (2) whether the right allegedly violated was clearly established. Smith v. Sheriff, Clay County, Fla., 2013 WL 425562, at *3 (11th Cir. Feb. 5, 2013)(slip op.)(citing Saucier v. Katz, 533, U.S. 194, 201 (2001)). Courts may exercise their sound discretion in deciding which of the two issues should be addressed first in light of

circumstances in the particular case at hand.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).

### a. There was no violation of Plaintiff's First Amendment rights and Defendants are entitled to qualified immunity.

Plaintiff alleges that his First Amendment rights were violated by the enforcement of the SOMP institution supplement photograph restriction because "[p]hotographs are protected by the First Amendment." Doc. 1.  The Supreme Court recognized in Turner that imprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment. 482 U.S., at 93; see also O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). But at the same time the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere.  E.g., Turner, 482 U.S. at 84-85. Courts owe "substantial deference to the professional judgment of prison administrators." Overton v. Bazzetta, 539 U.S. 126, 123 S.Ct. 2162 (2003).   And Turner reconciled these principles by holding that restrictive prison regulations are permissible if they are "'reasonably related' to legitimate penological interests," 482 U.S., at 87, and are not an "'exaggerated response'" to such objectives, id.  In the instant case, the SOMP institution supplement only restricts those sex offender inmates in the SOMP from having photographs of children who are not their child by birth, adoption, or legal means and grandchildren from the same.  Doc. 1

Attachment B.  The SOMP institution supplement photograph restriction does not restrict all photographs that Plaintiff, a sex offender, may possess.  The photographs Plaintiff complains about were of "pubescent males in bathing clothes, and pictures of prepubescent and adolescent males and females" that were determined by SOMP staff to be risk-relevant due to Plaintiff's offense history of production and possession of child pornography and therefore rejected.  Doc. 1 Attachment D.  The photographs were treated as contraband as "constituting sexual risk factors (i.e., have the potential to contribute to future sexual offending)".  Doc. 1 Attachment B.  In accordance with the Institution Supplement 5324.10C Sex Offender Programs and Program Statement 5265.14 Correspondence, the photographs were deemed "detrimental to the security and good order of the institution".  Id.  The SOMP institution supplement photograph restriction does not infringe on Plaintiff's speech rights, religious practice, or on his right to associate with people, including minors (to whom he can still speak over the phone, visit with, or email).  The institution supplement only restricts the types of photographs Plaintiff, a sex offender, can possess while in the SOMP.  Plaintiff's First Amendment rights were not violated and Defendants are entitled to qualified immunity.

### b. Plaintiff's Fifth Amendment due process rights were not violated and Defendants are entitled to qualified immunity.

Plaintiff alleges that the SOMP institution supplement violates his due process rights because the policy deprives him of "an entire category of photographs without

considering" either the specific photographs' contents or Plaintiff's offense conduct, institutional conduct, or personal characteristics.  Doc. 1.

It is well-settled that an inmate's property rights are limited, and that prison officials have significant discretion in defining what items inmates can and cannot possess while incarcerated.  See Bell v. Wolfish, 441 U.S. 520, 553 (1979).  Pursuant to BOP policy, inmates are allowed to obtain and possess personal property subject to BOP rules and the institution's policies and procedures.  Allowable personal property varies from institution to institution depending on security concerns and treatment programs.  See 28 C.F.R. § 553.10; BOP Program Statement 5580.08, Inmate Personal Property (08/2011), p.1.   The SOMP handbook indicates that "pictures or drawings of any child with the exception of those deemed immediate family (i.e. children by birth, adoption, or legal means, and grandchildren from any of the above), and who are not a victim of their sexual offending behaviors as listed within their PSR or other legal documentation" will be treated as contraband.  Doc. 1 Attachment B.

"In order to establish a violation of the Due Process Clause, a petitioner must have been deprived of a liberty or property interest protected under the Fifth Amendment."  Cook v. Wiley, 208 F.3d 1314, 1322 (11th Cir. 2000).  "While an inmate's ownership of property is a protected property interest that may not be infringed without due process, there is a difference between the right to own property

26

and the right to possess property while in prison." Hatten v. White, 275 F.3d 1208, 1210 (10th Cir. 2002) (citing Williams v. Meese, 926 F.2d 994, 998 (10th Cir. 1991)) (prisoner was permitted "to send the property he could not possess in prison to a place of his choosing, and therefore was not deprived of the property"); see also Searcy v. Simmons, 299 F.3d 1220, 1229 (10th Cir. 2002) (due process is satisfied when a prison provides a meaningful opportunity for the inmate to send unauthorized property to someone outside the prison as an alternative to having it destroyed).

Moreover, an intentional deprivation of a prisoner's property fails to state a claim if there is an adequate post-deprivation remedy. See Hudson v. Palmer, 468 U.S. 517, 533 (1984); Del Raine v. Williford, 32 F.3d 1024, 1044-46 (7th Cir. 1994); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994). The BOP's Administrative Remedy Program qualifies as such an adequate remedy. Bowens v. U.S. Dep't of Justice, 415 F. App'x 340, 344 (3d Cir. 2011).

For due process purposes, a prison inmate is entitled only to notice of the rejection and an opportunity to challenge it. Procunier v. Martinez, 416 U.S. 396, 417-18 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989) ("[W]ithhold[ing] delivery of [inmate mail] must be accompanied by minimum procedural safeguards."); see Stauffer v. Gearhart, 741 F.3d 574 (5th Cir. 2014) (inmate failed to state due process claim regarding confiscation of magazines where inmate was able to make claims challenging confiscation through prison

grievance process and received written justification for confiscation).  Here, Plaintiff received all the process he was due.  Plaintiff made full use of the BOP's administrative remedy program and received written justification as to why the photographs were sent back.  Doc. 1 Attachment A, B, C, D, E, and F.  There was no due process violation and Defendants are entitled to qualified immunity.

### c. The SOMP institution supplement is not an Ex Post Facto punishment.

Plaintiff further claims that the photograph restriction constitutes an unlawful *ex post facto* punishment that deprives him of property because of his criminal offense.  "To fall within the *ex post facto* prohibition, a law must be retrospective— that is, 'it must apply to events occurring before its enactment'—and it 'must disadvantage the offender affected by it,' by altering the definition of criminal conduct or increasing the punishment for the crime."  Lynce v. Mathis, 519 U.S. 433, 441 (1997) (quoting Collins v. Youngblood, 497 U.S. 37, 50 (1990)).  However, "[t]he *ex post facto* bar applies only to criminal laws, however, not to civil regulatory regimes."  Waldman v. Conway, 871 F.3d 1283, 1293 (11th Cir. 2017).   In Waldman, the Eleventh Circuit rejected a sex offender inmate's *ex post facto* challenge to prison conditions imposed on him due to his offense of conviction (a sex offense).  Those prison conditions included ineligibility for a minimum custody classification, work release, and other early-release programs, as well as mandatory classes or group therapy sessions while in prison.  Id. at 1288.  The court held that

neither these restrictions, nor the inmate's reclassification as a sex offender while he was already serving his prison term, constituted an *ex post facto* punishment because the classification scheme was civil in nature and "a state can make a reasonable categorical judgment that conviction of specified crimes should entail particular regulatory consequences." Id. at 1294. The court further held that there was a "rational connection" between the state's "stated goal of protecting minors and the minimum-custody restrictions and rehabilitation classes imposed as a result of" the inmate's sex offender designation. Id. at 1294-95.

The same analysis holds true in this case. If anything, the restriction imposed on Plaintiff (no photographs of non-children or non-grandchildren) is even less restrictive than the conditions at issue in Waldman. The photograph restriction is not a criminal law that imposes an "increased punishment" on Plaintiff, and there is a rational connection (detailed *supra*) between the restriction and the goals of the SOMP program. Importantly, the photograph restriction does not take Plaintiff's property (photographs) from him permanently (such as in the nature of criminal restitution or forfeiture), it simply restricts his possession of them while in the SOMP. There is no *ex post facto* violation here and Defendants are entitled to qualified immunity.

### d. Equal Protection Claim

The basis for Plaintiff's equal protection claim is that he is being targeted "simply because he is a member of a particular group [sex offenders or SOMP inmates] without consideration of his individual offense history or institutional conduct." Doc. 1.

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." It is, essentially, a direction to treat similarly situated people alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). If the prisoner's allegations do not implicate a suspect class or fundamental right, a court may evaluate only whether there was a rational basis for the differing treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Cook v. Wiley, 208 F.3d 1314, 1323 (11th Cir. 2000). Under rational basis review, "the government has no obligation to produce evidence to sustain the rationality of a statutory classification, and the complaining party has the burden to negate every conceivable basis which might support it." United States v. Castillo, 899 F.3d 1208, 1213 (11th Cir. 2018) (quotation marks and citations omitted).

Thus, the equal protection analysis here asks only whether there was a rational basis for treating Plaintiff differently from other similarly situated inmates. The Complaint makes clear that all inmates like Plaintiff who are participating in the SOMP are subject to the same restriction on photographs, so in actuality there is no

different treatment.  Doc. 1.  Plaintiff admits that there was a problem with sex offenders sharing photos of minor children for deviant purposes, Doc. 1 Attachment C, so to the extent Plaintiff and other SOMP inmates are treated differently from non-SOMP inmates, there is a rational basis for that differing treatment, i.e., curtailing sex offenders sharing photos of minor children for deviant purposes.  See Sweet v. Sec'y, Dept. of Corr., 467 F.3d 1311, 1319 (11th Cir. 2006) (dismissing prisoner's equal protection claim when prisoner failed to allege "that he was treated differently on account of some form of invidious discrimination tied to a constitutionally protected interest").

Plaintiff claims he is entitled to some sort of individualized review of his history and characteristics prior to the policy applying to him.  Plaintiff's offense conduct involved possession and production of child pornography and even if he was entitled to individualized review, his offense history would be more than enough of a rational basis for prohibiting him from possessing pictures or drawings of any child with the exception of those deemed immediate family (i.e., children by birth, adoption, or legal means, and grandchildren from any of the aforementioned) and who are not a victim of his sexual offending behavior as listed in his PSR or other legal documentation.  See United States v. Culver, 598 F.3d 740, 744 (11th Cir. 2010).  The SOMP institution supplement and its enforcement concerning the restriction on the types of photographs an inmate in the SOMP can possess does not

violate Plaintiff's equal protection guarantee and Defendants are entitled to qualified immunity.

### 3. Plaintiff cannot show that Defendants violated a clearly established right.

The second prong of the Saucier analysis is whether the right allegedly violated was clearly established.  The standard in the Eleventh Circuit is "pre-existing law" must "dictate[], that is truly compel[], the conclusion for all reasonable, similarly situated public officials that what [the Defendant] was doing violated [the Plaintiff's] federal rights in the circumstances."  Evans v. Stephens, 407 F.3d 1272, 1282 (11th Cir. 2005) (en banc) (internal quotation marks omitted).

If the facts do establish a constitutional violation, the court examines "whether the right was clearly established.  This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201; see also Purcell Ex Rel. Estate of Morgan v. Toombs Cnty., 400 F.3d 1313, 1319 (11th Cir. 2005) ("Qualified immunity protects government officials performing discretionary functions from civil trials and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known").  The ultimate inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Saucier, 533 U.S. at 202.

The Supreme Court has explained that the standard of liability is so high that it protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986); see also Hope v. Pelzer, 536 U.S. 730, 741 (2002) (noting that the "salient question" that a court must answer when making this inquiry is whether the state of the law at the time of the incident gave the officer "fair warning" that his alleged treatment of the plaintiff was unconstitutional). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of the pre-existing law the unlawfulness must be apparent." Hope, 536 U.S. at 739. Indeed, in the Eleventh Circuit the courts will generally accord "official conduct a presumption of legitimacy." Gonzalez, 325 F.3d at 1235 (quotation and citation omitted).

Here, there was no constitutional violation. However, even if the court determined that Plaintiff, a sex offender, enrolled in the SOMP, has a constitutional right to have photographs of children who are not his children by birth, adoption, or legal means, and grandchildren from same, while enrolled in a sex offender treatment program, that right was not clearly established at the time the SOMP photograph restriction was applied to Plaintiff. Additionally, the court would have to create new law to determine that sex offenders were a suspect class, and that restrictions on them are subject to heightened scrutiny, thereby further

demonstrating that such rights were not clearly established when the SOMP institution supplement was applied to Plaintiff.  The court would likewise have to significantly depart from the closest on-point precedent (<u>Waldman</u>) to find that there was an *ex post facto* issue with the SOMP institution supplement.  Thus, even if the court is inclined to create new law in this area, the Defendants would be entitled to dismissal on the basis of qualified immunity.

## CONCLUSION

Wherefore premises considered, Defendants requests that this Court grant its motion to dismiss.

Respectfully submitted,

LAWRENCE KEEFE
United States Attorney

*/s/ Herbert S. Lindsey*
HERBERT S. LINDSEY
Assistant United States Attorney
Texas Bar No. 00784476
111 N. Adams Street
Tallahassee, FL 32301
850-942-8430
Herbert.Lindsey@usdoj.gov

34

## **LOCAL RULE 7.1 CERTIFICATE**

I certify that this memorandum contains 7,960 words, per Microsoft Word's word count, which complies with the word limit requirements set forth in Local Rule 7.1(F).

*/s/* Herbert S. Lindsey
HERBERT S. LINDSEY
Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 18, 2019, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF filing system and that a true copy has been furnished by U.S. Postal Certified mail to Mr. Brian Culver, Reg no. 26299-001 at FCC Yazoo City, PO Box 5000, Yazoo City, MS 39194.

*/s/ Herbert S. Lindsey*
HERBERT S. LINDSEY
Assistant United States Attorney

# First Amended Complaint

# Doc. 37

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

BRIAN CULVER,
    Plaintiff,

v.

FEDERAL BUREAU OF PRISONS;
SHANNON D WITHERS, Warden;
STEPHANIE RUSH, Chief Psychologist;
RAMON RIVERA, SOMP Coordinator;
MICHELLE PROULX, SOMP Psychologist;
ADAM McCORD, SCSS (Acting Warden);
et. al.
    Defendants

        AMENDED COMPLAINT
        Case No. 5:18-CV-160-MCR/HTC

## I. JURISDICTION AND VENUE

1. This civil action is being brought under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics 403 U.S. 388 (1971) and the Administrative Procedures Act [5 U.S.C. 706]. Plaintiff seeks declaratory relief pursuant 28 U.S.C. Section 2201 and 2202. Plaintiff seeks injunctive relief authorized by 28 U.S.C. Section 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure.

2. The Federal Court for the Northern District of Florida is an appropriate venue under 28 U.S.C. Section 1391 (b)(2) because it is where the events giving rise to the claims occurred.

## II. PLAINTIFF

3. Plaintiff, Brian Culver, is and was at all times mentioned herein a prisoner of the United States of America in the custody of the United States Federal Bureau of Prisons. Plaintiff is currently confined at USP Yazoo City at the time of the submission of this amended complaint but was confined at FCI Marianna for all of the events that give rise to this action.

## III. DEFENDANTS

4. Defendant, Shannon D. Withers, is the warden at FCI Marianna. He is legally responsible for the overall operations of FCI Marianna.

5. Defendant, Stephanie Rush, was the chief psychologist at FCI Marianna. She was legally responsible for the overall operations of the psychology department.

6. Defendant, Ramon Rivera, is the SOMP (Sex Offender Management Program) coordinator at FCI Marianna. He is legally responsible for the overall operations of the SOMP.

7. Defendant, Michelle Proulx, is the SOMP psychologist at FCI Marianna. She is legally responsible for the welfare and treatment of inmates who are in the SOMP.

8. Defendant, Adam McCord, is the SCSS at FCI Marianna and was "Acting Warden" at the time pertinent events took place which gave rise to this civil action.

9. Each defendant is sued individually and in his or her official capacity.

## IV. FACTS

10. The Federal Bureau of Prisons created a Sex Offender Management Program (SOMP) to assist in the effective management of its population of sexual offenders and to provide services that minimize this population's risk for sexual re-offense. FCI Marianna is designated as a SOMP institution.

11. A primary goal of SOMP institutions is to reduce the need to place sexual offenders in protective custody, and to create an institutional climate conducive to voluntary participation in treatment. SOMP is not treatment but is only a management program used by the Federal Bureau of Prisons.

12. A key component of SOMP is "risk management". Risk management services are designed to reduce the likelihood that sexual offenders in Bureau institutions engage in future acts of a sexually offensive nature. Risk is determined by an Initial Risk Assessment which is used to guide treatment and management decisions. Effective management of sexual offenders in prison requires accurate assessment of risk relevant behavior.

13. Risk relevant behavior is an individualized determination and is defined as institutional behavior related to an individual's sexual offending history that indicates risk of future sexual offending upon release. When an individual has been found to be engaging in behavior that is risk relevant for him, he may be placed on a Correctional Management Plan (CMP). When one is placed on a "CMP", personal property may be restricted. Examples of categories of personal property subject to restrictions for one on a "CMP" include: Items that may be used as sexual paraphernalia such as photos or drawings depicting adults or children in sexually explicit or suggestive poses or situations; materials that promote the sexual exploitation of children; or written correspondence in which individuals are discussed in a sexual way.

14. When and if one is placed on a "CMP", the plan must comply with the procedures set forth in the Bureau's program statement PS 5266.1 and/or PS 5580.08 which only allow restrictions that have to do with nudity or sexually explicit material.

15. Plaintiff has never been placed on a "CMP" nor has plaintiff ever engaged in risk relevant behavior or possessed sexually explicit material and/or materials containing nudity during his 12+ years of incarceration in the Federal Bureau of Prisons.

16. Plaintiff's initial risk assessment upon arrival at FCI Marianna included a "Static 99". A Static 99 is an assessment tool used to determine the likelihood of recidivism based upon an offender's offense conduct and history. The lower the score on the Static 99, the less likely one is to re-offend. Plaintiff's score on the Static 99 was a "0" (zero).

17. Under the Bureau of Prison's SOMP policy, each institution is required to have an institutional supplement which reflects that institution's unique characteristics and specifies how it will monitor inmates for risk relevant behavior.

18. Defendants Ramon Rivera and Michelle Proulx created a policy and practice that goes beyond the scope of the Bureau of Prisons's SOMP policy. The policy and practice these defendants created does not "Monitor" but "Bans". Ramon Rivera and Michelle Proulx exceeded the scope of their jobs by creating "policy". Said policy is not only unconstitutional but it exceeds the authorization the BOP gives institutions under the BOP SOMP program statement.

19. The policy and practice implemented by defendants Rivera and Proulx bans all photos of any minor child who is not the biological or adopted child of the inmate if the inmate is labeled a "sex offender" regardless of the specifics of the inmate's sex offense. This includes inmates who have no minor victims in their background. This ban does not apply to inmates at Marianna who are not labeled "sex offenders".

20. Defendants Shannon Withers and Stephanie Rush allowed this policy to be implemented and enforced.

21. The defendants in this case have mixed and matched the standards of "Risk Relevant" and "Safety and Security of the Institution" to justify the implementation of this capricious policy. Risk relevant is an individualized determination which can not be in a policy that applies to everyone. "Safety and Security of the Institution" covers the entire institution. If a particular type of picture jeopardizes the safety and security of the institution, then that picture would jeopardize the safety and security of the institution regardless of who was in possession of the picture and regardless of the family relationship to the inmate.

22. Based upon this capricious policy, appropriate pictures of the plaintiff's family were rejected (Exhibits A1-A3).

23. When plaintiff attempted to informally resolve the situation, Defendant Adam McCord responded by insinuating that somehow plaintiff's family pictures were rejected because they were "Sadomasochistic", involved "Bestiality" and/or were sexually explicit "Involving Children" (Exhibits B1-B3).

24. The pictures which were rejected (Exhibits A1-A3 ) are of plaintiff's nephews. These family members are on plaintiff's approved visitation list and have visited plaintiff several times (Exhibit C).

25. Plaintiff alleges that there is no rational basis for rejecting appropriate family pictures and all of the defendants named in this action acted outside of the scope of the Federal Bureau of Prison's policy.

26. Upon information and belief, no other SOMP institution within the Bureau of Prisons has a policy that rejects all family photos of minors simply because one is labeled a "sex offender". FCI Marianna does not have any unique characteristics that make such a restriction necessary.

27. Defendant Proulx stated she "wrote the policy" which is outside the scope of her duties. Writing policy exceeds the scope of defendant Proulx's duties. Defendant Proulx misused her credentials to fabricate and justify a need for the absurd policy. There is no research or facts which can support such a policy.

28. Plaintiff alleges there were already appropriate means in place at FCI Marianna and within the Federal Bureau of Prison's policies to address any situation concerning inappropriate photographs.

29. Plaintiff was placed on a de facto "CMP" Correctional Management Plan for no valid reason.

30. Plaintiff alleges that there is no rational nexus between one having appropriate family photos and any risk of recidivism. Plaintiff further states that he essentially has life in prison and recidivism is a moot point in his case. Plaintiff alleges the defendants willfully misused the term "risk relevant" as a tactic to discredit any complaint which is made against their capricious actions.

31. The Federal Bureau of Prison's policy specifically states: "Ordinarily photographs, particularly those of family and friends are approved, since they represent meaningful ties to the community" [PS 5580.08 2. (h)]

32. Plaintiff alleges that the defendant's actions and Marianna's local policy is not related to any legitimate penological or therapeutic interest and is capricious. The Bureau of Prisons has allowed Marianna to go rogue.

## V. EXHAUSTION OF LEGAL REMEDIES

33. Plaintiff, Brian Culver, used the prison grievance procedure to try and solve this problem. A BP-8 was submitted on August 16, 2017. Plaintiff received the response on August 24, 2017 (Exhibits B1-B2) Plaintiff filed a BP-9 which was received on September 14, 2017 (Exhibit D). Plaintiff filed a BP-10

3

which was received on October 10, 2017 (Exhibit E).  Plaintiff filed a BP-11 which was receive on February 20,2018 (Exhibit F).  The final response to all of plaintiff's administrative remedies was received by the plaintiff on March 2, 2018 (Exhibit G).  Plaintiff has exhausted all of his administrative remedies.

## VI.  LEGAL CLAIMS

34. Plaintiff re-alleges and incorporates by reference paragraphs 1-33.

35. The defendants in this case stepped outside of their official roles when they created and implemented a policy that bans all of plaintiff's family photos if they contain a minor in them unless the minor is the biological or adopted child of the minor.  The defendant's actions were not authorized by the Federal Bureau of Prisons' SOMP policy and it violates plaintiff's Constitutional rights.

36. When defendants took it upon themselves to "punish" plaintiff for no other reason than his criminal conviction, defendants violated plaintiff's Constitutional right to be free from ex post facto punishment.  Plaintiff has already received punishment for his crimes and it did not include mandatory programming (SOMP) or restrictions like those imposed by the defendants in this case.  Black's Law Dictionary defines punishment as the deprivation of liberty or property.  Plaintiff is being deprived of property for no valid reason other than his conviction.  It is not within the scope of defendant's duties to impose additional punishment unless the plaintiff has done something that warrants the punishment or unless it is related to a legitimate therapeutic or penological objective.  In this case it is not.  It is based solely upon the label that plaintiff's conviction carries.  This is additional punishment "after the fact" which is an ex post facto violation.

37. The policy and practice and the behavior of the defendants is arbitrary, capricious and an abuse of discretion.  The policy and practice and the behavior of the defendants violates plaintiff's Constitutional rights under the First Amendment of the United States Constitution.  Photographs are protected by the First Amendment. [Kaplan v. California, 413 U.S. 115 (1973)] "A prison regulation that impinges upon freedoms protected by the Federal Constitution's First Amendment is invalid if the regulation is (1) not reasonably related to legitimate penological interest or (2) an exaggerated response to such objective". [Beard, SEC Penn. Dept. of Corr. v. Banks, 548 U.S. 521 (2006)] The policy and actions of the defendants are not based on a legitimate penological interest and are an exaggerated response.  Rather than placing individuals who engage in "risk relevant" behavior on Correctional Management Plans, Defendant Proulx (specifically) and the other defendants placed everyone at FCI Marianna who has the label of sex offender on a de facto Correctional Management Plan.  This violates due process and was an exaggerated response to a problem.

38. As a result of plaintiff being placed on a de facto Correctional Management Plan, plaintiff is forbidden from ever having family photos of any kind if the photo contains a minor that is not the plaintiff's biological or adopted child.  All future family photos with a minor in them (including Christmas Cards, birth announcements, family group pictures, etc..) will be considered "contraband" and/or "risk relevant" before the picture is even seen or before the inmate's institutional conduct and individual offense history is taken into consideration.  This violates the United States Constitution's due process clause.

39. This policy and practice and the actions of the defendants violates the Equal Protection Clause of The United States Constitution because it treats plaintiff differently than other inmates who are at FCI Marianna for safety reasons.  Plaintiff is at FCI Marianna for his safety, not because he has been involved in any "risk relevant" behavior that requires special monitoring.  Plaintiff is in the same situation as other inmates who are at FCI Marianna for their safety such as: Transgenders, Informants, and Gang Drop-Outs.  None of these other protective custody inmates have restrictions on appropriate family photos.  The similarly situated inmates in this case are the protective custody inmates at FCI Marianna and there is no valid reason to institute a blanket ban based upon nothing more than unfounded bias for one's label.

4

40. Plaintiff claims the policy and practice, the behavior of the defendants, and the Bureau of Prisons' SOMP can be viewed as a form of extortion. Black's Law Dictionary defines extortion as the offense committed by a public official who illegally obtains property under the color of office. The Bureau of Prisons created SOMP as an alternative to sex offenders spending time in the SHU (Special Housing Unit) due to safety issues and being victimized. In order for plaintiff to be safe and avoid spending his incarceration time in the "SHU", he has to essentially pay for this safety and privilege by giving up something. If this was another inmate demanding this price for safety, it would be clear a case of extortion. Inmates who are not labeled a sex offender do not have to pay for their safety by giving up personal property. This is an equal protection violation and unconstitutional. If the policy is viewed as extortion, it also violates statutes.

41. All of the defendants listed in this action stepped outside of the Bureau of Prisons' policy and targeted plaintiff for no valid penological or therapeutic reason. The defendant's actions were not based upon any fact base reason and was an exaggerated response based upon nothing more than a bias for plaintiff's label. Forbidding plaintiff from having appropriate family photos (which represent meaningful ties to his community and family) for no valid reason constitutes cruel and unusual punishment with is forbidden under the Eighth Amendment of the United States Constitution. While plaintiff concedes that a Bivens action cannot be maintained when one is following policy, this case presents a case where rogue officers held the pen that made the rogue policy therefore they should be held liable for their actions. Defendants Rush, Rivera, and Proulx are psychology professionals who recklessly and purposefully misused a clinical determination "risk-relevant" to achieve their own personal agendas based upon personal bias. If viewed in the same light as medical malpractice, it shows a willful disregard for plaintiff's mental well-being by putting an unwarranted barrier between the plaintiff and his family support system.

42. All defendants in this case acted deliberately and vindictively despite the fact they knew their actions violated established Bureau of Prisons' policy and the Constitutional rights of the plaintiff. The defendants hid behind their pens and rogue policy to willfully violate plaintiff's First Amendment rights, plaintiff's right to equal protection, plaintiff's right to due process, plaintiff's right to be free from cruel and unusual punishment, and plaintiff's right to be free from ex post facto punishment.

43. The policy which bans all of plaintiff's family photos if they contain a minor in them who is not the biological or adopted child of the plaintiff is capricious, unwarranted, and violates the United States Constitution. While prison may limit many of plaintiff's Constitutional rights, prison walls do not form a barrier between the plaintiff and the United States Constitution.

## VII.  PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays that this court enter judgment granting plaintiff:

44. A declaration that the acts and omissions described herein violated plaintiff's rights and the policy and practice of banning family photos simply because the photo contains a minor who is not plaintiff's biological or adopted child is a violation of the constitution and laws of the United States and/or is an exaggerated unwarranted response.

45. A preliminary and permanent injunction ordering all of the defendants to cease the practice of banning family photos simply because they contain a minor who is not the plaintiff's biological or adopted child and to revise Marianna's Institutional Supplement to remove this provision.

46. Compensatory damages in the amount of $1 (one dollar) against each defendant, jointly and severally.

47. Punitive damages in the amount of $100 (one hundred) against each defendant.

48. A jury trial on all issues triable by jury.

49. Plaintiff's cost in this suit.

50. Any and all additional relief this court deems just, proper, and equitable.


DATE: 7-9-19

RESPECTFULLY SUBMITTED BY
Brian Culver


I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as matters alleged on information and belief, and as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at USP Yazoo City, Yazoo City, Mississippi, on 7-9-19

Brian Culver


CERTIFICATE OF SERVICE

I, Brian Culver, certify that a true and accurate copy of this AMENDED COMPLAINT was served on:

    U.S. Attorney's Office
    Attn: Herbert  S. Lindsey
    111 N Adams Street
    Tallahassee, FL 32301


by placing said copy in the legal mail system here at USP Yazoo City on this 10TH day of July 2019 with postage paid.


Brian Culver 26299-001
USP Yazoo City
PO Box 5000
Yazoo City, MS 39194

6



CHECKED JUL 15 2019

U.S. District Court
Office of The Clerk
100 North Palafox Street
Pensacola, FL 32502

◇26299-001◇
U S District Court
Office of the Clerk
100 N Palafox ST
Pensacola, FL 32502
United States

Brian Cluver 26299-001
United States Penitentiary
PO Box 5000
Yazoo City, MS 39194

FEDERAL CORRECTIONAL COMPLEX
P.O. BOX 5666
YAZOO CITY, MS 39194

THE ENCLOSED LETTER WAS PROCESSED
ON _____ THROUGH SPECIAL
MAILING PROCEDURES.

The letter has neither been opened or inspected if
the writer raises a question or problem over which
this facility has jurisdiction, you may wish to
return the material for further information or
clarification. If the writer encloses
correspondence for forwarding to another
addressee, please return the enclosure to the above
address.



# Motion to Dismiss Amended Complaint

# Doc. 40

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**BRIAN CULVER,**
    **Plaintiff,**

      **vs.**
                                 **Case No.:**
                                 **5:18-cv-160-TKW-HTC**

**FEDERAL BUREAU OF PRISONS,[1]**
**SHANNON D. WITHERS, WARDEN,**
**STEPHANIE RUSH, CHIEF PSYCHOLOGIST,**
**RAMON RIVERA, SOMP COORDINATOR,**
**MICHELLE PROULX, SOMP PSYCHOLOGIST,**
**ADAM MCCORD, SCSS (ACTING WARDEN)**
    **Defendants.**

_____/

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
## AMENDED COMPLAINT

Plaintiff, a federal prisoner, brings this amended action pursuant to <u>Bivens</u>,

claiming that his Constitutional rights were violated by individuals at FCI Marianna

in their enforcement of a sex offender management program (SOMP) institution

supplement that restricts photographs that an inmate in the SOMP can possess.

Plaintiff's claims should be dismissed for two reasons: (1) special factors counsel

against extending <u>Bivens</u> to this new context; and (2) even if a <u>Bivens</u> action could

---

[1] The Federal Bureau of Prisons and Adam McCord have not been served with Plaintiff's Amended Complaint.

be maintained, Defendants are entitled to qualified immunity because Plaintiff has not established a violation of his clearly established constitutional rights.

## I.    STATEMENT OF PLAINTIFF'S CLAIMS

On July 16, 2019, Plaintiff filed his Amended Complaint pursuant to Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 402 U.S. 388 (1971), wherein Plaintiff sued Dr. Ramon Rivera, SOMP Coordinator, and Dr. Michelle Proulx, SOMP Psychologist, alleging that they created a policy and practice that goes beyond the scope of the Bureau of Prisons' SOMP policy. Doc. 37. Plaintiff sued Warden Shannon Withers, FCI Marianna, and Dr. Stephanie Rush, retired Chief Psychologist at FCI Marianna, alleging that they allowed "this" policy to be implemented and enforced. Doc. 37. Plaintiff also sued Adam McCord, Supervisory Correctional Systems Specialist, claiming that when Plaintiff tried to "informally resolve the situation" Defendant McCord responded by "insinuating that somehow Plaintiff's family pictures were rejected because they were "Sadomasochistic" involving "Beastiality" and/or were sexually explicit "Involving Children."" Doc. 37. Plaintiff also sued the Federal Bureau of Prisons. The gravamen of Plaintiff's complaint concerns the SOMP institutional supplement policy that bans all photos of any minor child who is not the biological or adopted child of the inmate if the inmate is labeled a "sex offender" regardless of the specifics of the inmates sex offense. Doc. 37. Plaintiff does not allege that the Defendants

2

examined and rejected the photographs that he complains were rejected.  Plaintiff alleges that the SOMP institution supplement violated:  (1) his Constitutional right to be free from *ex post facto* punishment; (2) his First Amendment rights; (3) the Constitution's due process clause; (4) the Equal Protection Clause; and (5) the Eighth Amendment's prohibition against cruel and unusual punishment.  Doc. 37.

## MOTION TO DISMISS STANDARD

Although the Plaintiff need not submit detailed facts of every part of his complaint, he must provide more than statutory or constitutional labels and statements of legal conclusions in order to prove that he is entitled to relief.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, (2007).  To survive a Rule 12(b)(6) motion to dismiss, the Plaintiff must state enough facts so that a claim for relief is plausible on its face.  Id. at 570.  While all factual allegations are taken as true, the court is not required to take as true legal conclusions masked as factual allegations.  Ashcroft v. Iqbal, 556 U.S. 662, 677, (2009).  Where these factual allegations do no more than infer the mere possibility of misconduct the threshold of plausibility that would give rise to an entitlement for relief has not been met.  Id. at 679.  The pleading standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Id. at 678.  A plaintiff must assert, "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice.  Twombly, 550 U.S. at 555.

Assuming all of the factual allegations in the Plaintiff's Complaint to be true, a Bivens action is not available to remedy his complaints, and, even if it were, the Defendants' alleged conduct did not rise to the level of a constitutional violation, much less a violation of clearly established law. See Iqbal, 556 U.S. at 679 (2009).

## II.   ARGUMENT

**The Court should dismiss Plaintiff's constitutional claims against all Defendants.**

No Bivens remedy is available here because Plaintiff's claims presents a new context for which the Supreme Court has never extended an implied remedy under the Constitution; alternative processes preclude a Bivens remedy; and other special factors counsel hesitation in extending Bivens. Moreover, Defendants are entitled to qualified immunity on all claims.

## A. THE COURT SHOULD REFRAIN FROM CREATING A BIVENS REMEDY.

Plaintiff contends that his claims are actionable under Bivens. Doc. 37. They are not. A Bivens action is a limited, judicially created damages remedy for certain constitutional tort claims against certain federal employees. See Bivens, 403 U.S. at 397. In Bivens, the Supreme Court took the unprecedented step of creating an implied cause of action directly under the Fourth Amendment for an unreasonable search and seizure when federal officers entered and searched the plaintiff's apartment without a warrant, handcuffed him, and arrested him. 403 U.S. at 390,

4

397. The Court implied a cause of action in the absence of statutory authorization *only* after finding that "no special factors counsel[led] hesitation" in creating such a remedy. Id. at 396. In the more than forty years since Bivens, the Supreme Court has created an implied right of action in only two other cases: under the Fifth Amendment's due process clause for gender discrimination arising out of a Congressman's firing of his female administrative assistant, Davis v. Passman, 442 U.S. 228, 248-49 (1979), and under the Eighth Amendment's cruel and unusual punishment clause arising out of prison officials' failure to provide medical treatment for a prisoner's asthma, resulting in death, Carlson v. Green, 446 U.S. 14, 19 (1980). "These three cases—Bivens, Davis, and Carlson—represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." Ziglar v. Abbasi, 137 S. Ct. 1843, 1855 (2017).

In 2017, in Abbasi, the Supreme Court "made clear that expanding the Bivens remedy is now a 'disfavored' judicial activity." 137 S. Ct. at 1857 (quoting Iqbal, 556 U.S. at 675). This is because expansion of Bivens to a new context is best left to Congress, not the courts. As the Court put it, "[w]hen a party seeks to assert an implied cause of action under the Constitution… separation-of-powers principles are… central to the analysis," and "[w]hen an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them." Id. (internal quotations and citation

omitted). "In most instances, the Court's precedents now instruct, the Legislature is in the better position to consider if 'the public interest would be served' by imposing a 'new substantive legal liability.'" Id. (quoting Schweiker v. Chilicky, 487 U.S. 412, 426-27 (1988)).

The "antecedent" question for courts in any Bivens case is whether to devise a new remedy. See Hernandez v. Mesa, 137 S. Ct. 2003, 2006 (2017). "[T]he first question a court must ask is whether the claim arises in a new Bivens context, i.e., whether 'the case is different in a meaningful way from previous Bivens cases decided by this Court.'" Abbasi, 137 S. Ct. at 1864. If the case presents a new context, then courts consider two questions before devising a new Bivens remedy: first, whether an "alternative, existing process for protecting the [plaintiff's] interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages[;]" second, whether other "special factors" counsel hesitation before authorizing a new kind of federal Bivens litigation. Wilkie v. Robbins, 551 U.S. 537, 550 (2007).

**B. Each of Plaintiff's Claims Presents a New Context.**

"The proper test for determining whether a case presents a new Bivens context" is whether it "is different in a meaningful way from previous Bivens cases decided by [the Supreme] Court[.]" Abbasi, 137 S. Ct. at 1859. A "context is new" when there is an extension, however "modest," of the claims approved of in Bivens,

6

Davis, or Carlson. See id. at 1859, 1864. Following Abbasi, prior circuit and district

court precedents that allowed for a Bivens remedy must be reevaluated. Cf. Rager v.

Augustine, 760 F. App'x 947, 953 (11th Cir. 2019) (noting, after Abbasi, "it is by

no means clear that a damages remedy is warranted for a First Amendment claim

like this one").[2] "[D]ifferences that are meaningful enough to make a given context

a new one," include: an officer's rank; the constitutional right at issue; the generality

or specificity of alleged conduct; the extent of judicial guidance as to how an official

should respond to the matter; the legal mandate under which the official was

operating; the risk of intrusion by the judiciary into the functioning of other branches

of government; or the presence of other special factors not considered in previous

Bivens cases. Abbasi, 137 S. Ct. at 1859-60.

Here, Plaintiff's constitutional claims are markedly different from Bivens,

Davis, or Carlson. Plaintiff contends that the rejection of the photographs constitutes

*ex post facto* punishment; that photographs "are protected by the First Amendment";

Plaintiff claims that he is being placd on a "defacto" Correctional Management Plan

---

[2] See also Vanderklok v. United States, 868 F.3d 189, 199-200 (3d Cir. 2017) (explaining Third Circuit's "past pronouncements" on First Amendment Bivens claim was "not controlling" post-Abbasi); Butts v. Martin, 877 F.3d 571, 589 (5th Cir. 2017) (remanding for whether Bivens remedy is available because although "this Circuit has largely permitted Bivens [retaliation] claims against prison officials," after Abbasi it "remains inconclusive"); Sanford v. Bruno, No. 17-cv-5132, 2018 WL 2198759, at *4 (E.D.N.Y. May 14, 2018) ("[P]ost-[Abbasi], even where a Court of Appeals had previously found a Bivens remedy, that court or a district court must reconsider whether one is available."); Free v. Peikar, No. 17-CV-00159, 2018 WL 905388, at *5 (E.D. Cal. Feb. 15, 2018) ("While the Ninth Circuit has previously held that Bivens may be extended to First Amendment claims it has recently revisited this question in light of Abbasi[.]" (citations omitted)).

and is therefore forbidden from ever having family photos of any kind if the photo contains a minor that is not the Plaintiff's biological or adopted child in violation of the due process clause; Plaintiff avers that "this policy and practice and the actions of the Defendants violate the Equal Protection clause because it treats Plaintiff differently than other inmates who are at FCI Marianna for safety reasons"; and Plaintiff avers that forbidding Plaintiff from having family photos for no valid reason constitutes cruel and unusual punishment in violation of the Eighth Amendment.

These claims "bear little resemblance" to Bivens, Davis, or Carlson. They implicate mostly different constitutional rights than were at issue in those cases. See Abbasi, 137 S. Ct. at 1860. For example, the Supreme Court has never extended Bivens to allow a remedy for any claim under the First Amendment,[3] or any Fifth Amendment procedural due process, equal protection, *ex post facto* or Eighth Amendment claim, under the factual circumstances of which Plaintiff complains. Butts, 877 F.3d at 588 ("Because the Supreme Court has not recognized a Bivens remedy in the First Amendment context, Butts's claim likely presents a new context[.]"); McRae v. Lockett, No. 5:17-CV-299-OC-02PRL, 2019 WL 2303264, at *5 (M.D. Fla. May 30, 2019) (finding, after Abbasi, inmate's "First and Fifth Amendment claims present a new Bivens context," and that alternative processes

---

[3] On numerous occasions, the Supreme Court has noted that it has *never* recognized First Amendment Bivens claims in *any* context. Wood v. Moss, 134 S. Ct. 2056, 2066 (2014); Reichle v. Howard, 566 U.S. 658, 663 n.4 (2012); Iqbal, 556 U.S. at 675; Bush, 462 U.S. at 368.

8

and special factors counsel against extending Bivens); Banks v. LaRose, No. 4:17-CV-2479, 2018 WL 1942195, at *3 (N.D. Ohio Apr. 25, 2018) (finding new context, after Abbasi, for inmate alleging equal protection violations based on inmate classification); Buenrostro v. Fajardo, No. 1:14-CV-00075, 2017 WL 6033469, at *3 (E.D. Cal. Dec. 5, 2017) ("The Supreme Court has never recognized a Bivens remedy for a Fifth Amendment due process claim relating to the alleged failure of a prison official to provide due process" or for "any clause of the First Amendment"), aff'd 2019 WL 2207662 (9th Cir. May 22, 2019).

Because all of Plaintiff's claims plainly involve new Bivens contexts, this Court must evaluate (1) "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages," Wilkie, 551 U.S. at 550; and (2) whether other "special factors counsel[] hesitation in the absence of affirmative action by Congress." Abbasi, 137 S. Ct. at 1857.

### C. Alternative Existing Processes Preclude a *Bivens* Remedy.

"[I]f there is an alternative remedial structure present in a certain case, that *alone* may limit the power of the Judiciary to infer a new Bivens cause of action." Abbasi, 137 S. Ct. at 1858 (emphasis added). "For if Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from

providing a new and freestanding remedy in damages.'" Id. (quoting, Wilkie, 551 U.S. at 550). "So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclose[] judicial imposition of a new substantive liability." Malesko, 534 U.S. at 69; accord Schweiker, 487 U.S. at 423, 425 (noting that alternative processes need not provide "complete relief" so long as they provide "adequate remedial mechanisms for constitutional violations").

Here, Plaintiff has available to him other processes, provided through statutory and regulatory means, through which he can receive some form of review and redress for his claims. These processes are not theoretical – Plaintiff has sought relief through BOP's administrative grievance process, and can file an injunctive relief claim against BOP under the APA. See McRae, 2019 WL 2303264, at *6 (concluding, post-Abbasi, that inmate alleging First and Fifth Amendment claims "had alternative remedies available to him" including filing "a civil rights action seeking injunctive relief"). The availability of these alternative processes preclude his Bivens action.

BOP's administrative remedy program is implemented through regulations, 28 C.F.R. §§ 542.10-.19, which "allow an inmate to seek formal review of an issue relating to *any* aspect of his/her own confinement." 28 C.F.R. § 542.10 (emphasis added). Plaintiff sought review through BOP's administrative remedy program and received notices from BOP at various levels explaining why an action was taken,

10

and what policy or program governed the relevant decisions. Doc. 37 Attachments B1, B2, D, E, F and G.

"'Alternative remedial structures' can take many forms, including administrative, statutory, equitable, and state law remedies." Vega v. United States, 881 F.3d 1146, 1154 (9th Cir. 2018). Following Abbasi, courts have consistently found that BOP's administrative remedy program, whether by itself or in conjunction with other processes, can preclude a Bivens remedy for inmate claims like those at issue in this case. Id. at n.4 ("[T]he [administrative remedy program] provides an adequate, and more appropriate, remedy to vindicate Vega's rights to access the courts and to procedural due process."); Buenrostro, 2017 WL 6033469, at *3 ("Plaintiff has alternative remedies available to him, including the [BOP's] administrative grievance process, the filing of a writ of habeas corpus, and injunctive relief."). This Court should conclude the same with respect to Plaintiff's claims.

In addition to BOP's administrative remedy program, Plaintiff can potentially avail himself to equitable remedies in federal court. For instance, under the Administrative Procedures Act, Plaintiff can obtain court review of BOP actions to determine if they are "contrary to [a] constitutional right," or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A)-(B). Joining other circuits, the Eleventh Circuit has recognized that "judicial review under the APA may, in some circumstances, foreclose a Bivens

claim." Miller v. U.S. Dep't of Agric. Farm Servs. Agency, 143 F.3d 1413, 1426

(11th Cir. 1998); W. Radio Serv. Co. v. U.S. Forest Serv., 578 F.3d 1116, 1123 (9th

Cir. 2009); Big Cats of Serenity Springs, Inc. v. Rhodes, 843 F.3d 853, 862 & n.4

(10th Cir. 2016). Here, the APA, in concert with BOP's Administrative Remedy

Program, provides a constitutionally adequate, alternative process for Plaintiff's

claims.

### D. Special Factors Counsel Against Extending *Bivens* to Plaintiff's Claims.

In addition to the alternative processes to which Plaintiff can avail himself,

"other special factors" counsel hesitation before authorizing the new kind of federal

Bivens litigation sought here. See Abbasi, 137 S. Ct. at 1861. As the Abbasi Court

explained, the "inquiry [into other special factors] must concentrate on whether the

Judiciary is well suited, absent congressional action or instruction, to consider and

weigh the costs and benefits of allowing a damages action to proceed." Id. at 1857-

58. "[T]o be a 'special factor counselling hesitation,' a factor must cause a court to

hesitate before answering that question in the affirmative." Id.

Here, where a federal prisoner seeks to extend a Bivens remedy for the sorts

of constitutional claims Plaintiff raises, there are special factors that counsel

hesitation. First, through frequent and intense action in regulating federal prisons

and prisoner litigation, Congress has demonstrated an intent to limit prisoner suits,

and has never allowed a damages remedy for federal prisoners, let alone for claims

12

like those asserted by Plaintiff. Second, separation-of-powers principles counsel against judiciary interference in federal prison operations, especially in the area of sex offender programs, when Congress has delegated the authority to ensure safety and order in those prisons to the Executive. Third, a Bivens action is an inappropriate vehicle for vindicating Plaintiff's claims, which are really an attack on BOP policy rather than some rogue conduct by federal officers.

### 1. Despite frequent and intense action in the context of federal prisons, Congress has never provided an individual damages remedy.

In the context of day-to-day management and operations of federal prisons, there are "sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy." See Abbasi, 137 S. Ct. at 1865. This is because "Congress' failure to provide a damages remedy might be more than mere oversight, and [its] silence might be more than 'inadvertent,'" in the federal prison setting, where "Congressional interest has been 'frequent and intense.'" Abbasi, 137 S. Ct. at 1862 (citing Schweiker, 487 U.S. at 423, 425). Despite decades of repeated and extensive Congressional action in federal prison operations and litigation, Congress never enacted a statute entitling federal prisoners to a civil damages action, and "when Congress fails to provide a damages remedy in circumstances like these, it is much more difficult to believe that 'congressional inaction' was 'inadvertent.'" See id.

13

The Civil Rights Act of 1871, 42 U.S.C. § 1983, "entitles an injured person to money damages if a *state* official violates his or her constitutional rights." Abbasi, 137 S. Ct. at 1854 (emphasis added). "Congress did not create an analogous statute for federal officials." Id. "[I]n the 100 years leading up to Bivens, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government." Id. Not until 1971, in Bivens, did the judiciary, not the legislature, provide a private right of action against federal officials for damages arising under certain constitutional provisions, and not until 1980, in Carlson, did the Supreme Court, for the first and only time, extend such a suit to a federal inmate who lost his life due to a failure to receive medical care.

In 1995, "[s]ome 15 years after Carlson was decided, Congress passed the Prison Litigation Reform Act [(PLRA)] of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court." Abbasi, 137 S. Ct. at 1865 (citing 42 U.S.C. § 1997e). Through the PLRA, Congress addressed "a sharp rise in prisoner litigation in the federal courts." Woodford v. Ngo, 548 U.S. 81, 84 (2006). "The PLRA contains a variety of provisions designed to bring this litigation under control," id., and includes "a series of controls on prisoner suits . . . designed to prevent sportive filings in federal court," Skinner v. Switzer, 562 U.S. 521, 535 (2011). These constraints include stringent exhaustion requirements, 42 U.S.C. § 1997e(a), and limitations on inmate suits unrelated to

physical harm or safety, id. § 1997e(e). The PLRA also created the so-called three-strikes rule, preventing prisoners with a history of "frivolous" or "malicious" lawsuits from bringing civil actions at the public's expense, unless "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Importantly, as the Supreme Court has noted, the PLRA "does not provide for a standalone damages remedy against federal jailers." See Abbasi, 137 S. Ct. at 1865.

Here, Plaintiff seeks to extend Bivens into numerous contexts. The Court should hesitate before taking the extraordinary step of implying a constitutional damages remedy here. As demonstrated by the PLRA, Congress' "interest has been 'frequent and intense'" in regulating federal prisons, and it has never provided a damages remedy for federal prisoners. See Abbasi, 137 S. Ct. at 1862. As the Court in Abbasi noted, "in any inquiry respecting the likely or probable intent of Congress, the silence of Congress is relevant; and here that silence is telling." Id. at 1862 & 1865 (noting that because the PLRA "does not provide for a standalone damages remedy against federal jailers this suggests Congress chose not to extend the damages remedy to cases involving other types of prisoner mistreatment"). Heeding these pronouncements in Abbasi, courts have since hesitated before extending Bivens damages claims into federal prisons. E.g., Buenrostro, 2017 WL 6033469, at *3 ("Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new Bivens claim."). This Court should do the same.

15

> ### 2. Separation-of-powers counsel against judiciary intervention with day-to-day administration of the SOMP at FCI Marianna because Congress delegated the safe and orderly operation of prisons to the Executive.

"When a party seeks to assert an implied cause of action under the Constitution itself separation-of-powers principles are or should be central to the analysis." Abbasi, 137 S. Ct. at 1857. In the context of federal prisons, and with respect to regulation of daily activities at the FCI Marianna SOMP in particular, separation-of-powers is an additional special factor that should cause this Court to hesitate before expanding a Bivens remedy.

Congress has long delegated the management of federal prisons to the Executive (namely, the Attorney General and BOP). And as the Supreme Court has stated, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." See Turner v. Safley, 482 U.S. 78, 84-86 (1987). "[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." Id. at 84. Instead, "[p]rison administration is... a task that *has been committed to the responsibility of [the Legislative and Executive] branches, and separation of powers concerns counsel a policy of judicial restraint.*" Id. at 85 (emphasis added).

Here, separation-of-powers principles inherent in Congress' delegation of running federal prisons to the Attorney General and BOP should cause the Court

hesitation before establishing a new <u>Bivens</u> damages remedy. This is particularly true for the claims brought by Plaintiff, a sex offender, concerning the SOMP institution supplement photograph restriction at FCI Marianna. Institutional policies about what materials sex offenders may possess in prison rest peculiarly in the province of BOP, which has a particular interest in what materials, if allowed, would compromise the safety and security of the institution. Recognizing these separation-of-powers concerns, courts since <u>Abbasi</u> have refrained from expanding a <u>Bivens</u> remedy in the federal prison context.[4] This Court should do the same for Plaintiff's claims concerning the SOMP institution supplement.

### 3. A *Bivens* action is an improper avenue for attacking BOP policy.

"[A] <u>Bivens</u> action is not 'a proper vehicle for altering an entity's policy.'" <u>Abbasi</u>, 137 S. Ct. at 1860 (quoting <u>Malesko</u>, 534 U.S. at 74). "<u>Bivens</u> is concerned solely with deterring the unconstitutional acts of individual officers." <u>Malesko</u>, 534 U.S. at 71. A remedy under <u>Bivens</u> is not meant to "deter[].the conduct of a policymaking entity." <u>Id.</u> Rather, a suit for injunctive relief against the agency "has long been recognized as the proper means for preventing entities from acting unconstitutionally." <u>Id.</u> at 74.

---

[4] <u>See</u> <u>Buenrostro</u>, 2017 WL 6033469, at *4; <u>Attkisson v. Holder</u>, No. 1:17-CV-364, 2017 WL 5013230, at *7 (E.D. Va. Nov. 1, 2017); <u>Ochoa v. Bratton</u>, No. 16-CV-2852, 2017 WL 5900552, at *7 (S.D.N.Y. Nov. 28, 2017); <u>Rager v. Augustine</u>, 5:15-cv-35, Doc. 178, (N.D. Fl. Nov. 8, 2017).

Here, Plaintiff's claims concerning the implementation and enforcement of the SOMP institution supplement, which restricts the types of photographs a sex offender may possess in prison, is an improper attack on BOP policies and Program Statements, and are better suited, if at all, for challenge under the APA, not Bivens. See Bunn v. Conley, 309 F.3d 1002, 1009 (7th Cir.2002) ("The APA applies to the Bureau of Prisons . . . and therefore may be the appropriate way to contest the Bureau's implementation of [a Program Statement]"). Plaintiff's Complaint here expressly challenges BOP's SOMP institution supplement photograph restriction policy as it relates to sex offenders' possession of photographs. See Doc. 37. Using statutory guidance from Congress, BOP has employed its delegated authority to promulgate program statements governing the treatment of sex offender inmates and the materials they may possess in prison. Just because low-level federal employees implement and execute such policies does not make a Bivens suit the appropriate vehicle for Plaintiff's claims. Put plainly, "a Bivens action is not 'a proper vehicle for altering an entity's policy.'" Abbasi, 137 S. Ct. at 1860.

"Special factors" are "[t]aken together," and considered in the aggregate. See Abbasi, 137 S. Ct. at 1857-58, 1860-63; Chappell, 462 U.S. at 304. Here, the alternative available processes to which Plaintiff can avail himself, along with the other special factors present in the context of federal prisons, counsel against

18

implying the non-statutory, personal damages remedy for the claims for which
Plaintiff seeks relief.

### E. Claims against Defendants Rush and Withers Should be Dismissed as Plaintiff Fails to Allege Facts to Support their Personal Involvement in any Constitutional Violation.

Plaintiff names as defendants Warden Withers and Dr. Rush due to their
supervisory roles at FCI Marianna. Doc. 37. Plaintiff alleges that both defendants,
in their capacity as Warden and Chief Psychologist, are "legally responsible" for the
overall operations of FCI Marianna (for the Warden) and the "overall operations of
the psychology department" (Dr. Rush). Id. In Plaintiff's statement of his claim, he
identifies no personal involvement by Withers or Rush in the rejection of the
photographs sent to him other than they allegedly "allowed this policy to be
implemented and enforced." Id.

Plaintiff fails to identify any personal participation by Withers or Rush in the
actual rejection of the photographs in question pursuant to the SOMP institution
supplement.  Because liability in a Bivens suit is personal, "a plaintiff must plead
that each Government-official defendant, through the official's own individual
actions, has violated the Constitution." Iqbal, 556 U.S. at 676. "[V]icarious liability
is inapplicable to Bivens" actions. Id. ("Government officials may not be held liable
for the unconstitutional conduct of their subordinates under a theory of *respondeat
superior*."); see also Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003);

Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). "Supervisory liability may be shown only when the supervisor personally participated in the acts that comprise the constitutional violation, or where there is the existence of a causal connection linking the supervisor's actions with the violation." Holmes v. Fink, No. 1:13-cv-00012-JHH-TMP, 2013 U.S. Dist. LEXIS 184331, at *12 (N.D. Ala. Nov. 21, 2013) (citing Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988)). A single incident does not ordinarily establish the requisite causal connection. Brady v. Fla. Dep't of Labor & Empl. Sec., 133 F.3d 797, 802 (11th Cir. 1998); Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). Plaintiff has not shown any participation by Withers or Rush in any alleged violation of his constitutional rights.

Accordingly, all claims against Defendants Withers and Rush should be dismissed for failure to state a claim because other than as supervisors at FCI Marianna, Plaintiff fails to identify how they were involved in allegedly violating his constitutional rights.

## F. QUALIFIED IMMUNITY

### 1. At all relevant times, Defendants were simply doing their jobs, thus satisfying step 1 of the qualified immunity analysis.

"Qualified immunity protects government officials performing discretionary functions as long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" See Sharp v. Fisher, 532 F.3d 1180, 1183 (11th Cir. 2008)(quoting Beshers v. Harrison, 495

F.3d 1260, 1265 (11th Cir.2007)). Qualified immunity relieves government officials from the need to "constantly err on the side of caution" by protecting them from liability and the burdens of litigation. See Holmes v. Kucynda, 321 F.3d 1069, 1077 (11th Cir.2003)(citations omitted).  To receive qualified immunity, the officer must first show that he acted within his discretionary authority.  See Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir.2002).  In determining whether an employee acted within his discretionary authority, the Eleventh Circuit engages in a "two-fold" inquiry.  See Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir.2004)(quoting McCoy v. Webster, 47 F.3d 404, 407 (11th Cir.1995)).  At the first step, the court asks "whether the government employee was … performing a legitimate job-related function (that is, pursuing a job-related goal)."  Id.  "Put another way, to pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, but for the alleged constitutional infirmity, would have fallen within his legitimate job description."  Id.  At the second step, the court asks whether the government employee was performing the job-related function "through means that were within his power to utilize."  Id.

Here, the acts Plaintiff complains about (creating a SOMP institution supplement concerning restrictions on the possession of photographs by those in the SOMP and enforcing that institution supplement) were taken by the Defendants

21

within the scope of their day-to-day job duties as BOP officials, Plaintiff's

Complaint makes this clear.  Doc. 37.  Holloman ex rel. v. Harland, 370 F.3d 1252,

1265 (11th Cir. 2004)(explaining that a government employee acts within the scope

of discretionary authority when he performs legitimate job-related functions through

means that were in his power to use).

## 2. There Has Been No Violation of Plaintiff's Constitutional Rights and Defendants are entitled to qualified immunity.

"Once the Defendants have established that they were acting within their

discretionary authority, the burden shifts to the plaintiff[] to show that qualified

immunity is not appropriate."  Gonzalez, 325 F.3d at 1234.  To determine whether

qualified immunity is appropriate after the court determines that the Defendants

were acting within their discretionary authority, the court must consider two

different issues.  Saucier v. Katz, 533 U.S. 194, 200 (2001).  The court looks at: (1)

whether the facts, taken in the light most favorable to the Plaintiff, demonstrate that

the Defendant official's conduct violated a constitutional right of the Plaintiff, and

(2) whether the right allegedly violated was clearly established.  Smith v. Sheriff,

Clay County, Fla., 2013 WL 425562, at *3 (11th Cir. Feb. 5, 2013)(slip op.)(citing

Saucier v. Katz, 533, U.S. 194, 201 (2001)).  Courts may exercise their sound

discretion in deciding which of the two issues should be addressed first in light of

circumstances in the particular case at hand.  Pearson v. Callahan, 555 U.S. 223, 236

(2009).

### a. The SOMP institution supplement is not an *Ex Post Facto* punishment.

Plaintiff claims that the photograph restriction constitutes an unlawful *ex post facto* punishment that deprives him of property because of his criminal offense. "To fall within the *ex post facto* prohibition, a law must be retrospective—that is, 'it must apply to events occurring before its enactment'—and it 'must disadvantage the offender affected by it,' by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441 (1997) (quoting Collins v. Youngblood, 497 U.S. 37, 50 (1990)). However, "[t]he *ex post facto* bar applies only to criminal laws, however, not to civil regulatory regimes." Waldman v. Conway, 871 F.3d 1283, 1293 (11th Cir. 2017). In Waldman, the Eleventh Circuit rejected a sex offender inmate's *ex post facto* challenge to prison conditions imposed on him due to his offense of conviction (a sex offense). Those prison conditions included ineligibility for a minimum custody classification, work release, and other early-release programs, as well as mandatory classes or group therapy sessions while in prison. Id. at 1288. The court held that neither these restrictions, nor the inmate's reclassification as a sex offender while he was already serving his prison term, constituted an *ex post facto* punishment because the classification scheme was civil in nature and "a state can make a reasonable categorical judgment that conviction of specified crimes should entail particular regulatory consequences." Id. at 1294. The court further held that there was a "rational connection" between the state's "stated

23

goal of protecting minors and the minimum-custody restrictions and rehabilitation classes imposed as a result of' the inmate's sex offender designation. Id. at 1294-95.

The same analysis holds true in this case. If anything, the restriction imposed on Plaintiff (no photographs of non-children or non-grandchildren) is even less restrictive than the conditions at issue in Waldman. The photograph restriction is not a criminal law that imposes an "increased punishment" on Plaintiff, and there is a rational connection (detailed *supra*) between the restriction and the goals of the SOMP program. Importantly, the SOMP photograph restriction does not take Plaintiff's property (photographs) from him permanently (such as in the nature of criminal restitution or forfeiture), or restrict the types of photographs Plaintiff can possess permanently, it simply restricts Plaintiff's possession of photographs of minor children who are not his biological or adopted child while Plaintiff is in the SOMP. There is no *ex post facto* violation here and Defendants are entitled to qualified immunity.

### b. There was no violation of Plaintiff's First Amendment rights and Defendants are entitled to qualified immunity.

Plaintiff alleges that his First Amendment rights were violated by the enforcement of the SOMP institution supplement photograph restriction because "[p]hotographs are protected by the First Amendment." Doc. 37. The Supreme

24

Court recognized in <u>Turner</u> that imprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment. 482 U.S., at 93; <u>see also</u> <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348 (1987).

But at the same time the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere. <u>E.g.</u>, <u>Turner</u>, 482 U.S. at 84-85. Courts owe "substantial deference to the professional judgment of prison administrators." <u>Overton v. Bazzetta</u>, 539 U.S. 126, 123 S.Ct. 2162 (2003). And <u>Turner</u> reconciled these principles by holding that restrictive prison regulations are permissible if they are "'reasonably related' to legitimate penological interests," 482 U.S., at 87, and are not an "'exaggerated response'" to such objectives, <u>id</u>. In the instant case, the SOMP institution supplement only restricts those sex offender inmates in the SOMP from having photographs of children who are not their child by birth or adoption. <u>Doc. 37</u>. The SOMP institution supplement photograph restriction does not restrict all photographs that Plaintiff, a sex offender, may possess. The SOMP institution supplement photograph restriction does not infringe on Plaintiff's speech rights, religious practice, or on his right to associate with people, including minors (to whom he can still speak over the phone, visit with, or email). The institution supplement only restricts the types of photographs Plaintiff,

a sex offender, can possess while in the SOMP. Plaintiff's First Amendment rights were not violated and Defendants are entitled to qualified immunity.

### c. Plaintiff's Fifth Amendment due process rights were not violated and Defendants are entitled to qualified immunity.

Plaintiff alleges that the SOMP institution supplement violates his due process rights because "he would be forbidden from ever having family photos of any kind if the photo contains a minor that is not the Plaintiff's biological or adopted child."

It is well-settled that an inmate's property rights are limited, and that prison officials have significant discretion in defining what items inmates can and cannot possess while incarcerated. See Bell v. Wolfish, 441 U.S. 520, 553 (1979). Pursuant to BOP policy, inmates are allowed to obtain and possess personal property subject to BOP rules and the institution's policies and procedures. Allowable personal property varies from institution to institution depending on security concerns and treatment programs. See 28 C.F.R. § 553.10; BOP Program Statement 5580.08, Inmate Personal Property (08/2011), p.1.

"In order to establish a violation of the Due Process Clause, a petitioner must have been deprived of a liberty or property interest protected under the Fifth Amendment." Cook v. Wiley, 208 F.3d 1314, 1322 (11th Cir. 2000). "While an inmate's ownership of property is a protected property interest that may not be infringed without due process, there is a difference between the right to own property and the right to possess property while in prison." Hatten v. White, 275 F.3d 1208,

1210 (10th Cir. 2002) (citing Williams v. Meese, 926 F.2d 994, 998 (10th Cir. 1991))

(prisoner was permitted "to send the property he could not possess in prison to a

place of his choosing, and therefore was not deprived of the property"); see also

Searcy v. Simmons, 299 F.3d 1220, 1229 (10th Cir. 2002) (due process is satisfied

when a prison provides a meaningful opportunity for the inmate to send unauthorized

property to someone outside the prison as an alternative to having it destroyed).

Moreover, an intentional deprivation of a prisoner's property fails to state a

claim if there is an adequate post-deprivation remedy. See Hudson v. Palmer, 468

U.S. 517, 533 (1984); Del Raine v. Williford, 32 F.3d 1024, 1044-46 (7th Cir. 1994);

Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994). The BOP's Administrative

Remedy Program qualifies as such an adequate remedy. Bowens v. U.S. Dep't of

Justice, 415 F. App'x 340, 344 (3d Cir. 2011).

For due process purposes, a prison inmate is entitled only to notice of the

rejection and an opportunity to challenge it. Procunier v. Martinez, 416 U.S. 396,

417-18 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401,

413-14 (1989) ("[W]ithhold[ing] delivery of [inmate mail] must be accompanied by

minimum procedural safeguards."); see Stauffer v. Gearhart, 741 F.3d 574 (5th Cir.

2014) (inmate failed to state due process claim regarding confiscation of magazines

where inmate was able to make claims challenging confiscation through prison

grievance process and received written justification for confiscation). Here, Plaintiff

27

received all the process he was due.   Plaintiff made full use of the BOP's administrative remedy program and received written justification as to why the photographs were sent back.  Doc. 37 Attachment B1, B2, D, E, F and G.  There was no due process violation and Defendants are entitled to qualified immunity.

### d. There was no Equal Protection violation and Defendants are entitled to qualified immunity.

Plaintiff claims that the SOMP photograph restriction violates the Equal Protection clause because it treats him differently than other inmates who are at FCI Marianna for safety reasons. Doc. 37.  The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  It is, essentially, a direction to treat similarly situated people alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  If the prisoner's allegations do not implicate a suspect class or fundamental right, a court may evaluate only whether there was a rational basis for the differing treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Cook v. Wiley, 208 F.3d 1314, 1323 (11th Cir. 2000).   Under rational basis review, "the government has no obligation to produce evidence to sustain the rationality of a statutory classification, and the complaining party has the burden to negate every conceivable basis which might support it." United States v. Castillo, 899 F.3d 1208, 1213 (11th Cir. 2018) (quotation marks and citations omitted).

Thus, the equal protection analysis here asks only whether there was a rational basis for treating Plaintiff differently from other similarly situated inmates. The Amended Complaint makes clear that all inmates like Plaintiff who are participating in the SOMP are subject to the same restriction on photographs that Plaintiff complains about, so in actuality there is no different treatment. Doc. 37.

The SOMP institution supplement and its enforcement concerning the restriction on the types of photographs an inmate in the SOMP can possess does not violate Plaintiff's equal protection guarantee and Defendants are entitled to qualified immunity.

### e.   There was no Eighth Amend Violation and Defendants are entitled to qualified immunity.

Plaintiff, a SOMP inmate, claims that forbidding him from having appropriate family photos for no valid reason constitutes cruel and unusual punishment. Doc. 37. The cruel and unusual punishments standard applies to the conditions of a prisoner's confinement. Rhodes v. Chapman, 452 U.S. 337, 345-46, 101 S.Ct. 2392, 2398-99, 69 L.Ed.2d 59 (1981). The Supreme Court has developed a two-part analysis to govern Eighth Amendment challenges to conditions of confinement. Chandler v. Crosby, 379 F.3d 1278 (11th Cir. 2004). First under the objective component, a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson v. McMilliam, 503 U.S. 1, 8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). The challenged condition must be extreme.

29

Id. at 9, 112 S.Ct. at 1000. Second the prisoner must show that the Defendant prison officials "acted with a sufficiently culpable state of mind" with regard to the condition at issue. Hudson, 503 U.S. at 8, 112 S.Ct. at 999 (marks and citations omitted). Here, the SOMP policy Plaintiff complains about bans only photos of any minor child who is not the biological or adopted child of the inmate if the inmate is labeled a "sex offender" regardless of the specifics of the inmate's sex offense. Doc 37. Plaintiff however, is not prohibited from having family photographs of minor children who are his biological or adopted child. The SOMP photograph restriction does not constitute cruel and unusual punishment simple because it prohibits plaintiff, a sex offender, from possessing photos of minor children who are not his biological or adopted child. Defendants are entitled to qualified immunity.

### 3. Plaintiff cannot show that Defendants violated a clearly established right.

The second prong of the Saucier analysis is whether the right allegedly violated was clearly established. The standard in the Eleventh Circuit is "pre-existing law" must "dictate[], that is truly compel[], the conclusion for all reasonable, similarly situated public officials that what [the Defendant] was doing violated [the Plaintiff's] federal rights in the circumstances." Evans v. Stephens, 407 F.3d 1272, 1282 (11th Cir. 2005) (en banc) (internal quotation marks omitted).

If the facts do establish a constitutional violation, the court examines "whether the right was clearly established. This inquiry, it is vital to note, must be undertaken

in light of the specific context of the case, not as a broad general proposition."

Saucier, 533 U.S. at 201; see also Purcell Ex Rel. Estate of Morgan v. Toombs Cnty.,

400 F.3d 1313, 1319 (11th Cir. 2005) ("Qualified immunity protects government

officials performing discretionary functions from civil trials and from liability if

their conduct violates no clearly established statutory or constitutional rights of

which a reasonable person would have known").    The ultimate inquiry in

determining whether a right is clearly established is whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted.

Saucier, 533 U.S. at 202.

The Supreme Court has explained that the standard of liability is so high that

it protects "all but the plainly incompetent or those who knowingly violate the law."

Malley v. Briggs, 475 U.S. 335, 341 (1986); see also Hope v. Pelzer, 536 U.S. 730,

741 (2002) (noting that the "salient question" that a court must answer when making

this inquiry is whether the state of the law at the time of the incident gave the officer

"fair warning" that his alleged treatment of the plaintiff was unconstitutional). "This

is not to say that an official action is protected by qualified immunity unless the very

action in question has previously been held unlawful; but it is to say that in light of

the pre-existing law the unlawfulness must be apparent." Hope, 536 U.S. at 739.

Indeed, in the Eleventh Circuit the courts will generally accord "official conduct a

31

presumption of legitimacy." Gonzalez, 325 F.3d at 1235 (quotation and citation omitted).

Here, there was no constitutional violation. However, even if the court determined that Plaintiff, a sex offender, enrolled in the SOMP, has a constitutional right to have photographs of children who are not his children by birth or adoption, while enrolled in a sex offender treatment program, that right was not clearly established at the time the SOMP photograph restriction was applied to Plaintiff. Additionally, the court would have to create new law to determine that sex offenders were a suspect class, and that restrictions on them are subject to heightened scrutiny, thereby further demonstrating that such rights were not clearly established when the SOMP institution supplement was applied to Plaintiff. The court would likewise have to significantly depart from the closest on-point precedent (Waldman) to find that there was an *ex post facto* issue with the SOMP institution supplement. Thus, even if the court is inclined to create new law in this area, the Defendants would be entitled to dismissal on the basis of qualified immunity.

## CONCLUSION

Wherefore premises considered, Defendants requests that this Court grant its

motion to dismiss.

Respectfully submitted,

LAWRENCE KEEFE
UNITED STATES ATTORNEY


*/s/ Herbert S. Lindsey*
HERBERT S. LINDSEY
Assistant United States Attorney
Texas Bar No. 00784476
111 N. Adams Street
Tallahassee, FL 32301
850-942-8430
Email : Herbert.Lindsey@usdoj.gov

## **LOCAL RULE 7.1 CERTIFICATE**

I certify that this memorandum contains 7,615 words, per Microsoft Word's

word count, which complies with the word limit requirements set forth in Local Rule

7.1(F).

*/s/* Herbert S. Lindsey
HERBERT S. LINDSEY
Assistant United States Attorney

33

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 15, 2019, the foregoing was filed

electronically with the Clerk of the Court using the CM/ECF filing system and that

a true copy has been furnished by U.S. Postal Certified mail to Mr. Brian Culver,

Reg no. 26299-001 at FCC Yazoo City, PO Box 5000, Yazoo City, MS 39194.

/s/ Herbert S. Lindsey
HERBERT S. LINDSEY
Assistant United States Attorney

34

# Order and Report and Recommendation

# Doc. 43

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BRIAN CULVER,

    Plaintiff,

v.                                          Case No. 5:18cv160-TKW-HTC

FEDERAL BUREAU OF PRISONS (BOP), et al.,

    Defendants.

_____/

## ORDER AND
## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint (ECF Doc. 40) and Plaintiff's opposition (ECF Doc. 42). The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). After reviewing the parties' submissions and the relevant law, the undersigned respectfully recommends that Plaintiff's claims for monetary damages as to all defendants be dismissed as not cognizable under *Bivens*.[1] Additionally, the undersigned orders Plaintiff to show cause why his claims for injunctive and declaratory relief should not be dismissed as moot.

---

[1] *See Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), recognizing a cause of action against federal agents for violation of the Fourth Amendment.

## I.     BACKGROUND

Plaintiff is an inmate of the Federal Bureau of Prisons ("BOP") currently confined at UPS Yazoo City.  His claims are based on events that took place while he was confined at the Federal Correctional Institution in Marianna, Florida ("FCI Marianna").  Plaintiff's amended complaint (ECF Doc. 37) names six Defendants: the Federal Bureau of Prisons; Shannon D. Withers, warden of FCI Marianna; Stephanie Rush, former chief psychologist at FCI Marianna; Ramon Rivera, Sex Offender Management Program ("SOMP") coordinator at FCI Marianna; Michelle Proulx, SOMP psychologist at FCI Marianna; and Adam McCord, SCSS at FCI Marianna and former acting warden.  Plaintiff brings this action under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) and the Administrative Procedures Act (APA).  Plaintiff alleges that an FCI Marianna SOMP institution supplement, which bars Plaintiff from having any photos of minors who are not his children, violates the *ex post facto* clause and his First Amendment, due process, equal protection, and Eighth Amendment rights.  Additionally, Plaintiff claims the FCI Marianna supplement violates BOP policy.  The photos at issue are of his nephews.  Plaintiff seeks declaratory relief, preliminary and permanent injunctions, compensatory damages of $1, punitive damages of $100 assessed against each Defendant, and a jury trial on all triable issues.

Plaintiff's amended complaint sets forth the factual allegations that follow, the truth of which are accepted for purposes of this Report and Recommendation. FCI Marianna is designated as a SOMP institution, which means that one of its primary goals is the reduction of recidivism among sex offenders by identifying risk relevant behavior and properly managing it.[2]  If an inmate engages in risk relevant behavior, he can be placed on a Correctional Management Plan ("CMP") and sexually explicit materials can be confiscated from him.  Plaintiff was not placed on a CMP while at FCI Marianna, nor has he engaged in risk relevant behavior.  Plaintiff claims that by preventing him from having photos of his nephews, Defendants have placed him on a *de facto* CMP.

Plaintiff claims Defendants Rivera and Proulx exceeded the scope of their BOP authority when they created FCI Marianna's SOMP supplement.  Plaintiff claims the supplement is both unconstitutional and unauthorized because it prohibits all sex offender inmates from possessing photos of any minor child who is not the biological or adopted child of that inmate, and the policy does not apply to non-sex offenders.  Plaintiff asserts that there is no rational basis for rejecting appropriate family photos and BOP policy specifically states, "[o]rdinarily photographs,

---

[2] Plaintiff is subject to SOMP because he was found guilty after a jury trial of five counts of enticing a minor to engage in sexually explicit conduct for purposes of producing a video.  *See United States v. Culver*, United States District Court for the Northern District of Alabama, Case No. 5-07-cr-0009.

particularly those of family and friends are approved, since they represent meaningful ties to the community."  Yet, under FCI Marianna's SOMP supplement, Plaintiff is prohibited from possessing photos of his nephews.  Prior to filing this suit, Plaintiff filed a grievance and an appeal through the prison grievance procedure at FCI Marianna; his grievance and appeal were both denied.  Plaintiff also appealed to the Central Office in Washington, D.C.; that appeal was similarly denied.

## II.   LEGAL STANDARD

In considering a motion to dismiss for failure to state a claim, the Court reads Plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), and accepts "[a]ll well-pleaded facts in plaintiff's complaint and all reasonable inferences drawn from those facts . . . as true."  *McGinley v. Houston*, 361 F.3d 1328, 1330 (11th Cir. 2004) (citation omitted).  As the Supreme Court reiterated in *Ashcroft v. Iqbal*, although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  556 U.S. 662, 678 (2009).  A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

## III.   LEGAL ANALYSIS

### A.   Plaintiff's Claim for Monetary Damages Under *Bivens*

Defendants have moved to dismiss Plaintiff's claims for monetary damages on the ground that they are not cognizable under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 402 U.S. 388 (1971).  ECF Doc. 40 at 4.  In *Bivens*, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights," specifically for violation of the Fourth Amendment.  *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).  In recent years, however, the Supreme Court has narrowed the application of *Bivens* and "rejected the claim that a *Bivens* remedy should be implied simply for want of any other means for challenging a constitutional deprivation in federal court."  *Id.* at 69.  Indeed, the Supreme Court has recognized a *Bivens* remedy in only two other contexts: (1) a Fifth Amendment equal protection claim against a Congressman for gender-based employment discrimination, *Davis v. Passman*, 442 U.S. 228 (1979); and (2) an Eighth Amendment claim against federal prison officials for failing to adequately treat an inmate's medical condition, *Carlson v. Green*, 446 U.S. 14 (1980).

When determining whether a *Bivens* claim may proceed, courts must first consider whether the claim extends *Bivens* to a new context.  If a case differs in a meaningful way from previous *Bivens* cases decided by the Supreme Court, the

context is new.  *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859 (2017).  In *Ziglar*, the

Court explained as follows:

> A case might differ in a meaningful way because of the rank of the
> officers involved; the constitutional right at issue; the generality or
> specificity of the official action; the extent of judicial guidance as to
> how an officer should respond to the problem or emergency to be
> confronted; the statutory or other legal mandate under which the officer
> was operating; the risk of disruptive intrusion by the Judiciary into the
> functioning of other branches; or the presence of potential special
> factors that previous *Bivens* cases did not consider.

*Id.* at 1860.

If the claim would extend *Bivens* to a new context, courts must conduct a

"special factors" analysis.  Supreme Court precedent makes it "clear that a *Bivens*

remedy will not be available if there are 'special factors counselling hesitation in the

absence of affirmative action by Congress.'"  *Id.* at 1857 (quoting *Carlson*, 446 U.S.

at 18).  "[T]he inquiry must concentrate on whether the Judiciary is well suited,

absent congressional action or instruction, to consider and weigh the costs and

benefits of allowing a damages action to proceed."  *Id.* at 1857-58.  "[T]he decision

to recognize a damages remedy requires an assessment of its impact on

governmental operations systemwide[,]" including "the burdens on Government

employees who are sued personally, as well as the projected costs and consequences

to the Government itself when the tort and monetary liability mechanisms of the

legal system are used to bring about the proper formulation and implementation of

public policies."  *Id.* at 1858.

Here, Plaintiff's First Amendment claim clearly presents a new *Bivens* context because the constitutional right at issue differs from those in *Bivens* (Fourth Amendment), *Passman* (Fifth Amendment) and *Carlson* (Eighth Amendment). *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims.") (citations omitted); *Andrews v. Miner*, 301 F. Supp. 3d 1128, 1133 (N.D. Ala. 2017) (holding prisoner's First Amendment claim "presents a new *Bivens* context under Supreme Court jurisprudence" and noting "[t]he most significant difference from prior Supreme Court cases recognizing a *Bivens* right of action is the constitutional right at issue").[3]

Additionally, although *Passman* involved a Fifth Amendment claim and *Carlson* involved an Eighth Amendment claim, Plaintiff's due process, equal protection, and Eighth Amendment claims are materially different from the claims in those cases.[4]  The FCI Marianna supplement prohibiting sexual offenders from possessing photos of non-biological or adopted children is substantially different

---

[3] Although *Hartman v. Moore*, 547 U.S. 250 (2006), is a case involving a First Amendment retaliatory prosecution case, the Court did not specifically address whether such a claim was cognizable under *Bivens* as the issue before the Court was whether plaintiff had to plead and prove the absence of probable cause to state a claim.

[4] Even if Plaintiff's particular allegations under the Eighth Amendment were cognizable under *Bivens*, his claims would still be subject to dismissal on the merits.  Specifically, "the Constitution does not mandate comfortable prisons" or prisons that are "free from discomfort."  *See Rhodes v. Champan*, 452 U.S. 337, 349 (1981).  Instead, only "'extreme deprivations . . . make out a conditions-of-confinement claim' under the Eighth Amendment."  *See Chandler v. Crosby*, 379 F.3d 1278, 1298 (11th Cir. 2004).  Here, Plaintiff's inability to have photos of his nephew does not rise to the level of extreme deprivation.

from firing an employee based on her sex (*Passman*) or failing to properly treat an inmate's medical condition, leading to his death (*Carlson*). *See McRae v. Lockett*, No. 5:17-cv-299-Oc-02PRL, 2019 WL 2303264, at *5-6 (M.D. Fla. May 30, 2019) (finding, after *Ziglar*, inmate's "First and Fifth Amendment claims [for withholding his mail, restricting his visitors, and placing him in segregated housing, among other allegations] present a new *Bivens* context," and that alternative processes and special factors counsel against extending *Bivens*); *Banks v. LaRose*, No. 4:17CV2479, 2018 WL 1942195, at *3 (N.D. Ohio Apr. 25, 2018) (finding a new *Bivens* context for an inmate asserting an equal protection claim based on classification of "prisoners in segregation versus those . . . held in the general prison population"); *Buenrostro v. Fajardo*, No. 1:14-cv-00075, 2017 WL 6033469, at *3 (E.D. Cal. Dec. 5, 2017) ("The Supreme Court has never recognized a *Bivens* remedy for a Fifth Amendment due process claim relating to the alleged failure of a prison official to provide due process."), *aff'd* 2019 WL 2207662 (9th Cir. May 22, 2019); *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 63–64 (E.D.N.Y. 2017) (finding, where plaintiff allegedly suffered insufficient outdoor recreation time, insufficient cleaning supplies, insufficient dental care, dirty clothing, dirty razors, and placement in segregated housing, that "[p]laintiff's Eighth Amendment claim . . . fails because there is no available *Bivens* remedy for the conduct at issue. [And] plaintiff's facts are significantly different" from *Carlson*), *aff'd*, 755 F. App'x 67 (2d Cir. 2018).

The Supreme Court has not extended *Bivens* to the type of claims that Plaintiff brings. Even when viewing the evidence in the light most favorable to Plaintiff, Plaintiff's claims constitute an extension of *Bivens*. *See Ziglar*, 137 S. Ct. at 1864 (holding, even if a "case has significant parallels to one of the [Supreme] Court's previous *Bivens* cases," "a modest extension is still an extension").

Turning to the "special factors" analysis, several factors weigh against creating a *Bivens* remedy for Plaintiff's claims. First, extending a *Bivens* remedy to claims based on the management of sex offenders could be disruptive to prison administration, and courts must show deference to prison officials. *See Davila v. Gladden*, 777 F.3d 1198, 1206 (11th Cir. 2015) ("We are quite mindful that for prisons, we must afford due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.") (citation and quotation omitted). The Eleventh Circuit has accorded "wide-ranging" and "substantial" deference to prison administrators in their execution of policies and practices that they consider necessary to preserve internal order and discipline and to maintain institutional security, *Al–Amin v. Smith*, 511 F.3d at 1328 (11th Cir. 2008), in light of "the complexity of prison management, the fact that responsibility therefore is necessarily vested in prison officials, and the fact that courts are ill-equipped to deal with such problems*." Lawson v. Singletary*,

85 F.3d 502, 510 (11th Cir. 1996); *see also Turner v. Safley*, 482 U.S. 78, 84-86 (1987) ("[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.").

Second, alternative remedies are available to Plaintiff.  *See Ziglar*, 137 S. Ct. at 1865 ("[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action.").  Plaintiff can, and did, pursue relief through the BOP's grievance process and through claims for injunctive relief.  *See Pinkney v. Lockett*, Case No. 5:16-cv-00103-Oc-02PRL, 2019 WL 1254851, at *5-7 (M.D. Fla. Mar. 19, 2019) (holding *Bivens* did not extend to federal inmate's First Amendment retaliation claim; noting "Plaintiff arguably had alternative remedies available to him in the form of a suit for injunctive relief and the BOP grievance process").

Third, Congress has declined to provide federal prisoners with a damages remedy.  *See Ziglar*, 137 S. Ct. at 1865 ("[L]egislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation."). When "Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court[,]" it "had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs[,]" but "the Act itself does not provide for a standalone damages remedy against federal jailers.  It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases

involving other types of prisoner mistreatment." *Id.* Congress's refusal to enact a damages remedy for federal prisoners counsels against the Court implying one here.

Finally, the Supreme Court has "made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1857 (citation omitted). The Supreme Court "has consistently refused to extend *Bivens* to any new context or new category of defendants." *Id.* Accordingly, for the reasons discussed above, the undersigned recommends a dismissal of Plaintiff's constitutional claims for monetary damages against the Defendants.

### B.     Plaintiff's *Ex Post Facto* Clause Claim

Plaintiff's *ex post facto* claim should also be dismissed on its merits as it is inapplicable here. "An ex post facto claim can only be successful if the law is criminal i.e., can be characterized 'as a punishment' in the constitutional sense." *See Manocchio v. Kusserow,* 961 F.2d 1539, 1541 (11th Cir. 1992). Here, the FCI Marianna institutional supplement is not a "law," and even if it was, it cannot be characterized as a punishment. To determine whether a law imposes a punishment, the court looks first to legislative intent. If no such intent is expressed, then the court looks to determine whether the statutory scheme is so punitive that it negates the stated civil intent. *See U.S. v. W.B.H.*, 664. F.3d 848, 853 (11th Cir. 2011); *Thompson v. Alabama,* 293 F.Supp.3d 1313, 1329 (M.D. Ala. 2017). The intent behind the SOMP, as stated by Plaintiff, is to reduce recidivism in sexual offenders, rather than

to punish.  Moreover, the prohibition against pictures of children by sexual offenders is not so punitive as to negate that intent.  Accordingly, Plaintiff has failed to state a claim under the *ex post facto* clause.

### C.   APA Monetary Damages Claims

Plaintiff also seeks damages under the APA, alleging Defendants' policy, practice, and behavior is arbitrary, capricious, an abuse of discretion, and unconstitutional.  ECF Doc. 37 at 4; 5 U.S.C. § 706(2)(A) – (B).  The APA, however, expressly prohibits money damages claims against the United States or an agency, officer, or employee thereof.  *See* 5 U.S.C. § 702; *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999); *Smith v. Washington Heights Apartments, Ltd.*, 794 F. Supp. 1141, 1143 (S.D. Fla. 1992) (holding that a money damages claim against federal defendants under the Administrative Procedure Act was "barred by the express terms of the APA.").  Thus, Plaintiff's claims for money damages under the APA should be dismissed.

### D.   SOMP Institution Supplement Claim

To the extent Plaintiff claims that the FCI Marianna institution supplement violates a BOP policy or the Constitution, those claims are also subject to dismissal.  First, because a BOP policy is not a substantive law, a violation of a BOP policy does not equate to a violation of federal law.  *See Reeb v. Thomas,* 636 F.3d 1224, 1227 (9th Cir. 2011); *see also United States v. Craveiro,* 907 F.2d 260, 264 (1st Cir.

1990) ("the internal guidelines of a federal agency, that are not mandated by statute or the constitution, do not confer substantive rights on any party").

Second, the institution supplement at issue passes constitutional muster under the reasonableness standard set forth by the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987). A reasonableness standard asks whether a prison regulation that impinges on inmates' constitutional rights is "reasonably related" to legitimate penological interests. *Turner*, 482 U.S. at 78. The reasonableness standard considers the following four factors, (1) whether there is a "valid, rational connection" between the regulation and a legitimate and neutral governmental interest; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, on inmates' liberty, and on the allocation of limited prison resources; and (4) whether the regulation represents an "exaggerated response" to prison concerns. *See Turner*, 482 U.S. at 78–79.

The burden "is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). This is a very tough burden for prisoners to meet because of the high deference courts afford to prison officials under this test. *See Lemcool v. Fla. Dep't of Corr.*, 543 F. App'x 909, 912 (11th Cir. 2013) (holding, prison policy prohibiting tarot cards was

"rationally related to a legitimate government interest: prison security"); *Williams v. Sec'y for Dep't of Corr.*, 131 F. App'x 682, 686-87 (11th Cir. 2005) (holding, prison policy prohibiting inmates from removing their shoes before entering prison chapel was reasonably related to legitimate penological interests).

Each of those factors weigh in favor of the Defendants. First, there is a valid rational connection between the institutional supplement and a legitimate governmental interest i.e., to reduce recidivism among sexual offenders. Second, although Plaintiff cannot keep receive pictures of non-biological children, he is not prohibited from receiving pictures of other adult family members and friends. Third, given the limited prison resources and the potential for abuse, prison officials simply have no way to legitimately and efficiently confirm whether a child is a family member. Fourth, for the reasons set forth above, the prison's response is not "exaggerated," particularly as to sexual offenders whose sexual offenses involve minor children.

E.    Plaintiff's Claim for Extortion

In paragraph 40 of his amended complaint, Plaintiff alleges that Defendants' conduct and the BOP's SOMP "can be viewed as a form extortion," and then cites to Black's Law Dictionary as defining extortion as "an offense committed by a public official who illegally obtains property under color of office." ECF Doc. 37

at 5.  In Plaintiff's opposition to Defendants' motion to dismiss, Plaintiff argues that his extortion claim should survive because it was not addressed by Defendants.

Defendants do not need to address Plaintiff's extortion claim, because it is not a claim under which Plaintiff can seek relief.  Putting aside the lack of facts to support a claim for extortion, extortion is a criminal offense and does not provide a civil basis for relief.  In other words, Plaintiff cannot seek relief for a constitutional violation based on extortion.  To the extent he was deprived of property i.e., the photographs, such a claim is a due process claim and as set forth herein is not cognizable under *Bivens.*

F.    Plaintiff's Claims for Injunctive and Declaratory Relief

In addition to seeking monetary relief, Plaintiff also seeks injunctive and declaratory relief under *Bivens* and the APA.  *See Bivens*, 403 U.S. at 400 (Harlan, J., concurring) (noting the presumed availability of injunctive relief as fatal to the government's argument that suit depends on the passage by Congress of legislation creating a federal right of action); *see also Bolin v. Story*, 225 F.3d 1234 (11th Cir. 2000); *Vieux v. Fed. Bureau of Prisons*, 2016 WL 4070138, at *2 (N.D. Ala. July 29, 2016) ("the Eleventh Circuit Court of Appeals has implicitly recognized [in *Bolin*] that a *Bivens* plaintiff may pursue a claim for prospective injunctive relief").  Although injunctive relief may be available, in this particular case, such relief has been mooted by Plaintiff's transfer from FCI Marianna to UPS Yazoo City in

October 2018. ECF Doc. 10. *See Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986) ("[A] transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief . . . ."); *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) ("Past exposure to illegal conduct does not constitute a present case or controversy involving injunctive relief if unaccompanied by any continuing, present adverse effects.") (citation omitted); *McKinnon v. Talladega Cty.*, 745 F.2d 1360, 1363 (11th Cir. 1984) (holding inmate's transfer to a different jail mooted claim for declaratory and injunctive relief).

In Plaintiff's amended complaint, Plaintiff describes the SOMP supplement at issue as an FCI Marianna institutional supplement - specific to FCI Marianna. Plaintiff states that under the BOP's SOMP Policy, "each institution is required to have an institutional supplement which reflects that institution's unique characteristics and specifies how it will monitor inmates for risk relevant behavior." ECF Doc. 32 at 2. He sues Defendants Rivera and Proulx for creating the institutional policy at issue. *Id.* Additionally, he sues the BOP for allowing "Marianna to go rogue," and states that the policy is a "local policy." *Id.* at 3. There are no allegations that the same institutional policy exists at UPS Yazoo City. Indeed, based on Plaintiff's allegations, "no other SOMP institution with the [BOP] has a policy that rejects all family photos of minors simply because one is labeled a 'sex offender.'" *Id.* Moreover, the specific issue complained of is moot because it

appears that Plaintiff is allowed to possess photos of his nephews at UPS Yazoo City since he has attached the disputed photos of his nephews to his amended complaint (filed after he was transferred to UPS Yazoo City).  ECF Doc. 37-1 at 1-3, 6.

Therefore, unless Plaintiff can show that there is a reasonable likelihood that he will be transferred back to FCI Marianna, *and* if transferred back, he would be subject to the same institution supplement, he is not entitled to injunctive or declaratory relief.  *See Murphy v. Hunt,* 455 U.S. 478, 482 (1982) (holding, "the capable of repetition, yet evading review exception" will be applied, as long as the action is not a class-action lawsuit, if "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again.") (citations omitted).

### IV.    CONCLUSION

Accordingly, it is ORDERED:

1.    Within **fourteen (14) days** from the date of this order, Plaintiff shall show cause why his claims for injunctive relief should not be dismissed as moot.

And it is RECOMMENDED:

1.    That Plaintiff's claims for monetary relief against Defendants be

DISMISSED for failure to state a claim.

At Pensacola, Florida, this 24th day of September, 2019.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.

# Plaintiff's Objections to the Magistrate's Report and Recommendation

# Doc. 45

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

BRIAN CULVER,           )
    Plaintiff,        )

v.                 )       Case No. 5:18-CV-160-TKW-HTC

FEDERAL BUREAU OF PRISONS,   )
SHANNON D. WITHERS, Warden,   )
STEPHANIE RUSH, Chief Psychologist, )
RAMON RIVERA, SOMP Coordinator,  )
MICHELLE PROULX, SOMP Psychologist, )
ADAM MCCORD, SCSS (Acting Warden)  )
    Defendants.         )

## PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE REPORT

Comes now plaintiff, Brian Culver, to submit this objection to the Magistrate's Report and Recommendation.

Plaintiff respectfully objects to the following finding:

1. **Page 12 section D "SOMP Institution Supplement Claim":**  Plaintiff objects to the finding that the Institutional Supplement is reasonably related to a legitimate penological objective and it meets the Turner Standard.

Plaintiff is objecting to this finding because there is absolutely no research or valid nexus with prohibiting one from having appropriate family photos and any risk of recidivism, or such pictures pose a risk to the safety and security of the institution.

## PLAINTIFF FURTHER OBJECTS BASED UPON THE FOLLOWING FINDINGS:

"there is a valid rational connection between the institutional supplement and a legitimate government interest i.e. to reduce recidivism among sexual offenders" (Doc 43 at 14)

  A. There are no facts or research to support this conclusion.  Appropriate family photographs have absolutely nothing to do with recidivism rates.  Family photographs represent meaningful ties to the community which research has shown reduces recidivism.

  B. Sex offenders have one of the lowest recidivism rates for any offender group and banning photos which are neither sexual or inappropriate is nothing more than an irrational restriction that is not based on facts.

  C. While the government has an interest in reducing recidivism, the government cannot hide behind this interest to implement policies that are overbroad and moves away from the legitimate interest.  This policy bans ALL photos of minors for ALL sex offenders even if

1

the photo was taken in Marianna's own visitation room and even if the sex offender's criminal conduct had absolutely nothing to do with victimizing minors. This is over broad and an exaggerated response. This exceeds any legitimate objective the government may have.

D. This policy does not restrict photos of minors if the photo is in a publication or even if the materials are handed out by FCI Marianna (i.e. the envelopes in which photos are given out in when one takes a photo here at Marianna was a "Wal-Mart" envelope which contained pictures of minors on the envelope). Books, magazines, etc.. all have photos of minors in them yet Marianna is focused on banning one's documented family members. If photos of minors somehow increases the chances of recidivism, then surely photos of minors who are not related to the plaintiff would pose the same or a greater risk. This shows this policy is not based upon anything except a personal bias and not any fact based legitimate government interest.

E. In this case, recidivism is a moot point. Plaintiff has 60 years in prison (essentially life) therefore a ban on his family photos could not possibly have a legitimate government interest in reducing recidivism in this case.

"Prison officials simply have no way to legitimately and efficiently confirm whether a child is a family member" (Doc 43 at 14)

A. Family member status is not the issue at hand in the policy under attack. The policy bans all photos or minors that are not the biological or adopted child of individuals regardless if they are family members or not. The photos at issue in this case were of family members.

B. The policy bans photos even if the photos were taken in the visitation room at FCI Marianna. It is legitimate and efficient to confirm that if a photo was taken in the visitation room, then one is in fact a family member or they would not be on the approved visitation list.

C. Every individual in SOMP is suppose to have an initial screening upon arrival. It would be extremely efficient for a notation to be made in this initial screening of family members who are on the approved visitation and/or a photo list. The policy could simply be modified to ban photos of children who are not on one's visitation list or some other approved photo list.

D. It would be simple to require that all pictures sent to individuals must contain the inmates ID number and who sent the picture. The mail room could reject any photos not conforming to this requirement. If one is found to have a photo of someone not on his visitation list, then said photo should be confiscated and considered contraband.

Although plaintiff disputes the fact that appropriate photographs have anything to do with recidivism, plaintiff has clearly shown there are methods already in place to deal with anyone who is engaging in risk relevant behavior. As plaintiff has stated, a CMP (Correctional Management Plan) is for those engaging in risk relevant behavior. Under BOP policy, then and only then should one's appropriate photographs be restricted. Placing everyone who has the label of sex offender on a de facto CMP is an exaggerated response and has absolutely nothing to do with risk relevant behavior or any risk of recidivism. Plaintiff is respectfully objecting to the conclusions of this court because the conclusions are based upon facts which are in dispute. Plaintiff understands that the burden of proof is on him to prove the government's actions are not related to a legitimate penological interest.

2

However, plaintiff cannot meet this burden of proof unless he is allowed to move forward to discovery to submit interrogatories and/or expert testimony. Plaintiff respectfully objects to the courts conclusions and asks for this case to be allowed to move forward to discovery on the issue of the "SOMP Institutional Supplement Claim".

Respectfully,

Brian Culver 26299-001

## CERTIFICATE OF SERVICE

I, Brian Culver, certify that a true and accurate copy of this SUBMISSION TO SHOW CAUSE was served on:

U.S. Attorney's Office
Attn: Herbert S. Linsey
111 North Adams Street
Tallahassee, FL 32301

by placing said copy in the prison legal mail system here at USP Yazoo City on this 8th day of OCTOBER 2019 with sufficient postage paid.

Brian Culver

3



# Order Adopting Report and Recommendation

# Doc. 46

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**BRIAN CULVER,**

      **Plaintiff,**

**v.**                                                           **Case No. 5:18cv160-TKW-HTC**

**FEDERAL BUREAU OF
PRISONS, et al.,**

      **Defendant.**

_____/

## O R D E R

This case is before the Court based upon the magistrate judge's Order and Report and Recommendation, which (1) recommended that Plaintiff's claims for monetary relief be dismissed and (2) ordered Plaintiff to show cause why his claims for declaratory and injunctive relief should not be dismissed as moot.  *See* Doc. 43. Plaintiff filed a response to the order to show cause (Doc. 44) and objections to the recommended dismissal of his claims for monetary relief (Doc. 45).  Based on my de novo review of the issues raised in the objections, I agree with the magistrate judge's determination that the challenged policy passes constitutional muster because it is reasonably related to legitimate penological interests.

Accordingly, it is **ORDERED** that:

1.    The magistrate judge's Report and Recommendation is adopted and incorporated by reference in this Order.

2.    The claims for monetary relief in Plaintiff's amended complaint (Doc. 37) are **DISMISSED with prejudice**.

3.    The case is referred to the magistrate judge to consider Plaintiff's response to the order to show cause and for such additional proceedings as may be necessary.

**DONE and ORDERED** this `18th day of October, 2019.

*T. Kent Wetherell, II*

**T. KENT WETHERELL, II**
**UNITED STATES DISTRICT JUDGE**

# Second Report and Recommendation

# Doc. 48

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

BRIAN CULVER,

     Plaintiff,

v.                                    Case No. 5:18cv160-TKW-HTC

FEDERAL BUREAU OF PRISONS
(BOP), et al.,

     Defendants.

_____/

## SECOND REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's claim for injunctive and declaratory relief. Upon consideration, the undersigned recommends Plaintiff's claims for declaratory and injunctive relief be dismissed because this Court has already determined that the Sexual Offender Management Program ("SOMP") institution supplement at issue is constitutional.[1]

### I.    BACKGROUND

Plaintiff is an inmate of the Federal Bureau of Prisons ("BOP") currently confined at USP Yazoo City. The crux of Plaintiff's complaint is that Defendants have violated his constitutional rights by prohibiting him from possessing

---

[1] The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation, pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C).

photographs of his nephew while he was at FCI Marianna.  Plaintiff sues five individual defendants and the BOP under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).  Specifically, Plaintiff takes issue with an FCI Marianna SOMP institution supplement which bars Plaintiff from having any photos of minors who are not his children.

On June 18, 2019, the Defendants filed a motion to dismiss Plaintiff's monetary claims on several grounds, including that the claims were not cognizable under *Bivens*, and even if they were, the SOMP institution supplement at issue is not unconstitutional.  Defendants did not address Plaintiff's claims for nonmonetary relief, other than to say that claims for injunctive relief are cognizable under the APA and *Bivens*.

After considering the parties' written submissions, the undersigned entered an Order and Report and Recommendation, recommending that Plaintiff's monetary claims be dismissed.  ECF Doc. 43.  Among other findings, the undersigned found that Plaintiff's claims for monetary relief were not cognizable under *Bivens* and, even if they were, that the SOMP supplement at issue was constitutional.  *Id.*

As to Plaintiff's claims for declaratory and injunctive relief, the undersigned ordered Plaintiff to show cause why these claims were not mooted by Plaintiff's transfer from FCI Marianna, particularly given that the SOMP at issue was an institution specific supplement.  *Id.*  Furthermore, based on Plaintiff's subsequent

Case No. 5:18cv160-TKW-HTC

filings, Plaintiff has possession of photos of his nephew at FCI Yazoo City.  In other words, as a threshold matter, if Plaintiff cannot show that there is a reasonable likelihood that he will be transferred back to FCI Marianna and would be subject to the same supplement upon his return, then his nonmonetary claims would be subject to dismissal on the ground of mootness.  Although the undersigned asked Plaintiff to address the issue of mootness, mootness is just one factor the Court considers when determining whether Plaintiff has stated a claim for injunctive or declaratory relief.

## II.    LEGAL STANDARD FOR SCREENING

Under the Prison Litigation Relief Act ("PLRA"), the Court is obligated to dismiss an action by a prisoner, if at anytime, it determines the action is "(1) frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(a), (b); *see also* 28 U.S.C. § 1915(e)(2)(B) (applying the same standard to *in forma pauperis* proceedings); *Little v. Mottern*, 2017 WL 934464, *10 (M.D. Pa. March 7, 2017); *Glenn v. Delbalso*, 2016 WL 930722, *2 (M.D. Pa. March 11, 2016).  A dismissal under the PLRA can occur even after an initial screening and service of the complaint.

Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6).  *Mitchell v. Farcass*, 112 F.3d 1483, 1485

(11th Cir. 1997).  Additionally, the Court must read Plaintiff's *pro se* allegations in a liberal fashion.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Because this Court has already dismissed Plaintiff's claims for monetary relief, the only remaining claims for consideration are Plaintiff's claims for injunctive and declaratory relief.

### III.   LEGAL ANALYSIS

Plaintiff seeks a declaration that "the acts and omissions described herein violated plaintiff's rights and the policy . . . is a violation of the constitution and laws of the United States and/or is an exaggerated unwarranted response."  ECF Doc. 37 at 5.   Additionally, Plaintiff seeks an injunction ordering Defendants to stop "banning family photos simply because they contain a minor who is not the plaintiff's . . . child."  *Id.*

As an initial matter, Plaintiff cannot obtain injunctive relief under the APA because Congress has specifically exempted BOP determinations under 18 U.S.C. § 3621(f)(1)(A) from the APA.  *See* 18 U.S.C. § 3625; *Cook v. Wiley*, 208 F.3d 1314, 1319 (11th Cir. 2000) (holding that, the BOP's determination under § 3621 was "not subject to judicial review"); *Wise v. Samuels*, No. 2:12CV696, 2014 WL 1280975, at *6 (E.D. Va. Mar. 26, 2014) (holding, in a case where officials had confiscated photos and other materials from an inmate who was incarcerated for sex offenses against a minor, that "[t]he determinations to remove the items from Plaintiff and to

discipline him for their possession . . . were made pursuant to sex offender treatment programs. . . .   Therefore, these claims cannot be reviewed pursuant to the APA."). Section 3621(f)(1)(A) is the authority for the BOP's Sex Offender Management programs and provides that the BOP "shall establish non-residential sex offender management programs to provide appropriate treatment, monitoring, and supervision of sex offenders. . . ." 18 U.S.C. § 3621(f)(1)(A). Section 3621(f)(1)(A) is the authority for the SOMP institution supplement at issue.

Plaintiff also cannot state a cause of action under *Bivens* for injunctive relief regardless of whether he will be transferred back to FCI Marianna because for a court to grant injunctive relief under *Bivens* or its equity powers, there must be a constitutional violation.  *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim. . . ."); *Bell v. Hood*, 327 U.S. 678, 684 (1946) (recognizing the "jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution"); *Sibley v. U.S. Supreme Court*, 136 F. App'x. 252, 254 (11th Cir. 2005) ("Litigants may seek injunctive relief for violation of their federal constitutional rights . . . under 42 U.S.C. § 1983. . . .   Furthermore, § 1983 has been applied to federal actors under *Bivens*."); *Del Raine v. Williford*, 32 F.3d 1024, 1043 (7th Cir. 1994) ("[I]n order to assert a claim in a *Bivens* action, there must be a constitutional violation at issue. . . .").

Here, this Court has already determined that the SOMP institution supplement at issue is not unconstitutional.  After the undersigned issued her Report and Recommendation, Plaintiff filed an objection, specifically objecting to the undersigned's determination that "there is a valid connection between the institutional supplement and a legitimate government interest i.e., to reduce recidivism among sexual offenders."  ECF Doc. 45 at 1.  Although Plaintiff acknowledges the government has an interest in reducing recidivism, the Plaintiff argues the supplement is an "overbroad" and "exaggerated response."  ECF Doc. 45 at 2.  Plaintiff further argues that because he has a term of imprisonment of 60 years, a ban on his family photos "could not possibly have a legitimate government interest in reducing recidivism in this case."  *Id.*  Plaintiff's objection was, thus, based solely on the undersigned's finding that the supplement was constitutional.  In adopting the undersigned's Report and Recommendation, however, this Court rejected Plaintiff's arguments, holding, instead, that "the challenged policy passes constitutional muster because it is reasonably related to legitimate penological interests."  ECF Doc. 46 at 1.

Although Plaintiff argues as well that he should be able to proceed to discovery because there are facts which are in dispute, Plaintiff fails to identify those facts.  Instead, he argues that there are other ways to reduce recidivism and that a sex offender should be on a correctional management plan before he is restricted

from having photographs of minors.  Whether alternative means can be employed by the Defendants to also reduce recidivism, however, is not part of the *Turner* "reasonably related" test.  *See Turner v. Safley*, 482 U.S. 78, 89 (1987) (setting forth factors to determine whether a regulation is reasonably related to a legitimate interest as necessary to pass constitutional muster); *Walker v. McCaughtry*, 141 F. App'x 460, 461 (7th Cir. 2005) (affirming dismissal of First Amendment claim and rejecting argument that prison must address compelling government interest through least restrictive possible means).

Because Plaintiff has failed to present facts sufficient to show a constitutional violation has occurred, Plaintiff cannot maintain a claim for injunctive relief.  For the same reasons, Plaintiff cannot maintain a claim for declaratory relief, which is also necessarily premised on the establishment of a constitutional violation. Accordingly, Plaintiff's remaining claims should be dismissed.  *See e.g., Williams v. Sec'y for Dept. of Corr.,* 131 F. App'x 682, 686 (11th Cir. 2005) (affirming dismissal of § 1983 claim alleging no rational connection between prison regulation prohibiting the removal of shoes with a legitimate governmental interest in maintaining safety and security); *Israel v. Cohn*, 6 F.App'x 348, 351 (7th Cir. 2001) (affirming *sua sponte* dismissal of § 1983 claim challenging regulation requiring prisoner to obtain approval of contact list before being allowed to make outgoing telephone calls).

Case No. 5:18cv160-TKW-HTC

## IV.    CONCLUSION

Accordingly, it is respectfully RECOMMENDED:

1.      That Plaintiff's claims for injunctive and declaratory relief be DISMISSED for Plaintiff's failure to state a claim.

2.      That the clerk be directed to close this file.

At Pensacola, Florida, this 14th day of November, 2019.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1; 28 U.S.C. § 636.

# Plaintiff's Objections to Second Report and Recommendation

# Doc. 49

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

BRIAN CULVER,
    Plaintiff,

v.                                          Case No. 5:18-CV-160-TKW-HTC

FEDERAL BUREAU OF PRISONS,
SHANNON D. WITHERS, Warden,
STEPHANIE RUSH, Chief Psychologist,
RAMON RIVERA, SOMP Coordinator,
MICHELLE PROULX, SOMP Psychologist,
ADAM MCCORD, SCSS (Acting Warden)
    Defendants.

### PLAINTIFF'S OBJECTIONS TO MAGISTRATE'S 2nd REPORT AND RECOMMENDATION

Comes now plaintiff, Brian Culver, to enter the following objections to the Magistrate's 2nd Report and

Recommendations.  Plaintiff is objecting to the following findings:

1. The Magistrate found that plaintiff argued that he should be able to proceed to discovery because facts are
   in dispute but "fails to identify those facts.  Instead he argues that there are other ways to reduce recidivism
   and that a sex offender should be on a Correctional Management Plan before he is restricted from having
   pictures of minors." (Doc 48 at 7)

This is a misrepresentation and is misconstruing what the plaintiff has said.  Plaintiff specifically identified what

facts are in dispute by stating the facts in his original complaint (Paragraph 30 of the complaint).  The facts which

are in dispute are the facts that appropriate family photos have anything to do with recidivism.  This is something

which the defendants just made up to justify their rogue actions.  The BOP Policy does not allow for such bans

nor is there any type of nexus with the government's interest and the actions the government took.  The court

is allowing the government to testify as their own expert without allowing the plaintiff an opportunity to prove

facts which are in dispute (family pictures are connected to recidivism).  Appropriate family photos have absolutely

nothing to do with recidivism.  Furthermore, this ban is based upon recidivism which is in turn based upon

a clinical determination of "risk relevant".  While the BOP is an expert with "Safety and Security" because it

it is concerning a custody situation, risk relevant is a psychological based determination in which the defendants

should not be able to state facts without the plaintiff showing the facts are not true.  Would this court allow

1

the defendants to ban the plaintiff from eating Macaroni & Cheese because children usually eat this meal therefore the meal is risk relevant? This is an obviously absurd example. However, if the plaintiff is given and opportunity to move to discovery he would be able to prove that banning appropriate family photos is equally absurd based upon FACTS. Facts which are in dispute.

Plaintiff also did not argue that there are alternative ways to reduce recidivism. Plaintiff argued there are alternative ways to determine if one is a family member without banning all photos. The Magistrate misconstrued this argument as addressing recidivism when the plaintiff was addressing the Magistrate's finding that there is no way to determine if one in a picture is in fact a family member. The plaintiff was offering numerous ways to determine if a given picture in question does in fact contains a family member rather than a random child.

2. The Magistrate found that 18 U.S.C. 3621(f)(1)(A) grants authority to the BOP to ban plaintiff's photos and as a result the actions in question are not reviewable under the "APA". (Doc 48 at 5)

Plaintiff objects to this finding based upon several facts. First of all, one case law cited is not binding precedent in the 11th circuit nor is the case law similar to the claims that plaintiff has made. Wise v. Samuels No. 2:12 CV696, 2014 WL 1280975, at *6 (E.D. Va. Mar. 26, 2014) concerns an individual who was caught with: a Playboy magazine, erotic photos, photos of his victims, sexual photos, etc. In Wise, the court quoted Hughbanks v. Dooley , Civ, No. 10-4064 2012 U.S. Dist. LEXIS 12479, 2012 WL 346673, *18 (D.S.D Feb 2, 2012): "Deference is shown to prison officials and federal courts have consistently upheld prison officials determinations that certain materials (such as pornography or sexually suggestive photographs) are detrimental to a sex offender's rehabilitation". Plaintiff agrees with this holding and is not disputing this authority. HOWEVER, this has nothing to do with the case at hand. Plaintiff's case is about appropriate family photographs which represent meaningful ties to the community. Research has shown that meaningful ties to the community reduces recidivism. Plaintiff strongly objects to the court's reliance on the "Wise" case because it is not similar in any way nor is it binding precedent in this circuit. Plaintiff also wants to restate that SOMP is not treatment therefore any reliance on "conditions of treatment" is not applicable in this case (as in the Wise case) because he is not in treatment nor has he voluntarily entered into any type of SOMP agreement. Plaintiff is in SOMP for his protection and not because of any institutional behavior, risk relevant reasons, or treatment.

2

Although the second case in which the Magistrate based its findings on is binding, it is not similar at all. Cook v. Wiley, 208 F.3d 1314 (11th Cir 2000) deals with the calculation of good time. Plaintiff does not dispute that the BOP has the authority to manage its affairs which includes housing, custody decisions, good time credits and even sex offender management programs. Plaintiff is stating that while 18 U.S.C. 3621(f)(1)(A) grants the BOP the authority to implement a SOMP program and actions under the scope of 18 U.S.C. 3621(f)(1)(A) are exempt from judicial review, this is not the case here. As specifically stated in the complaint, the BOP (specifically Marianna) has stepped outside of their authority and implemented a practice that bans rather than monitors. This ban is not authorized under the BOP SOMP policy nor is it authorized under any power given under 18 U.S.C. 3621(f)(1)(A). The Magistrate quoted 3621(f)(1)(A) and a careful reading shows that this gives the BOP authority to: "Provide appropriate treatment, MONITORING (emphasis added), and supervision of sex offenders". Plaintiff has clearly shown that a ban on personal property is ONLY allowed under the BOP policy (and authority under 18 U.S.C. 3621) when and ONLY WHEN one is placed on a Correctional Management Plan AND any restriction must be related to risk relevant behavior. This is consistently defined in the case law and in BOP's own policy as sexually explicit material or any other material deemed risk relevant. This leads back to the fact that "facts are in dispute". The fact is this: Appropriate family photos have never been deemed to be risk relevant by any research, case law, or other professional finding other than the defendants own self serving statements.

PLAINTIFF'S REQUEST:

Plaintiff is objecting to the findings of the Magistrate and is requesting an opportunity to move forward to discovery in order to prove the facts which are in dispute. The facts are: 1) Appropriate family photos have anything to do with recidivism; 2) Recidivism is a moot point in this case; and 3) The policy has any impact on the government interest of reducing recidivism.

Respectfully,

Brian Culver 26299-001
USP Yazoo City
PO Box 5000
Yazoo City, MS 39194

3

CERTIFICATE OF SERVICE

I, Brian Culver, certify that a true and accurate copy of this submission was served upon:

          U.S. Attorney's Office
          Attn: Herbert S. Lindsey
          111 North Adams Street
          Tallahassee, FL 32301

by placing said copy in the prison legal mail system here at USP Yazoo City on this 26TH day of NOVEMBER 2019 with postage paid.

                               Brian Culver

BRIAN QUAVER 26299-001
UNITED STATES PENITENTIARY
PO BOX 5000
YAZOO CITY, MS 39194

CHECKED DEC 0 7 2019

⬥26299-001⬥
U S District Court
Office of the Clerk
100 N Palafox ST
Pensacola, FL 32502
United States

LEGAL MAIL

LEGAL MAIL

32502-489900

LEGAL MAIL

**FEDERAL CORRECTIONAL COMPLEX**
P.O. BOX 5666
YAZOO CITY, MS 39194

THE ENCLOSED LETTER WAS PROCESSED
ON 11/26/19 THROUGH SPECIAL
MAILING PROCEDURES.

The letter has neither been opened or inspected if
the writer raises a question or problem over which
this facility has jurisdiction, you may wish to
return the material for further information or
clarification. If the writer encloses
correspondence for forwarding to another
addressee, please return the enclosure to the above
address.

# Motion for Expert Witness and Submission of Recidivism Report

# Doc. 50

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

BRIAN CULVER,
   Plaintiff,

v.                               Case No. 5:18-CV-160-TKW-HTC

FEDERAL BUREAU OF PRISONS,
SHANNON D. WITHERS, Warden,
STEPHANIE RUSH, Chief Psychologist,
RAMON RIVERA, SOMP Coordinator,
MICHELLE PROULX, SOMP Psychologist,
ADAM MCCORD, SCSS (Acting Warden)
   Defendants.

## REQUEST FOR EXPERT WITNESS AND SUBMISSION OF RECIDIVISM REPORT

Comes now plaintiff, Brian Culver, to request the appointment of an expert witness concerning recidivism and to submit the attached Recidivism Report which was done on the plaintiff.   Plaintiff is "nominating" Dr. Preston to be appointed as an expert in this case because he is an expert on recidivism and he is familiar with the specifics of plaintiff's recidivism risk as well as recidivism risk for sex offenders in general.  Through this expert plaintiff can prove his claim that appropriate family photographs have nothing to do with recidivism thus such a ban on these types of photographs is not rationally connected to any legitimate government interest.

Respectfully,

Brian Culver 26299-001

FILED USDC FLND PN
DEC 6 '19 PM1:50

CERTIFICATE OF SERVICE

I, Brian Culver, certify that a true and accurate copy of this submission was served upon:

    U.S. Attorney's Office
    Attn: Herbert S. Lindsey
    111 North Adams Street
    Tallahassee, FL 32301

by placing said copy in the prison mail system here at USP Yazoo City on this 2ND day of DECEMBER 2019 with postage paid.

Brian Culver

# CONFIDENTIAL FORENSIC RECIDIVIST RISK REPORT:

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| | ) | | |
| v. | ) | CASE NO: | 5:11 - cv-8038-LSC-JEO |
| | ) | | 5:07 - cr- 0009-LSC-JEO |
| BRIAN SCOTT CULVER | ) | | |

SUBMITTED BY:
FRANKIE L. PRESTON, PSY.D.
LICENSED PSYCHOLOGIST
805 MADISON STREET, SUITE 2-E
HUNTSVILLE, ALABAMA 35801
(256) 534-7107 & FAX: (256) 534-7886

DATE OF REPORT: November 14, 2011

## I. INVOLVEMENT, REFERRAL CIRCUMSTANCES
## & INITIAL CONTACT:

Having been involved with the assessment and treatment of sexual offenders[1], since the early 1980's, Defense Counsel, Marcia E. Shein (Federal Bar No. 53667) contacted my office sometime prior, explaining circumstances she independently decided as substantial reason/s to submit what eventually resulted in a ***Memorandum and Brief to Vacate, Set Aside, or Correct Sentence Under 28 U. S. C. § 2255,*** filed on 09-31-11 at 2:59 PM (75 pages on behalf of the petitioner). Among 14 Sections summarized in Section 15 (page 73), the issue of trial counselor failing to call upon an expert to address the petitioner's risk (or not) for recidivism (sexual abuse of a minor) was specified and addressed in Section 10 and 11 (pages 60-63).

I indicated my involvement would be ethically contingent upon issuance of a judicial Order, and a means of compensation for me to adequately prepare, travel, assess, secure lodging, pre-

---

[1] See Curriculum Vitae, Mental Health Employment experiences, and Continuing Education, etc. in qualification of the examiner as an expert in terms of legal criteria.

1

arrange for computer-generated tests, and to generate a report as to the question/s raised in Section 10. Accordingly, Ms. Shein, petitioned United States Magistrate Judge, Hon. John E. Ott on October 10, 2011, stipulating fees being the responsibility of "the defendant and not the United States" (page 2, item 6), and the Order was signed and issued.

The examiner traveled to Tucson, AZ on November 8, 2011 and upon arrival contacted Mr. Larry Johannes, Counselor, USP Tucson, U.S. Penitentiary (USP). The following morning, November 9, 2011, at approximately 7:40 AM, Mr. Johannes had arrived, as I, before the designated time (8:00 AM) at the facility's designated visitor entry, and shortly thereafter I proceeded as guided, to present necessary photo identification (hospital staff badge and driver's license); satisfied apparent administrative policy documentation (personal psychologist's licensure cards issued from the states of: AL, KY, & TN); and completed procedural screenings (i.e., a visitor styled form, cleared as per internally generated warden's approval, personally agreed to be photographed, was allowed to and successfully proceeded through electronic surveillance; stamped on the upper left hand (a photosensitive "E" marking) necessary to pass beyond checkpoints. Personally escorted through established security checkpoints with Mr. Johannes within my line of vision, I was permitted and allowed to meet, interview, test, and otherwise evaluate Mr. Culver at the USP visitor center area. Security observation and oversight began at or near 08:00 AM and ended at approximately 14:45 PM.

## II.   PREPARATIONS, CONSULTATION, & RECORDS REVIEWED:

Above and beyond the measures acquired and accumulated by education, training, and experience, I enrolled in a series of continuing education events (35 hours face-to-face) in Dallas, Texas from November 2-6, 2011 sponsored by the American Academy of Forensic Psychology (AAFP). The AAFP is the educational appendage of Division 41, the American Psychology-Law Society, one of the fifty-plus areas of specialization recognized by the American Psychological Association. One of the workshops was conducted by Dr. Daniel J. Neller, Psy.D., (from whom I received the Hanson & Morton-Bourgon {2009} studies) who currently works as a psychologist for the Federal Bureau of Prisons, and specializes in risk for violence. I had an opportunity to speak with another presenter Dr. Anita Schlank, Psy.D., ABPP, former Clinical Director for the State of Minnesota (Minnesota Sex Offender Program) who worked as a psychologist from

2

1995-2002, and the Federal Correctional Institution in Butner, North Carolina, a facility where many federal sex offenders receive treatment. Dr. Schlank and I discussed in anonymous and hypothetical terms this upcoming consult, and based on these exchanges, my AAFP continuing education history, and my forensic experiences (see Curriculum Vitae {CV}), I decided upon use of the evaluation strategy and method later described.

Before seeing the defendant I reviewed the following documents (some prior referenced):

A. Presentence Investigation or Presentencing Report (PSR) prepared by Kimberlee Franklin (08-23-07, 15 pages).

B. Addendum to the Presentencing Report prepared by Kimberlee Franklin (four pages, un-numbered, totaling four, undated & unsigned in response to objections filed by first counsel, Mr. Herbie Brewer).

C. The above referenced Memorandum and Brief 28 U.S.C. § 2255 authored by Esq. Shein (totaling 75 pages, dated 09-30-11).

D. The Order authorizing me to evaluate the defendant (2 pages, signed by Hon. Judge Ott).

E. Review of testimony (transcript pages 785-871) of K.W. (after interviewing Mr. Culver).

To avoid any inference/s by statements or matters of fact, I did not review victim statements outside of the trial transcript, police reports, and/or defendant statements (if any). The *writ of habeas* in terms of psychological issues rest with expert assessment about "recidivism," future sexual re-offense, and sexual danger to society at large, versus what defense counsel argues as being arbitrary conclusions made by the court when imposing sentence. Therein, the *habeas* petition additionally questions some *issues of fact*, appearing un-established, to which any responsible expert would question as being of critical significance when asked to objectively address the difficult question of predicting future behavior (later discussed). The matters not apparent include:

1. The jury determined "guilty" verdicts on counts one through four, and count six. Mr. Culver wholesomely disputes these determinations made by the jury, specifically contending that at no time has he ever seen, touched, pictured or filmed the alleged

3

victim's genitalia or unclothed anatomy. If not determined guilty via the adversarial system of law, the defendant would not have been sentenced, appellate briefs would have likely not been filed, and the examiner would not have been asked to assess Mr. Culver for risk to recidivate.

Behavior scientists have established some base rates for recidivism relative to persons admitting to and/or found guilty of committing sex crimes against minors. These are best described (meta-analysis of meta-analyses[2]) by Hanson & Morton-Bourgon (2009[3]). Over a 70 month period authors establish recidivism base rates at 11.5% for sexual re-offense, 19.5% for violent offenses in general, and 33.2% for any arrest for any felony offense. This study, however, does not distinguish between sex criminals (as determined by law) if the base rates are different (equal, higher or lower) between "admitters" and "non-admitters." This concept is of great importance because many professionals and laypersons infer: 1) the average reasonable person will not commit a sex crime against a minor; 2) if a person is found guilty of a sex crime, probability is greater than not they will recidivate (e.g. >50%), and 3) if a person found guilty of a sex crime against a minor denies involvement (versus admits to some or all of the allegation) their probability of sexually re-offending is even greater. Most are quite surprised to learn that in the largest study to date, including persons considered as "pedophiles,[4]" the criminal sex offender base rate is a mere 11.5%. Thus, the reasons why "recidivism risk assessments" (ARA's) are of such great importance[5].

---

[2] A statistical term referring to a complex process of numerically analyzing large populations and arriving at the most, or one of the most, reliable methods of correlating attributes to prediction.
[3] This study was based on 118 distinct samples (studies, 63% which were unpublished) from 16 countries (U.S. had the most: 41 of 118 samples) consisting of 45, 398 persons from multiple settings (i.e. correctional releases, secure psychiatric discharges, treatment programs, community-based treatment programs) during the period of 1972 to 2008. The following quotations are considered: "[T]he observed rates should be considered under-estimates of the true rates because not all offenses are detected. Although some of the 'recidivists' would have been falsely accused, the proportion of falsely accused individuals would be smaller than the portion of undetected offenders." Actuarial risk assessment instruments (ARAIs, i.e. Static -99-R and HCR-20) "should be a major consideration in the evaluation of recidivism risk potential for sexual offenders." And, "[N]o single measure has yet to establish itself as clearly more accurate than other, similar measures."
[4] A diagnostic term in the DSM-IV-TR (Diagnostic and Statistical Manual of Mental Disorders, © 2000, by the American Psychiatric Association, Washington, D.C.) which pertains to an individual whose primary sexual interests are toward minor children.
[5] Another quote from Hanson & Morton-Bourgon (2009): "[I]t is hard for evaluators to justify the use of unguided clinical opinions except for cases that fall outside the sampling frame of the existing actuarial measures…" This is in

I shall assume that a base-rate for the AORP who might sexually re-offend is greater than zero, and the base-rate for those convicted of or having pled guilty to a criminal sex offense, including those denying and those admitting their transgression, is 11.5%, and that Mr. Culver is in truth guilty of sexually offending (production of child pornography).   This does not mean Mr. Culver is at risk to recidivate.

## III.   PRE-EVALUATION CONSIDERATIONS, AGREEMENTS & NOTICE:

When Mr. Culver presented in the above described environment, he was presented with the examiner's hospital identification (driver's license was kept by administrative security), the cover letter retaining me, proffered by his Attorney, Ms. Shein; the court Order, authorizing me to evaluate him (predicated on his agreement to proceed);  and the examiner's Curriculum Vitae and Continuing Education History.  He reviewed these documents; he recognized having a copy of the Order; and he signed two documents specified by the examiner. These documents were specific to defining my role as a forensic examiner versus a traditional psychologist/clinician; my obligation to be objective, to assess and evaluate without bias; and to assure he was informed about the limits of confidentiality.   The purpose of the evaluation (e.g. "recidivism," etc.), procedures involved during the evaluation, intent to generate a report that would likely be shared with defense, prosecution, and the court; the report possibly assisting or damaging his case; and the likelihood of me being subpoenaed to testify, were defined and discussed.

Mr. Culver, obviously of average to above-average intelligence, communicates well in terms of verbal and written mediums. He voiced understanding of the option to decline evaluation, and signed both documents stipulating his wish to proceed with evaluation (refer to consent notice documents as referenced). He was reminded of his fifth amendment right to decline answering any question/s he thought could potentially result in self-incrimination, and at no time during the eight-hour examination did he exercise this privilege.

---

reference to the use of ARAIs vs. traditional clinical assessments, interviews, etc.  In addition, there are salient differences in "clinical or traditional" evaluative approaches versus "forensic" evaluative approaches.

## IV.   EVALUATIVE PROCEDURES & METHODS:

Having addressed the pre-evaluative conditions, agreements, and notice, which required approximately thirty minutes, I engaged Mr. Culver in a three and one half hour interview, largely patterned upon the presentencing report and a semi-structured psychosexual forensic interview. The objective was to establish relevant family, legal, sexual/relationship, educational, employment, residential, psychological and medical, drug and alcohol, and index crime history and information. Second, he was administered the Minnesota Multiphasic Personality Inventory, Second Edition-Restructured Form (©[6] 2011) to obtain measures of elements about his personality and psychological functioning. Third, the Substance Abuse Subtle Screening Inventory, Third Edition (SASSI-III ©) was administered twice: the first query involving his pre-treatment drug and/or alcohol abuse patterns and severity, and the second inquiry involving his post-treatment drug and/or alcohol abuse (and sobriety) patterns and/or practices. Fourth, Mr. Culver completed portions (which I designated, while he took the MMPI-II-RF and the SASSIs) of a Forensic Diagnostic Questionnaire (authored by the examiner) designed to fill-in historical gaps otherwise unaddressed. I was present during this entire evaluative process, and as he answered the latter questionnaire, he was allowed to ask questions, and while I was making historical timelines, I could ask him questions for clarification. Last, the examiner completed the Hare Psychopathology Checklist-Revised-Second Edition (PCL-R-II©), the Static-99-R ©, the HCR-20© and the SVR-20© (see footnotes 4-6) upon review of the noted history, interview, and test data.

## V.   HISTORICAL DATA & SYNOPSES:

***Family:*** Mr. Culver was born in Birmingham, Alabama on June 8, 1962 to his biological parents, Larry and Elaine Culver, now ages 74 and 71, respectively. He has one younger sister, Leticia, age 46, who is married to her husband, Mark Burr, and they have two sons, Jacob, age 21 and Samuel, age 19. His maternal grandparents lived next door to his residence during his

---

[6] Any reference designated by the copyright © symbol is regarded as proprietary. The mental health professional utilizing this test-data gathering resource is not at liberty to personally over-ride this designation, and those wishing to secure additional information as to the specific source/resource, particularly when test questions are exposed and intended for use by qualified mental health clinicians, must either 1) contact the publisher and receive waiver for obtaining copyrighted testing devices or data gathering mechanisms, or 2) acquire/retain a licensed psychologist who could receive test data and accept the ethical obligations (APA) specified for protecting the integrity and proper use of the test materials. The examiner will promptly provide test publisher data as requested.

formative years. He was close to them and felt they had significant influence, in a positive manner, on his upbringing. Later they purchased a farm, and some of his fondest moments were spent with his maternal grandfather, who was the last of the four grandparents to die; this occurred in 1998, and Brian experienced much grief at his passing.

His paternal grandparents were divorced; his grandfather served on the Alabama House of Representatives; and both grandparents remarried. He was close to his paternal grandmother and step-grandfather, although not to the extent as with his maternal grandparents. He describes his paternal grandfather as always being cordial and nice, but distant. He died of alcohol-related diabetes. As noted, all of his grandparents, biological and otherwise, are deceased. With the exception noted about the paternal grandfather, there are no immediate familial histories of sexual abuse, physical abuse, mental illness, alcoholism, substance abuse or dependence, suicides or homicides or felonious run-ins with legal authorities.

***Education, Employment & Residences:*** The Culver family lived in Birmingham, Alabama from Brian's birth until age 15, at which time his father was transferred by SemCo, his lifelong employer, to Spring, Texas. From there, they moved to nearby Houston, Texas, where Brian graduated high school in 1980 (Klein High School). The family returned to Birmingham, Alabama following Brian's graduation from high school.  He attended college at/in Auburn Alabama from 1980-1981.  In 1981, he returned to Houston, Texas to meet up with a female ("Kris"- further described below) he'd known during high school and with whom he subsequently cohabited for approximately 18 months. As he waited to receive Texas residency status, he attended North Texas Junior College, eventually enrolling in Texas A & M University, where his major was Marketing.

In 1984, close to but not quite acquiring his bachelor's degree, he returned to Birmingham, Alabama. His "partying and drug use" had increased significantly and he felt home and work would be a source of stability.  He was employed by PennCorp as an insurance salesperson, and eventually he acquired a job at SemCo, where his father had worked for so many years. He was placed in "outside sales" which involved him selling machinist services to metal producing companies (i.e. steel mills, iron works, aluminum distributors, etc.)  After approximately one

year, SemCo was purchased by Birmingham Rubber & Gasket and Brian was transferred to the Pelham Plant, as an "inside salesperson." This opportunity allowed for better hours, less travel, and more time at home. He worked there until 1991 at which time he was laid off.

In early 1993, Brian moved to Spring, Texas where he lived with Mr. Ed Glasco, a former coworker of his father's. During this time he was involved with Mr. Glasco's stepdaughter, Dawn. He was employed by DynaTech Seals in Pasadena Texas as national sales manager (selling the company's services to other companies), and was quite successful. As he transitioned into his employment, he acquired an apartment in Clear Lake, Texas, and eventually purchased a home in League City, Texas. His use of cocaine, however, soon spiraled out of control, and he again returned to Birmingham, Alabama, where he voluntarily sought inpatient treatment at Bradford-Parkside. From 1995 through January 2007, the defendant was employed as Operations Manager, and as the Presentencing Report stipulates, Mr. Tony Parker, the company President, described Brian as being an excellent employee (earning ~$32,000. annually). Of note, he was incarcerated from November 2003 until July 2004 in the Jefferson County Jail in Bessemer, Alabama; he was tried at the state level in Cullman County, Alabama in approximately July and August 2005 (two-week trial was split with time in between); and he was unemployed from January until July 2007 (noting that in February 2007 the Grand Jury issued a six-bill indictment which resulted in conviction on June 8th, 2007.).

Of note, Mr. Culver has no military experience. From 1982 through 1992, he traveled and vacationed with his parents or college peers in Mexico (twice-1982 & 1983), Africa, Peru, Canada, Australia, New Zealand, and Jamaica.

***Relationships/Marriage:*** Involvement in age appropriate and mutually consenting relationships is a primary concern when assessing someone for pedophilia and/or other paraphilia's.[7] Having age appropriate consensual sexual outlets, and being interested in and aroused by the same, is thought (i.e., research…footnote 6), to be "common sense" factors that would reduce the possibility and probability of engaging in inappropriate sexual pursuits. Mr.

---

[7]  This is the umbrella term under which pedophilia and other "deviant sexual interests: (i.e. exhibitionism, voyeurism, frottage, necrophilia, obscene telephone calling, sex with strangers, transvestism, etc.) fall.

Culver describes eight "serious" relationships he has experienced with women near his age during his lifetime.

The first woman, identified as "Kris," whose formal name is Kristen, was a female whom he knew during high school. After spending one year at Auburn University, he decided to return to Houston, Texas, where they cohabited for approximately eighteen months. Near this time he was introduced to the use of cocaine, and the couple drank alcohol, smoked marijuana and used cocaine together. In approximately 1983 to 1984 he met "Gina," number 2, who was a prior friend of Kris, they dated for a while and were sexually involved. In 1984 until "1986 or 87" Brian met "Kim," number 3, while vacationing in Florida. He learned she was from Florence, AL., and upon return home, they dated and were sexually involved.

"Monica," number 4, was an employee of SemCo.  They dated from 1988 until 1991, and the relationship ended because she wanted to go out with other male "friends." "This one hurt," says the defendant, because looking back, he realizes he "should have married her," since she had many of the characteristics he admired in women, mainly stability. Number 5, "Sherry," lasted for less than a year, approximately 6 to 8 months in total. She was sexually aggressive in comparison to sex partners with whom he ha prior engaged, and while he describes this as enjoyable, sexually, he feels this was a "rebound relationship" from the loss of Monica.  His relationship with "Dawn," number 6 and prior referenced, occurred near the time when his substance abuse, primarily cocaine, reached a point where inpatient treatment was required. They cohabited for approximately 18 months.

Alcoholics Anonymous (AA) touts itself as a place which "can mess up your drinking," and accordingly, similar-styled programs such as Cocaine Addicts Anonymous (CAA), buys into this concept, and both strongly encourage participants "to change playgrounds and playmates." Typically, all twelve step and twelve traditions (i.e. 12/12 programs) stress placing one's sobriety first, and not becoming involved in serious relationships until after achieving a minimum of one year of sobriety. Therefore, Brian dated "off and on;" he was even sought after by (e.g. "Jo Carol," not considered among those numbered); and was sexually involved, but remained determined to keep a distance. After his one-year sobriety date, he became involved with "Rachel," number 7, who he describes as "clean, honest, and faithful." They were engaged to be

married, although he had not formally announced this to his parents.  He purchased a lake house and as he began to decorate, his mother took a primary role in assisting him. Rachel became distraught that she wasn't primarily involved in decorating his new home and the relationship ended.

Brian was involved in some online dating services; he went on several pre-arranged dates; and some of these dates resulted in sexual intercourse. He even spent weekends at the lake with females, where sex was not a result (e.g. "Ritzi").  While dating Ritzi (not "numbered"/significant), they were planning a sex encounter, when a couple he had befriended, introduced him to "Sharon." She was twice married, twice divorced, and had two children by her first marriage: a son, "Todd," and a daughter, "Kayla." They dated; "sex was good;" she was not inhibited; and since he related well to her children, he felt he could become a committed father. They were married in St. Thomas, American Virgin Islands on February 1, 2003. Sharon reportedly introduced a "threesome" (her coworker, "Angie") into their sex relationship, and video-taped some of their sex experiences. The couple divorced on May 4, 2005, and while the defendant was incarcerated.  He was allowed to appear at a hearing with no counsel, losing everything (e.g. interest in family residence, interest in lake home, vehicles, personal collections, keepsakes, etc.)."

**_Drug & Alcohol Abuse and Recovery:_**   As prior noted, Mr. Culver entered Bradford-Parkside inpatient treatment facility on December 21, 1994 where he completed a 30 day program, a six week intensive outpatient treatment program; and spent five months at a half-way house (Southside Birmingham). Brian was introduced to Alcoholics Anonymous (AA) and Narcotics Anonymous (NA), but was more comfortable attending either AA or CAA. Upon discharge, it is common for those new in recovery to attend 90 meetings in 90 days. Brian attended 232 meetings in 90 days; he acquired a sponsor; he proceeded to work through the twelve steps, and up until his arrest he reportedly attended two to three meetings per week. Specifically, he went to AA in Hoover; he continued attending the continuing care meetings sponsored by Bradford; he attended a spirituality group (made up of a variety of 12/12 recovery people) which dealt with spirituality as a focus in keeping sober; and following the group, each Monday, he attended a CAA meeting, which was held at the same location.

His drug of preference was cocaine, although he admits to alcohol and marijuana abuse during his earlier years. His pattern of abuse, like most, became more frequent, seeking greater intensity (while likely raising his tolerance levels), and hoping to have each experience last longer. This is the nature of addictive disease progression, and while attempting to accomplish this, which few can, additional funding and less productivity for earning money eventually "breaks the proverbial bank." The addiction always wins, and the addict most often has to start all over...they didn't "loose anything," they gave everything away. The point is that this process requires great humiliation in order to achieve humility.

In his case, he increasingly used more and more and gained such intensity/tolerance it required Xanax, Ambien, or other sleep aides to "come back down." After 24 to 36 hours of sleep, he was "off to the races," and back to the two to four day highs only to crash again and again. Admittedly, he had taken some ephedrine for weight loss after his marriage to Sharon. She, being a medical assistant for various physicians, could and did acquire prescription medication from samples left by drug representatives. It wasn't uncommon for her to have "dozens of 'pill bottles'" that she used as needed. On occasion, Mr. Culver would take Ambien or Valium for sleep; however, since his admission to Bradford he has ingested no alcohol, cocaine or derivatives thereof, marijuana, or other illicit drugs, substances, or chemicals. Of note, Mr. Culver's Substance Abuse Subtle Screening Inventory-Third Edition (SASSI-III) indicated a high probability for substance dependence. Since undergoing inpatient, outpatient, residential, and continuing 12/12 support group participation, his drug and alcohol dependency scores have significantly dropped.

***Legal***: The legal record comports fairly well with those events documented by the Pre-Sentencing Report. Mr. Culver asserts that for the December 21, 1994 charge in Crowley, Louisiana (Napoleonic Law) he was granted a "full Governors pardon," which he understood as being the same or greater than "expungement." I cannot confirm nor dispute the accuracy of this matter. This is a factor, however, one must consider when involved in recidivism risk assessment. He asserts the pardon was based on his success in completing the inpatient,

CONFIDENTIAL

11

outpatient, residential, and 12/12 support group recovery programs above noted. Compliance is also a consideration when assessing recidivism risk.

# VI.   TEST RESULTS:

On the MMPI-II-RF the defendant's item endorsements resulted in a valid profile and there was no indication of over or under reporting. There were no indications to suspect he is experiencing cognitive or somatic dysfunction, thought dysfunction, behavioral dysfunction, interpersonal dysfunction, or problems associated with interests (i.e. likes music, theatre, writing {literary or aesthetic} and fixing/building things, outdoors, sports, etc. {mechanical or physical}); yet, he is prone to rumination, tends to feel insecure and inferior, and becomes intropunitive and self-disparaging. In brief, however, no diagnostic recommendations were offered by this protocol.

Upon meeting and going over the elements of a recidivism risk assessment, discussing the same and deciding to proceed with the evaluation, while going through a fifteen page presentencing investigation document for Mr. Culver's view of accuracy, and when reconstructing timelines regarding residences, employment, education, family, legal charges, the allegations made, the charges for which he was arrested on a state and federal level, the trials for both, the outcomes, and administering the tests described, I found Mr. Culver to be of greater than average intelligence. He was well-oriented to time place person, and circumstance; his verbal communications were easily understood, with regard to tone, diction, rate and content; and written communications were legible and understandable (although seemingly rushed near the time of completing the questionnaire). Neither did he report nor did he demonstrate any complaints, symptoms, or behaviors that would typically suggest the presence of a mood disorder (i.e. depression, elation or hypo-mania, or mood fluctuation); disturbances of thought (i.e. hallucinations, delusions, ideas of reference, circumlocuted thought, etc.), deficits in memory (i.e. blackouts, passing out, seizure activity dissociation, depersonalization, delirium, dementia or amnestic episodes, etc.), and he appeared relatively free of anxiety (some awareness of time limitations but not to the degree he was unable to tolerate), distraction, or thwarted efforts to fully convey his answers to questions, explanations to contrary data, or inconsistencies that would have been outside the range of possibility. Accordingly, I conclude that Mr. Culver

was not experiencing even the slightest degree of mental disease or defect that would possibly compromise his rational understanding or appreciation of, or his ability to willfully, cooperatively, and completely participate in this risk for recidivism evaluation. Thus, no diagnostic impressions are presented, and when asked: "how do you make it in here," he countered by saying: "my faith in God," adding he attends worship services weekly, and reads his Bible daily.

On the Hare Psychopathology Checklist-Revised-Second Edition (PCL-R-II), Mr. Culver's score of 12 to 17) was insignificant (a score of 30> is necessary) to suspect psychopathy[8]. The three ARAIs, namely the SHQ-20, the Static-99-R, and the SVR-20, indicate Mr. Culver as being: *Low, Low-Moderate, and Low,* respectively and specifically in regard to recidivism risk to future commit, be arrested for and/or found guilty of committing a sex crime against a minor.

## VII. COLLATERAL INFORMATION:

In review of examination and cross examination testimony by K. W., it appears that her answers were more commensurate than not with the descriptions of what went on during Mr. Culver's marital relationship, particularly regarding the sexual threesome, videotaping of the event/s, and shaven female genitalia.  The mention of identification of stun gun markings, how these were determined, and who determined these findings seems vague.  Last, the identification of a person based on a spot on one's finger and/or nail polish – nail biting, seems lacking in terms of evidentiary standards (e.g., Daubert).  In brief, this reading did not change or alter the examiner's conclusions which shortly follow.

---

[8]  "Psychopathy" is neither defined by nor in the DSM-IV-TR, as it is a term most often associated with "psychopath." "Salekin, Rogers, and Sewell (1996) concluded that the ability of the PCL-R to predict violence was 'unparalleled' and 'unprecedented' in the literature on the assessment of dangerousness. (p. 1, Manual)" "The modern conception of psychopathy is the result of several hundred years of clinical investigation and speculations by European and American psychiatrists and psychologists. (p. 4, Manual)" The author cites the work of Cleckley (1976) as having been "very influential and helped to shape my [his] early work." Specifically, descriptions include: "superficial charm and good intelligence; absence of signs of delusions and other signs of irrational thinking; absence of nervousness or other psychoneurotic manifestations; unreliability; untruthfulness or insincerity; lack of remorse or shame; inadequately motivated antisocial behavior; poor judgment and failure to learn from experience; pathologic egocentricity and incapacity for love; general poverty in major affective relations; specific loss of insight; unresponsiveness in general interpersonal relations; fantastic and uninviting behavior with drink and sometimes without; suicide rarely carried out; impersonal trivial, and poorly integrated sex life; and failure to follow any life plan. (p. 5, Manual)" "Psychopathy" is often referred to as an essential ingredient to any recidivism risk assessment.

## VIII.  RESEARCH:

A wealth of research exists on the topics of: risk recidivism, establishing base-rate and reviewing their accuracies, ARAIs and predictive power comparisons, clinical versus forensic psychological approaches, and epidemiologic studies/normative data to which one might reasonably prepare and compare findings. I have provided some preliminary data, yet, books have been written on this topic.

## IX.  CONCLUSIONS:

Refer to the TEST RESULTS section VI. Although dispute remains as to the accuracy of some issues, section II, items 1-4 (page 4-7), I have predicated my findings based on the **data established by** (or relied upon) **the court**, which in this case would be at the highest clinical standard, and without any consideration of Mr. Culver's explanations, unless where there is an absence of findings by the court (e.g. history of juvenile delinquency, young age at first violence, early maladjustment, etc.). In all areas investigated by record review, interview, testing, and documents noted, Mr. Brian Scott Culver is forensically considered at low recidivism risk in comparison to the convicted sex offender population, with respect to the base-rates and cut scores described herein. Accordingly, an upward departure made by the sentencing judge that appears quadruple that of the presentencing investigation appears excessive, arbitrary, and without basis (unless information exists that I might not have been allowed access in considering my opinion).

## X.  REPORT DISTRIBUTION:

I will forward by confidential fax or e-mail a copy of this report to defense counsel, Ms. Marcia Shein on or near the date below signed, and I shall mail three original copies for Ms. Shein to hold or distribute as she sees fit. ALL EVENTUAL RECIPIENTS are asked and reminded to observe "CONFIDENTIALITY," as watermarked on all pages of this report. Psychologist-patient privilege and attorney-client privilege is defined as being the same, and because reproduction and or distribution of these contents could be of personal detriment to any parties referenced, or others besides the defendant, reproduction is prohibited.

CONFIDENTIAL

This report is respectfully submitted by:


Frankie L. Preston, Psy.D.
Licensed Psychologist
805 Madison Street, Suite 2E
Huntsville, Alabama 35801
Office: (256) 534-7107
Fax: (256)-534-8667

Date:   November 15, 2011

CONFIDENTIAL

# CURRICULUM VITAE:
## Frankie L. Preston, Psy.D., Inc.
*Licensed Clinical Psychologist*

805 Madison Street, Suite 2-E
Huntsville, Alabama 35801

Office: (256) 534-7107
Fax:  (256) 534-7886

Email: flprestonpsyd@yahoo.com

## Licensure:

*Licensed Clinical Psychologist* (**Alabama** {#921, 1997 until present}, **Kentucky** {#686, 1993 until present} and **Tennessee** {#1698, 1993 until present})

*Licensed Professional Counselor* (**Alabama** #496, 1985 until present)

## Education and Degrees:

1977: *Associate of Science Degree (A.S.) in Mental Health Technology*
from: John C. Calhoun Community College

1978: *Bachelor of Science Degree (B.S.) double major: Psychology & Sociology*
from: Athens State College

1981: *Master of Science Degree (M.S.) in Clinical Psychology*
from: Alabama A & M University

1990: *Doctor of Psychology Degree (Psy.D.)*
from: Forest Institute of Professional Psychology

2001: *Certification in Mental Disability Law*
from: New York Law School – Juris Alliance

**NOTE:** A more detailed document of *Continuing Education Credits and Workshop Presentation* activities can be made available upon request.

## Mental Health Work History (full-time employment):

08/76 until 12-80: *Department of Psychiatry, Huntsville Hospital*
**Positions:** Psychiatric Technician & Group Psychotherapist

12/80 until 09/86: *Huntsville-Madison County /Mental Health Center (HMC-MHC)*
**Positions:** Child & Family Therapist and Evaluator-Diagnostician

09/86 until 02/88: *Outpatient Satellite Clinic of HMC-MHC*
**Positions:** Employee Assistance Specialist and Psychotherapist, Psychological Test Evaluator & Consultant

02/88 until 12/95: *Private Practice at the Key Pastoral Counseling Center, Inc.*
**Positions:** Vice-President, Board of Directors (clinical staff of 12)
Forensic Evaluator & Marriage & Family Therapist
**Programs:** North Alabama Sex Offender Group Treatment Program
(established 03-1989 until present {two to four groups per week})

02/95 until 01/99: *Private Practice at 120 Holmes Ave. Huntsville, AL*
**Positions:** Psychologist, Marriage & Family Therapist, and Consultant
**Programs:** North Alabama Sex Offender Group Treatment Program
Domestic Violence Intervention Program (1995-1996)
North Alabama Sex Re-offense Prevention Program
(established in 06-1998 until 01-03 {grant completed})
Forensic Psychology Evaluation Services of Huntsville

01/99 until 10-03: *Private Practice at 111 Longwood Dr. Huntsville, AL*
**Positions:** Psychologist, Consultant, and Marriage & Family Therapist
**Programs:** Forensic Psychology Evaluation Services of Huntsville
North Alabama Sex Offender Group Therapy Program
North Alabama Sex Re-offense Prevention Program

10-03 until 09-08: *Solo Private Practice at 525 Fountain Row, Huntsville, AL*
**Positions:** Psychologist, Consultant, and Marriage & Family Therapist
**Programs:** Forensic Psychology Evaluation Services of Huntsville
North Alabama Sex Offender Group Therapy Program

09-08 until present *Solo Private Practice at 805 Madison St. Huntsville, AL*
**Positions:** Psychologist, Consultant, and Marriage & Family Therapist
**Programs:** Forensic Psychology Evaluation Service of Huntsville
North Alabama Sex Offender Group Therapy Program
Juvenile Sex Re-offense Prevention Group

**NOTE:** More detailed documents about *Mental Health Work Experience* and *Practicum & Internship Placements* can be made available upon request.

## Mental Health & Psychology Work Experiences (part-time work):

12/86 until 12/88: *Instructor of General Psychology*
**Employer:** John C. Calhoun Community College

06/93 until 01/95: *Psychologist at Southern Tennessee Psychology Associates*
**Independent Private Practice:** office in Fayetteville, Tennessee

## State and National Mental Health Certifications:

- Clinical Member, American Association for Marriage & Family Therapy (#18054)
- National Board for Certified Counselors, Inc., Certified Mental Health Counselor (#16677)
- Approval by the Alabama Department of Youth Services to evaluate and treat Juvenile Sex Offenders (2003 until 2013)

18

- Completed training toward certification in AL as a Forensic Examiner (AL: test & work sample are pending due to Taylor Hardin Secure Medical Facility scheduling)

## Professional Affiliations & Memberships:

- **American Psychological Association (APA #6894-0024) and affiliation in:**
  - Division 12: *Society of Clinical Psychology*
  - Division 17: *Society of Counseling Psychology*
  - Division 23: *Society of Consumer Psychology*
  - Division 29: *Psychotherapy*
  - Division 30: *Society of Psychological Hypnosis*
  - Division 35: *Society for the Psychology of Women*
  - Division 37: *Society for Child, Family Policy & Practice*
  - Division 41: *American Psychology - Law Society*
  - Division 43: *Society for Family Psychology*

- **Alabama Psychological Association (aPA)**
- **Association of Licensed Psychologist in Alabama (ALPA)**
- **American Society of Clinical Hypnosis (ASCH)**
- **North Alabama Association for Licensed Psychologists (NAALP)**
- **Society for Personality Assessment (SPA)**
- **Association of Family and Conciliation Courts (AFCC)**

## Awards, Honors, and Board Membership:

**1986:** Distinguished Service Award: Huntsville-Madison County Mental Health Center

**1990:** National Distinguished Service Registry: Counseling and Development

**1991:** Professional Service Award: American Mental Health Counselor's Association

**1995:** Certificate of Commendation: Madison County District Attorney's Office

**1998, 1999 & 2001:** Certificate of Appreciation: National Children's Advocacy Center

**2002:** Certificate of Appreciation: Crisis Services of Madison County

**1998-2004:** Board of Directors for National Children's Advocacy Center

## Clinical Interests & Private Practice Description:

Forensic (legal and mental health matters) psychology and marriage and family therapy are the primary areas of Dr. Preston's education and clinical experience. Social service agents, District, Circuit, and Federal Courts, prosecution and defense attorneys, law enforcement, private businesses, former clients, physicians, ministers, and mental health colleagues are his primary referral resources. He often works with individuals, couples, families, collateral sources, and groups as an evaluator, therapist, and consultant for a range of psychological and legally involved matters.

# CONTINUING EDUCATION HISTORY

## Frankie L. Preston, Psy.D.
**805 Madison Street, Suite 2-E,**
**Huntsville, AL  35801**
**Phone:  (256) 534-7107**
**Fax:  (256) 534-7886**

### May 1990 – November 2011

| | |
|---|---|
| **November 2-6, 2011** | **Contemporary Issues in Forensic Psychology:** American Academy of Forensic Psychology |

November 2-6, 2011

**Contemporary Issues in Forensic Psychology:**
American Academy of Forensic Psychology
- Advanced Topics in Criminal Forensic Evaluation
  *Presenter:  Alan Goldstein, Ph.D.*
- Violence Risk Assessment
  *Presenter:  Daniel J. Neller, Psy.D.*
- Law School Crash Course
  *Presenter:  Craig R. Lareau, J.D., Ph.D.*
- Insanity Defense Evaluations
  *Presenter:  Anita Schlank, Ph.D.*
- Preparation for Board Examination in Forensic Psychology
  *Presenter:  Richard DeMier, Ph.D.*
Place: Dallas, TX                    Hours  35

October 13-14, 2011

**Forensic Mental Evaluations**
AL Department of Mental Health
*Presenters:  Jerry Gragg, Psy.D.*
*            Heath Patterson, Ph.D.*
*            Nancy Jones, J.D.*
*            John Toppins, Ph.D.*
Place:  Tuscaloosa, AL              Hours:  12

December 8-12, 2010

**Contemporary Issues in Forensic Psychology:**
American Academy of Forensic Psychology
- Preparing for Board Certification
  *Presenter:  Alan Goldstein, Ph.D.*
- Developments in Risk Assessment:  Violence Risk
  And Sexual Violence Risk
  *Presenter:  Kirk Heilbrun, Ph.D.*
- Assessing Civil Competencies
  *Presenter:  Eric Drogin, J.D., Ph.D.*
- Ethical Issues for the Forensic Psychologist
  *Presenter:  Don Bersoff, J.D., Ph.D.*
- Evaluation of Competence to Stand Trial
  *Presenter:  Randy Otto, Ph.D.*
Place:  Philadelphia, PA            Hours:  35

March 26-27, 2010

**Contemporary Issues in Forensic Psychology:**
American Academy of Forensic Psychology
- Evaluation of Children in the Juvenile System
  *Presenter:  Debra Baeder, Ph.D.*
- Comprehensive Assessment of Malingering in Forensic
  Assessment
  *Presenter:  Richard Frederick, Ph.D.*
Place:  Atlanta, GA                 Hours:  14

**September 23-26, 2009**

**Contemporary Issues in Forensic Psychology:**
American Academy of Forensic Psychology
- Expert Testimony and Report Writing
  *Presenter:  Randy Otto, Ph.D.*
- Ethics in Forensic Practice
  *Presenter:  Gerry Koocher, Ph.D.*
- The Defendant:  Impact of Mental Disability in the Criminal Law Process
  *Presenter:  Michael Perlin, J.D.*
- Malingering and Forensic Practice:  Conceptual Issues & Clinical Methods
  *Presenter:  Richard Rogers, Ph.D.*

Place: Sarasota, FL                    Hours:  28

**May 20-23, 2009**

**Contemporary Issues in Forensic Psychology:**
American Academy of Forensic Psychology
- Advanced Topics in Criminal Forensic Psychology Practice
  *Presenter:  Alan M. Goldstein, Ph.D.*
- Police Psychological Assessments
  *Presenter:  Dave Corey, Ph.D.*
- Forensic Report Writing
  *Presenter:  Thomas Grisso, Ph.D.*
- Miranda Warnings and Waivers:  Conceptual Framework And Professional Practice
  *Presenter:  Richard Rogers, Ph.D.*

Place: Albuquerque, NM                 Hours:  28

**January 15-18, 2009**

**Contemporary Issues in Forensic Psychology:**
American Academy of Forensic Psychology
- Psychological Experts in Malpractice Litigation
  *Presenter:  Thomas Schacht, Psy.D.*
- Children, Divorce and Custody:  New Research and New Roles for Psychologists
  *Presenter:  Robert Emery, Ph.D.*
- Effective Expert Testimony:  Law and Practice
  *Presenter:  Charles Ewing, J.D., Ph.D.*
- Evaluation of Competence to Stand Trial
  *Presenter:  Randy K. Otto, Ph.D.*

Place: Charleston, SC                  Hours:  28

**September 17-20, 2008**

**Contemporary Issues in Forensic Psychology:**
American Academy of Forensic Psychology
- Advanced Topics in Criminal Forensic Assessment
  *Presenter:  Alan M. Goldstein, Ph.D.*
- Risk Assessment and Management in Probation and Parole Contexts
  *Presenter:  Jennifer Skeem, Ph.D.*
- Violence Risk Assessment & Management Using Structured Professional Judgement
  *Presenter:  Kevin Douglas, Ph.D., LL.B*
- Overview of the Hare Psychopathy Scales
  *Presenter:  Stephen Hart, Ph.D.*

Place: Las Vegas, NV                   Hours:  28

| | |
|---|---|
| **October 24-28, 2007** | **Contemporary Issues in Forensic Psychology:** American Academy of Forensic Psychology |

**October 24-28, 2007**

**Contemporary Issues in Forensic Psychology:**
American Academy of Forensic Psychology
- Ethics in Forensic Psychology
  *Presenter: Mary Connell, Ed.D., ABPP*
- Psycho-Legal Issues in Criminal Cases
  *Presenters: Christopher Slobogin, J.D., LLM*
- Excusing the New Excuses
  *Presenters: Stephen Morse, J.D., Ph.D., ABPP*
- Clinical Evaluation of Young Offenders and Youth Considered for Transfer to Adult Court
  *Presenters: Randall Salekin, Ph.D., ABPP*
- Preparing for Board Certification in Forensic Psychology  - ABPP
  *Presenters: Randall Price, Ph.D., ABPP*
Place:  St. Louis, MO          Hours: 35

**October 11-15, 2006**

**Contemporary Issues in Forensic Psychology:**
American Academy of Forensic Psychology
- Emerging Civil Law Issues
  *Presenters: John Petrila, J.D., LL.M., Ph.D.*
- Ethical Issues for the Forensic Practitioner
  *Presenters: Donald Bersoff, J.D., Ph.D*
- When Parents Kill:  Neonaticide, Infanticide, & Filicide
  *Presenters:  Geoffrey R. McKee, Ph.D.*
- Assessment for Parenting Planning in Child Custody Litigation
  *Presenters: Mary Connell, Ed.D.*
- Preparing for Board Certification in Forensic Psychology  - ABPP
  *Presenters: Eric Drogin, J.D., Ph.D*
Place:  Atlanta, GA          Hours: 35

**April 28-29, 2006**

**The Alabama Association for Marriage and Family Therapy:**
**2006 Annual Conference**
**Sexual Addiction Identification and Treatment**
- Sexual Addiction Keynote Address
  *Presenter: Douglas Weiss, Ph.D.*
- Ethics Workshop
  *Presenter: Dr. Scott Ketring*
- Workshop A:  Supervisor's Update
  *Presenter:  Dr. Tom Smith*
- Workshop C:  Psychopharmaceutical Treatment, Client Compliance and Referral
  *Presenter:  Stephen M. Taylor, M.D.*
Place: Tuscaloosa, AL.          Hours: 12

**June 15-18, 2005**

**The American Professional Society on the Abuse of Children:  13th**
**Annual Colloquium**
- Welcome
  Presenters:  Anthony Mannarino, Ph.D., President of APSAC & *Marilyn Roberts, Deputy of Administrator of OJJDP*
- Opening Plenary:  Culture, Class, and Consent in Sexual Exploitation and Trafficking
      *Presenter:  Sharon Cooper, MD*
- Providing Therapeutic Supervised Visitation for High Conflict Families – Positive Parenting Plus (PP +) Initiative
  *Presenter:  Mary Pulido, Ph.D.*
- Extended Forensic Evaluation of Children when Sexual Abuse is Suspected
  *Presenter:  Connie Carnes, MS, LPC*

- State-of-the-Art Child Interviewing:  How things have changed in the last 20 years
  *Presenters:  Patti Toth, J.D. & Laura Merchant, MSW*
- Evaluating the Quality of Forensic Interviewing:  Findings from a statewide pilot
  *Presenters:  Michael Haney, Ph.D.; Kee MacFarlane, MSW;  Ilene Berson, Ph.D.; Kathleen Faller, Ph.D.; & Jon Conte, Ph.D.*
- Parental Alienation Syndrome
  *Presenter:  Judy L. Rambur, Psy.D.*
- Current Treatment Approaches for Adolescent Sex Offenders
  *Presenter:  Barbara Bonner, Ph.D.*
- Safety vs. Risk:  Doing an Accurate Assessment
  *Presenters:  Lawrence Thompson, Jr., Ph.D., Michael Schneider, J.D., & Doris Thomas-Buckler*
- Assessing Parental Competency:  "How Good is Good Enough?"
  *Presenters:  Alyson McCain, PhD. & Pamela David Martin, Ph.D.*
- Collaborative Divorce and Its Benefits to the Children of Divorce
  *Presenters:  Judge William Knight, Edith Morris, J.D., Andrew K. Hoffman, CDFA & Alicia Pellegrin, Ph.D.*
- Introduction to the Expectations Test and Social Behavior Inventory with Child Abuse Populations
  *Presenter:  Kevin Gully, Ph.D.*

Place: New Orleans, LA            Hours:  15.75

| | |
|---|---|
| **April 29, 2005** | **The Alabama Association for Marriage and Family Therapy: 2005 Annual Conference** |

- EFT:  Basic Skills and Concepts
  *Presenters:  Drs. Margaret Keiley & Ting Liu*
- Ethics Workshop
  *Presenter:  Dr. Scott Ketring*

Place: Tuscaloosa, AL.            Hours: 9

| | |
|---|---|
| **May 20-23, 2004** | **Contemporary Issues in Forensic Psychology** |

American Academy of Forensic Psychology
- Forensic Consultation, Expertise & Testimony
  *Presenter:  Eric Drogin, J.D., Ph.D.*
- Forensic Mental Health Assessment:  Principles & Cases
  *Presenter:  Kirk Heilbrun, Ph.D.*
- A Conciliation/Evaluation Model for Child Custody
  *Presenter:  Robert Strochak, Ph.D.*
- Threat Assessment:  An Approach to Prevent Targeted Violence
  *Presenter:  Harley V. Stoke, Ph.D., ABPP*

Place: Nashville, TN.            Hours: 28

| | |
|---|---|
| **January 23, 2004** | **Alabama Association for Marriage and Family Therapists** |

- The Person of the Therapist in Supervision
  *Presenter:  Harry J. Aponte, LCSW, LMFT*

Place: Birmingham, AL.            Hours: 6

| | |
|---|---|
| **November 15-17, 2002** | **MMPI-2/MMPI-A Workshops & Symposia** |

University of Minnesota
- Introduction to MMPI-2
  *Presenter:  Yossef S. Ben-Porath, Ph.D.*
- MMPI-2 Validity Scales
  *Presenter:  Yossef S. Ben-Porath, Ph.D.*
- MMPI-2 Clinical Scales
  *Presenter:  John R. Graham, Ph.D.*
- MMPI-2 Code Types

*Presenter: John R. Graham, Ph.D.*
- Presenting MMPI-2 Findings in Court
  *Presenter: James N. Butcher, Ph.D.*
- Use of MMPI-2 in Criminal Court Evaluations
  *Presenter: Yossef S. Ben-Porath, Ph.D.*
- Use of MMPI-2 in Personal Injury Evaluations
  *Presenter: James N. Butcher, Ph.D.*
- Detecting Malingering in Forensic Evaluations with the MMPI-2
  *Presenter: Yossef S. Ben-Porath, Ph.D.*
- Using the MMPI-2 in Child Custody Cases
  *Presenter: John R. Graham, Ph.D.*
- MMPI-2 Case Presentation
  *Presenter: Yossef S. Ben-Porath, Ph.D.*
- Using the MMPI-2 in Correctional Facilities
  *Presenter: Edwin I. Megargee, Ph.D.*

Place: Tampa, FL          Hours: 18

| | |
|---|---|
| **May 3, 2002** | **Alabama Association for Marriage and Family Therapists** |

- Functional Family Therapy
  *Presenter: James F. Alexander, Ph.D.*

Place: Birmingham, AL          Hours: 6

**April 18-21, 2002**          **AAFP Intensive Review of Forensic Psychology:**
**Issues and Application**
American Academy of Forensic Psychology
- Advanced Ethical Issues: Witness Liability & Immunity
  *Presenter: Stuart Greenberg, Ph.D.*
- Witness Liability & Immunity – Continued Assessment of Malingering
  *Presenter: Stuart Greenberg, Ph.D. & Randy Otto, Ph.D.*
- Violence Risk Assessment
  *Presenter: Randy Otto, Ph.D.*
- Juvenile Civil Issues: Termination of Parental Rights
  *Presenter: Beth Clark, Ph.D.*
- Child Custody Examinations
  *Presenter: Beth Clark, Ph.D.*
- Personal Injury
  *Presenter: Stuart Greenberg, Ph.D.*
- Will Contests: Testamentary Capacity & Undue Influence
  *Presenter: William Foote, Ph.D.*
- Employment Discrimination: Sexual Harassment
  *Presenter: William Foote, Ph.D.*
- Americans with Disabilities Act
  *Presenter: William Foote, Ph.D.*
- Juvenile Justice/Declination Hearings
  *Presenter: Randy Otto, Ph.D.*
- Sex Offender Risk Assessment Criminal Forensic Psychology: Miranda Waivers
  *Presenter: Randy Otto, Ph.D. & Alan Goldstein, Ph.D.*
- Criminal Forensic: Miranda Waivers & *Mens Rea*
  *Presenter: Alan Goldstein, Ph.D.*
- Criminal Forensic: Capital Cases
  *Presenter: Alan Goldstein, Ph.D.*

Place: Atlanta, GA          Hours: 24

**May 18, 2001**          **Alabama Psychological Association**
Ethical Standards, Guidelines and Legal Liability
Place: Huntsville, AL          Hours: 6

| | |
|---|---|
| **May 5, 2001** | **ALAMFT Annual Conference** |
| | Conflict Resolution with Families |
| | *Presenter: Susan Heitler, Ph.D.* |
| | Hours: 6 |
| | Place: Guntersville, AL        NBCC #05209 |

| | |
|---|---|
| **May 5, 2001** | **ALAMFT Annual Conference** |
| | Building Legislative Relationships |
| | *Presenter: Tom Smith, Ph.D.* |
| | Hours: 1 |
| | Place: Guntersville, AL        NBCC #05209 |

| | |
|---|---|
| **May 4, 2001** | **ALAMFT Annual Conference** |
| | Know Your Professional Ethics Standards |
| | *Presenter: Wayne Perry, D. Min.* |
| | Hours: 3 |
| | Place: Guntersville, AL        NBCC #05209 |

| | |
|---|---|
| **May 4, 2001** | **ALAMFT Annual Conference** |
| | Overcoming Common Therapeutic Errors in Couples Treatment |
| | *Presenter: Susan Heitler, Ph.D.* |
| | Hours: 3 |
| | Place: Guntersville, AL        NBCC #05209 |

| | |
|---|---|
| **March 14, 2001** | 17th National Symposium on Child Sexual Abuse |
| | An Introduction to the National Benchbook of Psychiatric and |
| | Psychological Evidence & Testimony |
| | *Presenter: Frankie L. Preston, Psy.D.* |
| | Place: Huntsville, AL        Hours: 3 |

| | |
|---|---|
| **October 17, 2000** | **Sex Offender Re-Offense Risk Assessment** |
| | **Videotape Program & Home Study Examination** |
| | Sinclair Seminars |
| | *Supervisor: Heather E. Reu* |
| | Hours: 12 |

| | |
|---|---|
| **October 12, 2000** | **A View From the Shadows, Exposing the Minds of Child** |
| | **Sex Offenders** |
| | You Have the Power…Know How To Use it, Inc. |
| | *Presenters:   Frankie L. Preston, Psy.D.* |
| | *Nick Bailey, Attorney* |
| | *Bonnie Beneke, LCSW* |
| | *Carla Aaron, Program Coordinator* |
| | *Warren Thompson, Ph.D.* |
| | *Charlotte, Survivor of Child Sexual Abuse* |
| | • Participated in a documentary video that features interviews with incarcerated child sex offenders, adult survivors of child sexual abuse, and experts who work with both victim and offender. |
| | • Participated in a televised panel discussion for debut of film on November 1, 2000 in Nashville, Tennessee. |

| | |
|---|---|
| **September 18, 2000 –** | **Mental Disability Law Certification Program** |
| **January 21, 2001** | New York Law School |
| | *Instructors: Michael Perlin, J.D.; & Kerri Gould, J.D.* |
| | Place:  16 week course        Hours:  80 |
| | New York, New York |
| | (10/21-22/2000) |

26

Orlando, Florida
(1/20-21/2001)

| | |
|---|---|
| **September 14, 2000** | **A Decade and a Half:  Assessing & Treating Sex Offenders**<br>AL Association of Violence Intervention Programs<br>*Presenter:  Frankie L. Preston, Psy.D.*<br>Place:  Montgomery, AL        Hours:  1.5 |
| **June 8 -12, 2000** | **Criminal Forensic Assessment**<br>American Academy of Forensic Psychology<br>*Presenters:  Charles Patrick Ewing, J.D., Ph.D.,*<br>*Marsha Hedrick, Ph.D., and Randy Otto, Ph.D.*<br>Place:  San Juan, Puerto Rico        Hours:  21 |
| **May 6, 2000** | **Building on the Client's Story Line**<br>Alabama Association for Marriage & Family Therapy<br>*Presenter:  Sandra A. Rigazio-DiGilio, Ph.D.*<br>Place:  Guntersville, AL        Hours:    6 |
| **May 5, 2000** | **Supervisors' Working Group "Systemic Cognitive Developmental Supervision**<br>Alabama Association for Marriage & Family Therapy<br>Place:  Guntersville, AL        Hours:    2 |
| **May 5, 2000** | **Ethics Seminar "Ethical Issues in Marriage and Family Therapy"**<br>Alabama Association for Marriage & Family Therapy<br>*Presenter:  Frankie L. Preston, Psy.D.*<br>Place:  Guntersville, AL        Hours:    3 |
| **March 8 - 11, 2000** | **AAFP Intensive Review of Forensic Psychology:**<br>**Issues and Application**<br>American Academy of Forensic Psychology<br>• **Risk Assessment of Sexual Offenders**<br>  *Presenters:  Robert Meyer, Ph.D.*<br>  *Dennis Wagner, Ph.D.*<br>• **Child Custody Evaluations**<br>  *Presenter:  David Martindale, Ph.D.*<br>• **Assessment of Psychopathy:  An Overview**<br>  **of the Hare Scales**<br>  *Presenter:  Stephen Hart, Ph.D.*<br>Place:  New Orleans, LA   Hours:  21 |
| **January 14 - 16, 2000** | **AAFP Intensive Review of Forensic Psychology:**<br>**Issues and Application**<br>American Academy of Forensic Psychology<br>• **On the Same Page as the Judge:  Psychiatric &**<br>  **Psychological Evidence & Testimony Benchbook**<br>  *Presenter:  Eric Drogin, J.D., Ph.D.*<br>• **Comprehensive Child Custody Evaluations**<br>  *Presenter:  Steven Sparta, Ph.D.*<br>• **Personal Injury Evaluations:  Ethics, Case Law & Practice**<br>  *Presenter:  David Vore, Ph.D.*<br>Place:  Monterey, CA        Hours:  21 |
| **November 5-7, 1999** | **Advanced Rorschach:  Scoring & Interpretation**<br>*Presenter:  Phil Erdberg, Ph.D.*<br>Place:  Seattle, WA        Hours:  21 |

27

| | |
|---|---|
| **June 23-27, 1999** | **Rorschach Tutorial**<br>*Presenters: Barry Ritzler, Ph.D.; & Anthony Sciara, Ph.D.*<br>Place: Asheville, NC            Hours: 35 |
| **May 8, 1999** | **Revitalizing the Psychotherapy Art Form**<br>AL Association for Marriage and Family Therapy<br>*Presenter: Tracy Todd, Ph.D.*<br>Place: Guntersville, AL   Hours: 6.0<br>NBCC #05209 |
| **May 7, 1999** | **Strategies for Effectively Supervising SIT's**<br>*Presenter: AL Association for Marriage and Family Therapy*<br>Place: Guntersville, AL            Hours: 2.0<br>NBCC #05209 |
| **May 7, 1999** | **Ethical Issues in Marriage & Family Therapy**<br>*Presenter: AL Association for Marriage and Family Therapy*<br>Place: Guntersville, AL            Hours: 3.0<br>NBCC #05209 |
| **March 9-12, 1999** | **15th National Symposium on Child Sexual Abuse**<br>*Presenters: Multiple*<br>Place: Huntsville, AL            Hours: 13.5 |
| **January 8, 1999** | **SATIN - "Implications of New Community Notification Act for Juveniles"**<br>*Presenter: Frankie L. Preston, Psy.D.*<br>Place: Huntsville, AL            Hours: N/A |
| **November 16-18, 1998** | **Abel Assessment for Sexual Interest**<br>*Presenter: Gene Abel, Ph.D.*<br>Place: Atlanta, GA            Hours: Not Approved for CEU Credits |
| **May 2, 1998** | **Conversation Language & Possibilities – ALAMFT Annual Conference**<br>*Presenter: Harlene Anderson, Ph.D*<br>Hours: 5.5<br>NBCC #05422 |
| **April 24, 1998** | **Southeast Symposium on Family Violence**<br>*Presenter: Sarah M. Buel*<br>Place: Huntsville, AL            Hours: 1.4 |
| **March 17-20, 1998** | **14th National Symposium on Child Sexual Abuse**<br>*Presenters: Multiple*<br>Place: Huntsville, AL            Hours: 16 |
| **February 19 - 22, 1998** | **AAFP Intensive Review of Forensic Psychology: Issues and Application**<br>American Academy of Forensic Psychology<br>• **Preparing for the Diplomate Exam in Forensic Psychology**<br>  *Presenter: Paul D. Lipsitt, L.L.B., Ph.D.*<br>• **Intermediate & Advanced Forensic Practice**<br>  *Presenter: Robert G. Meyer, Ph.D.*<br>• **The MMPI-2 & Rorschach in Court**<br>  *Presenter: J. Reid Meloy, Ph.D. and Richard Lewak, Ph.D.* |

28

- **Achieving Expertise in Child Custody Evaluations**
  *Presenter:  Beth K. Clark, Ph.D.*
  Place:  San Diego, CA           Hours:  28

**June 20, 1997**

**Alabama Association of Violence Intervention:
Second Annual Meeting**
*Presenter:  Frankie L. Preston, Psy.D.*
Place:  Birmingham, AL           Hours:  (Not approved by APA or
                                 NBCC)

**May 16, 1997**

**V. A. Helping Families in Distress**
*Presenter:  Bill Hey, M..S.*
Place:  Huntsville, AL           Hours:  1.5
NBCC #5588

**April 4-5, 1997**

**Children's Justice Task Force**
*Family Reunification in Cases of Child Sex Abuse*
*Presenter:  Frankie L. Preston, Psy.D.*
Place:  Montgomery, AL

**October 11-12, 1996**

**Domestic Violence:  A Community Response**
Presenter:  Multiple
*Frankie L. Preston, Psy.D., presented a paper:*
*Problems with Traditional Therapy Approaches*
Place:  Montgomery, AL

**May 16, 1996**

**Solution Focused Therapy for Couples**
*Presenter: Michelle Weiner-Davis, MSW*
Place:  Redstone Arsenal, AL      Hours:  6.0
                                  NBCC #5184

**May 4, 1996**

**Constructing the Sexual Crucible**
*Presenter: David Schnarch, Ph.D.*
Place:  Birmingham, AL            Hours:  6.0
                                  NBCC #5184

**April 19, 1996**

**Eating Disorders, A Multidisciplinary Approach**
*Presenter:  Ralph E. Carson, Ph.D.*
Place:  Huntsville, AL            Hours:  1.0
                                  NBCC #5588

**March 27-29, 1996**

**12th National Symposium on Child Sexual Abuse**
*Presenters:  Multiple Presenters/Sessions*
Frankie L. Preston, Psy.D. presented 2 papers:  *Classification Schemas*
*for Child Sex Offenders & Reunification Considerations for Incest Type*
*Offenders*
Place:  Huntsville, AL            Hours:   22.0
                                  NBCC #5184

**January 25, 1996**

**Stop the Hurt Annual Conference**
*Classification & Assessment Schema/Planning Treatment*
*Programs for Sex Offenders*
*Presenter:  Frankie L. Preston, Psy.D.*
       *G. Damon Nolin, M.Div.*
Place:  Tupelo, MS               Hours:  NASW Approved for 3
                                 hours ***

| | |
|---|---|
| **January 20-22, 1996** | **Second International Symposium on Child Custody Evaluations**<br>*Presenters: Multiple*<br>Place: Clearwater Beach, FL    Hours: 17 |
| **November 16-17, 1995** | **Domestic Violence Intervention Program Training**<br>*Presenter: Larry Devers, M.S.W.*<br>Place: Tuscaloosa, AL    Hours: 10 |
| **November 2-4, 1995** | **AAMFT 53rd Annual Conference**<br>*Presenters: Multiple Presenters/Sessions*<br>    * *Serious Mental Illness: Treating It & Coping with It*<br>    * *Gender & Cultural Issues in MFT Supervision & Training*<br>    * *Helping Single Parent Families*<br>    * *Going Nowhere Fast: Redirecting "Chronically Stuck" Cases*<br>    * *MFT Supervision: Evaluating & Managing Critical issues*<br>    * *Forces of Change in Mental Health Care Delivery*<br>    * *Group Supervision: Competence, Creativity & Courage*<br>    * *Family Therapy Supervision: Hierarchical or Collaborative*<br>    * *Alcohol and The Family*<br>    * *Using Clients' Voices in Clinical Supervision*<br>Place: Baltimore, MD    Hours: 21 |
| **October 20, 1995** | **Forensic Interviewing of Child Sex Abuse Victims**<br>*Presenter: Charles Wilson*<br>Place: Huntsville, AL    Hours: 1.0<br>    NBCC#5588 |
| **September 30, 1995** | **Alabama Association of Post Anesthesia Nurses Annual Conference**<br>**Stress Management & Change**<br>*Presenter: Frankie L. Preston, Psy.D.*<br>Place: Huntsville, AL |
| **September 7-8, 1995** | **Treating Families in Transition & Crisis**<br>*Presenter: Frank Pittman III, M.D.*<br>Place: Redstone Arsenal, AL    Hours: 12.0 |
| **April 1, 1995** | **Successful Group Formation - Madison County Medical Society**<br>*Presenter: Tom Smolie, Attorney*<br>Place: Huntsville, AL    Hours: 6.0 |
| **March 23 - 25, 1995** | **AAFP Intensive Review of Forensic Psychology: Issues and Application**<br>American Academy of Forensic Psychology<br>  &bull; **Use of Third Party Information in Forensic Assessment**<br>    *Presenters: Kirk S. Heilbrun, Ph.D.*<br>    *Janet Warren, D.S.W.*<br>  &bull; **The Role of the Forensic Psychologist in Death Penalty Litigation**<br>    *Presenter: James R. Eisenberg, Ph.D.*<br>  &bull; **Forensic Neuropsychological Assessment**<br>    *Presenter: Stephen Honor, Ph.D.*<br>Place: Atlanta, GA    Hours: 18 |

**March 1-4, 1995**
11th National Symposium on Child Sexual Abuse
*Presenter:  Multiple Presenters/Sessions*
Place: Huntsville, AL          Hours: 19
NBCC #05184

**February 23 - 25, 1995**
AAFP Intensive Review of Forensic Psychology:
Issues and Application
American Academy of Forensic Psychology
- **Evaluation and Treatment Planning for Sex Offenders**
  *Presenter:  Christopher S. Norris, Ph.D.*
- **Personal Injury Evaluation:  Ethics, Practice & Case Law**
  *Presenter:  Stuart Greenberg, Ph.D.*
- **Child Sexual Abuse Evaluation:  An Overview of Research Assessment Issues and Legal Applications**
  *Presenter:  Mike Maloney, Ph.D.*
Place:  Nashville, TN          Hours:  18

**December 12, 1994**
Courtroom Survival Techniques –
Power & Control of the Witness Stand
*Presenter: M. J. Schingle*
Place:  Birmingham, AL          Hours:  6

**November 10-13, 1994**
Clinical Hypnosis:  Advanced
*Presenter:  Hammond, Linden & Scott*
Place:  Birmingham, AL          Hours: 20.5

**November 5-7, 1994**
First International Symposium on Child Custody
Evaluations
*Presenters:  Multiple*
Place:  Tucson, AZ          Hours:  14

**September 15-16, 1994**
Working with Difficult Couples
*Presenter:  Neil S. Jacobson, Ph.D.*
Place:  Redstone Arsenal, AL          Hours:  12

**August 18, 1994**
Alabama Crime Victim's Fund
*Presenter:  Ms Kathy Romans*
Place:  Huntsville, AL          Hours:  1.0

**July 8, 1994**
Play Therapy Canadian Style
*Presenter: Ethel Amacher*
Place:  Huntsville, AL          Hours:  1.0
NBCC #5464

**June 10, 1994**
Liability, Malpractice & Record Keeping
*Presenter:  Frankie L. Preston, Psy.D.*
Place:  Huntsville, AL          Hours:  1.0
NBCC #5464

**May 13, 1994**
Music Therapy with Abuse Victims
*Presenter:  Andrea Lowrey, M.A., RTM-BC*
Place:  Huntsville, AL          Hours:  1.0

**May 9, 1994**
Personality Assessment Inventory Workshop
*Presenter:  Leslie C. Morey, Ph.D.*
Place:  Huntsville, AL          Hours:  3.0
APA:  Category I

| | |
|---|---|
| **April 29, 1994** | **Mental Health and the Law**<br>***Treatment Rights & Professional Obligations***<br>*Presenter: Mark S. Likos*<br>Place: Birmingham, AL<br>Hours: 3.0<br>NBCC #5592 |
| **March 10 - 13, 1994** | **41st Annual Conference – American Psychology Law Society APA, Division 41**<br>• **Liability and Malpractice: A Survival Guide for the Practicing Clinician**<br>*Presenter: David L. Shapiro, Ph.D.*<br>• **Battered Women & Rape Trauma Syndrome As Forensic Issues**<br>*Presenter: Diane R. Follingstad, Ph.D.*<br>Place: Santa Fe, NM        Hours: 12 |
| **February 23-25, 1994** | **10th National Symposium on Child Sexual Abuse**<br>*Presenters: Multiple Presenters/Sessions*<br>Place: Huntsville, AL        Hours: 23.0 |
| **February 17, 1994** | **1994 Interagency Conference on Youth**<br>***Outpatient Treatment for Adolescent Sex Offenders***<br>*Presenter: Frankie L. Preston, Psy.D.*<br>Place: Montgomery, AL   Hours: 1.5 |
| **January 20 - 22, 1994** | **AAFP Intensive Review of Forensic Psychology: Issues and Application**<br>American Academy of Forensic Psychology<br>• **Diagnostic & Structured Interviewing: Applications to Forensic Evaluations**<br>*Presenter: Richard Rogers, Ph.D.*<br>• **Preparing for the Diplomate Exam in Forensic Psychology - ABPP**<br>*Presenter: Ira Packer, Ph.D.*<br>• **Forensic Assessment of Juveniles**<br>*Presenter: Thomas Grisso, Ph.D.*<br>Place: Hilton Head, SC        Hours: 18 |
| **November 5, 1993** | **Reunification Issues Related to Sex Offenders & Their Families**<br>*Presenters: G. Damon Nolin, M.Div.; Julie Kastanakis, M.S.;*<br>*& Douglas Cook, M.A.*<br>Place: Huntsville, AL        Hours: 1.0<br>NBCC #5464 |
| **October 28, 1993** | **Pastoral Care Day**<br>***Partners in Healing***<br>*Presenter: Pamela Couture, Ph.D.*<br>***When It is Hard to Say No***<br>*Presenter: Dr. Peter M. Sims, M.D.*<br>***Motivation & Self Discipline***<br>*Presenter: J. Thomas Sandy, Psy.D.*<br>Place: Huntsville, AL        Hours: 4.0<br>NBCC #5464 |

| | |
|---|---|
| October 16-17, 1993 | **Forensic Evaluations & Forensic Applications of the MMPI & MMPI-2**<br>*Presenters: Stuart A. Greenberg, Ph.D., ABPP & Kevin L. Moreland, Ph.D.*<br>Place: Montgomery, AL          Hours: 13.5 |
| April 26, 1993 | **Sexual Abuse Intervention:  Advanced Training in the Multidisciplinary Approach**<br>*Child Sex Offender Typologies*<br>*Presenter:  Frankie L. Preston, Psy.D.*<br>Place: Huntsville, AL          Hours:  3.0 |
| March 10-12, 1993 | **9th National Symposium for Child Sexual Abuse**<br>*Presenters:  Nicholas Groth, Ph.D. & Kenneth Lanning, et al.*<br>Place: Huntsville, AL          Hours:  26<br>                                   NBCC #5184 |
| November 24, 1992 | **Dual Diagnosis Update & Current Relapse Concepts**<br>Hours:  30 |
| October 29, 1992 | **What is ADHD Anyway?**<br>*Presenter:  Peter M. Sims, M.D.*<br><br>**Attitudes, Ethics & Pastoral Caregiving**<br>*Presenter:  C. Roy Woodruff, Ph.D.*<br>Hours:  2.5<br>NBCC #5464 |
| September 11-12, 1992 | **Neurofeedback Treatment of Attention Deficit Hyperactivity Disorder**<br>*Presenter:  Joel F. Lubar, Ph.D. & Judith O. Lubar, Ph.D.*<br>Place: Knoxville, TN          Hours:  13 |
| July 9-12, 1992 | **Clinical Hypnosis Workshop-Advanced**<br>*Presenter:  D. Corydon Hammond*<br>Place: Monterey, CA          Hours:  20 |
| May 14-17, 1992 | **Clinical Hypnosis Workshop – Intermediate**<br>*Presenter:  Gary Elkins, Ph.D.*<br>Place: Atlanta, GA          Hours:  20 |
| May 1-2, 1992 | **Alabama Association for Marriage & Family Therapy**<br>*Presenter:  Nick Stinnett, Ph.D.*<br>Place: Atlanta, GA          Hours:  5 |
| February 7, 1992 | **Building Bridges "92" – Alabama A&M University**<br>*Presenters:  Frankie L. Preston, Psy.D.;  Margaret Bibb, M.S.; & Pat Quirk, M.S.*<br>Place: Huntsville, AL          Hours:  6 |
| February 1, 1992 | **Treating the Borderline Client**<br>*Presenter:  Jerome L. Kroll, M.D.*<br>Place: Huntsville, AL          Hours:  6.0 |
| September 25-29, 1991 | **Psychology Licensure Review Association for Advanced Training in the Behavioral Sciences**<br>*Presenters:  Louis Chandler, Ph.D.; Diane Edwards, Ph.D.; & David Powell, Ph.D.*<br>Place: Atlanta, GA          Hours:  40 |

| | |
|---|---|
| **March 20-22. 1991** | **7th National Symposium on Child Sexual Abuse**<br>*Presenters:  Frankie L. Preston, Psy.D. & G. Damon Nolin, M.Div.*<br>*Multiple Presenters/Sessions*<br>Place:  Huntsville, AL          Hours:  23 |
| **March 16, 1991** | **Adlerian Therapy:  Theory & Practice**<br>*Presenter:  Raymond Corsini, Ph.D.*<br>Place:  Huntsville, AL          Hours:  6 |
| **February 1, 1991** | **Building Bridges:  Promoting Teamwork Among Counseling Professionals**<br>*Presenter:  Frankie L. Preston, Psy.D. & Eidele Sainker, Ed.S.*<br>Presented a Clinical Paper:  *"The Ideal Team, A Case Study*<br>Place:  Huntsville, AL          Hours:  6 |
| **October 6, 1990** | **Counseling & Psychotherapy:  A Rational-Emotive Approach**<br>*Presenter:  Albert Ellis, Ph.D.*<br>Place:  Huntsville, AL          Hours:  3 |
| **May 4-5, 1990** | **The Responsibility Trap**<br>*Presenter:  JoAnn Krestan, M.A. & Claudia Bepko, M.S.W.*<br>Place:  Birmingham, AL          Hours:  13 |



BREANA OLIVER REG 99 16160
UNITED STATES PENITENTIARY
P O BOX 5000
YAZOO CITY, MS 39194

⇔26299-001⇔
U S District Court
Office of the Clerk
100 N Palafox ST
Pensacola, FL 32502
United States

CHECKED DEC 0 6 2019

# Order Adopting Second Report and Recommendation

# Doc. 51

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**BRIAN CULVER,**

     **Plaintiff,**

**v.**                                          **Case No. 5:18cv160-TKW-HTC**

**FEDERAL BUREAU OF PRISONS, et al.,**

     **Defendants.**

_____/

## <u>O R D E R</u>

This case is before the Court based upon the magistrate judge's Second Report and Recommendation (Doc. 48), Plaintiff's objections (Doc. 49), Plaintiff's motion for clarification (Doc. 47), and Plaintiff's motion for expert witness and submission of recidivism report (Doc. 50).  Based upon my de novo review of the issues raised in the objections, I agree with the magistrate judge's determination and Plaintiff's claims for declaratory and injunctive relief are due to be dismissed for failure to state a claim.  This ruling renders the motion for clarification and the motion for expert witness and submission of recidivism report moot.  Accordingly, it is

     **ORDERED** that:

1.    The magistrate judge's Second Report and Recommendation is adopted and incorporated by reference in this Order.

2.      The claims for declaratory and injunctive relief in Plaintiff's amended

complaint (Doc. 37) are **DISMISSED with prejudice.**

3.      The motion for clarification (Doc. 47) and the motion for expert witness

and submission of recidivism report (Doc. 50) are **DENIED as moot**.

4.      The Clerk shall close the case file.

**DONE and ORDERED** this 9th day of December, 2019.

*T. Kent Wetherell, II*

**T. KENT WETHERELL, II**
**UNITED STATES DISTRICT JUDGE**

2

# Notice of Appeal

# Doc. 53

FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

BRIAN CULVER,
     Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,                        Case No. 5:18-CV-160-TKW-HTC
SHANNON D. WITHERS, Warden,
STEPHANIE RUSH, Chief Psychologist,
RAMON RIVERA, SOMP Coordinator,
MICHELLE PROULX, SOMP Psychologist,
ADAM MCCORD, SCSS (Acting Warden)
     Defendants.


## PLAINTIFF'S NOTICE OF APPEAL

Comes now plaintiff, Brian Culver, to enter this Notice of Appeal for the above listed case.  Plaintiff is appealing all appealable issues in this case.  Plaintiff is pro se and unskilled in the law therefore please construe this notice as being a notice to appeal every aspect of this case that is appealable.


Respectfully,

Brian Culver 26299-001


LED USDC FLND PN
EC 23 '19 PM 3:46

CERTIFICATE OF SERVICE

I, Brian Culver, certify that a true and accurate copy of this submission was served upon:

U.S. Attorney's Office
Attn: Herbert S. Lindsey
111 North Adams Street
Tallahassee, FL 32301

by placing said copy in the prison legal mail system here at USP Yazoo City on this 18TH day of DECEMBER 2019 with postage paid.

Brian Culver

Bryan Chavez 26299-001
United States Penitentiary
Po Box 5000
Yazoo City, MS 39194

JACKSON MS 390

10 DEC 2019 PM 5 L

CHECKED DEC 2 3 2019

LEGAL MAIL

FEDERAL CORRECTIONAL COMPLEX
P.O. BOX 5606
YAZOO CITY, MS 3919

THE ENCLOSED LETTER WAS PRI
ON 12-13-19 THROUGH SPEC
MAILING PROCEDURES.

The letter has neither been opened or
the writer raises a question or proble
this facility has jurisdiction, you may w
return the material for further informa
clarification. If the writer encloses
correspondence for forwarding to anot
addressee, please return the enclosure to the above
address.

<26299-001<>
U S District Court
Office of the Clerk
100 N Palafox ST
Pensacola, FL 32502
United States

32502-4E3900

CHECKED DEC 2 3 2019

LEGAL MAIL

LEGAL MAIL

# Motion for Leave to Proceed
# In Forma Pauperis

# Doc. 57

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

BRIAN CULVER,
   Plaintiff,

v.                                                Case No. 5:18-CV-160-TKW-HTC

FEDERAL BUREAU OF PRISONS,
SHANNON D. WITHERS, Warden,
STEPHANIE RUSH, Chief Psychologist,
RAMON RIVERA, SOMP Coordinator,
MICHELLE PROULX, SOMP Psychologist,
ADAM MCCORD, SCSS (Acting Warden)
   Defendants.

### PLAINTIFF'S MOTION TO PROCEED IN FORMA PAUPERIS

Comes now plaintiff, Brian Culver, to request permission to proceed in forma pauperis in the appeal of the

above listed case.  Plaintiff was declared a pauper for this case at the district level and nothing has changed

in his financial situation.

Respectfully,

Brian Culver 26299-001

FILED USDC FLND PN
JAN 10 '20 PM 12:12

CERTIFICATE OF SERVICE

I, Brian Culver, certify that a true and accurate copy of this submission was served upon:

U.S. Attorney's Office
Attn: Herbert S. Lindsey
111 North Adams Street
Tallahassee, FL 32301

by placing said copy in the prison legal mail system here at USP Yazoo City on this 8TH day of JANUARY 2020 with postage paid.

Brian Culver

John Fitzgerald Kennedy
1917-1963

CHECKED JAN 10 2020

Brian Culver 26299-001
United States Penitentiary
Po Box 5000
Yazoo City, MS 39194

<26299-001<>
U S District Court
Office of the Clerk
100 N Palafox ST
Pensacola, FL 32502
United States

32502-483900

# Order Denying Motion for Leave to Proceed In Forma Pauperis

# Doc. 58

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

BRIAN CULVER,

     Petitioner,

v.                                      Case No. 5:18cv160-TKW-HTC

FEDERAL BUREAU OF PRISONS, et al.,

     Respondents.
_____/

## ORDER

This matter is before the court on Plaintiff's motion to proceed *in forma pauperis* on appeal.  ECF Doc. 57.  Plaintiff, a prisoner, claims his constitutional rights were violated when family photos of his nephews were confiscated from him pursuant to a sex offender management program ("SOMP") institution supplement. ECF Doc. 43 at 2.  As discussed in the Magistrate Judge's Order and Report and Recommendation and Second Report and Recommendation (ECF Docs. 43, 48), which were adopted by this Court (ECF Docs. 46, 51), however, Plaintiff failed to state a claim for injunctive or monetary relief against the Federal Bureau of Prisons ("BOP") or the individual BOP employees under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) or the Administrative Procedures Act ("APA").

Specifically, Plaintiff's constitutional claims are not ones to which *Bivens* has been extended and, regardless, there has been no constitutional violation because the SOMP supplement at issue is reasonably related to a penological interest.  *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859 (2017); *Turner v. Safley*, 482 U.S. 78 (1987). Additionally, Congress expressly exempted BOP decisions pertaining to SOMP institutions from judicial review under the APA.  *See* 18 U.S.C. § 3625; *Cook v. Wiley*, 208 F.3d 1314, 1319 (11th Cir. 2000); *Wise v. Samuels*, No. 2:12CV696, 2014 WL 1280975, at *6 (E.D. Va. Mar. 26, 2014).  Accordingly, pursuant to 28 U.S.C. § 1915 and Fed. R. App. P. 24(a), this Court hereby certifies that this appeal is NOT taken in good faith and Plaintiff is NOT entitled to proceed on appeal *in forma pauperis*.  *See Napier v. Preslicka*, 314 F.3d 528, 531 (11th Cir. 2002) (finding an action is not brought in good faith if it is "without arguable merit either in law or fact").

Moreover, the Federal Rules of Appellate Procedure require that the individual seeking to appeal *in forma pauperis* submit with his motion a statement of good faith issues to be appealed.  Fed. R. App. P. 24(a)(1)(C) ("The party must attach an affidavit that… states the issues that the party intends to be present on appeal.").  Here, Plaintiff does not include a statement of the issues on appeal, and instead, states simply that he is appealing "all appealable issues in this case."  ECF Doc. 57; *see, e.g., Lopez v. City of Orlando*, No. 615CV900ORL22DCI, 2017 WL

5239447, at *1 (M.D. Fla. Jan. 23, 2017) ("Plaintiff failed to advise the Court of the purported issues on appeal"), *report and recommendation adopted*, No. 615CV900ORL22DCI, 2017 WL 5239448 (M.D. Fla. Feb. 8, 2017); *Schwab v. Kerr*, No. 14-3119, 2016 WL 287011, at *2 (C.D. Ill. 2016) ("A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith." (emphasis in original)); *Delor v. Clearwater Beach Development, LLC*, 2007 WL 9723640 *1 (M.D. Fla. Oct. 23, 2007).

For the reasons set forth in the Magistrate Judge's Order and Report and Recommendation (ECF Doc. 43) and Second Report and Recommendation (ECF Doc. 48), and the District Judge's Orders (ECF Docs. 46, 51), which adopted and incorporated the recommendations over Plaintiff's objections (ECF Docs. 45, 49), the Court holds that this appeal is not taken in good faith.  Accordingly, it is

**ORDERED** that:

1.     Plaintiff's motion for leave to proceed *in forma pauperis* on appeal (ECF Doc. 57) is **DENIED**.

2.     Plaintiff shall pay the full appellate filing fee of $505.00 within **thirty (30) days** from the date of this order.

3.     The Clerk is directed to send a copy of this order to the United States Court of Appeals for the Eleventh Circuit.

**DONE AND ORDERED** this 21st day of January, 2020.

*T. Kent Wetherell, II*

**T. KENT WETHERELL, II**
**UNITED STATES DISTRICT JUDGE**

# USCA Order Granting Motion for Leave to Proceed In Forma Pauperis

# Doc. 63

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

May 08, 2020

Brian Scott Culver
USP Yazoo City - Inmate Legal Mail
PO BOX 5000
YAZOO CITY, MS 39194

Appeal Number:  19-15160-E
Case Style:  Brian Culver v. Shannon Withers, et al
District Court Docket No:  5:18-cv-00160-TKW-HTC

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.**

The enclosed order has been ENTERED.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Gloria M. Powell, E
Phone #: (404) 335-6184

MOT-2 Notice of Court Action

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-15160-E

_____

BRIAN SCOTT CULVER,

Plaintiff-Appellant,

versus

SHANNON WITHERS,
STEPHANIE RUSH,
Chief Psychologist,
RAMON RIVERA,
SOMP Coordinator,
MICHELLE PROULX,
SOMP Psychologist,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

ORDER:

Brian Culver, a federal prisoner, filed an amended civil complaint against the Federal

Bureau of Prisons, Warden Shannon D. Withers, Chief Psychologist Stephanie Rush, Sex Offender

Management Program ("SOMP") Coordinator Ramon Rivera, SOMP Psychologist

Michelle Prolux, and Acting Warden Adam McCord (collectively, the "prison officials").  Culver

challenged a policy, unique to Federal Correctional Institution Marianna, that banned all sex

offenders from possessing photos of any minor child who was not the biological or adopted child

of the inmate, whereby the prison had rejected photographs of his nephews.  He stated that he was

challenging the policy under *Bivens*,[1] as violative of various constitutional rights, and the Administrative Procedure Act, as outside the scope of FCI Marianna's authority to supplement the rules of the Federal Bureau of Prisons. He requested declaratory and injunctive relief, as well as compensatory and punitive damages.

The prison officials moved to dismiss Culver's claims for monetary relief under Fed. R. Civ. P. 12(b)(6), and a magistrate judge issued a report and recommendation ("R&R"), recommending that the district court grant the motion because the claims for monetary relief were not cognizable under *Bivens*, as the prison's photo policy met the reasonableness standard for prison regulations. Culver objected to the R&R, arguing that the policy was unreasonable because there were less restrictive alternatives to accomplish the prison's goal of reducing recidivism, such as permitting photos of minors who were on the inmate's approved visitor list. He also argued that existing SOMP procedures allowed officers to restrict individual inmates from possessing otherwise appropriate photos if the inmate used them to engage in risk relevant behavior. The district court adopted the R&R over Culver's objections, and dismissed the claims for monetary relief with prejudice because the policy was constitutional.

Subsequently, the magistrate judge issued a second R&R, recommending that the district court *sua sponte* dismiss the claims for injunctive and declaratory relief under 28 U.S.C. § 1915A(b)(1) for failure to state a claim because the district court already had determined that the SOMP policy was constitutional, and Culver could not state a claim for injunctive or declaratory relief under *Bivens* absent a constitutional violation. The district court adopted the R&R over Culver's objections, dismissed his claims for injunctive and declaratory relief with prejudice, and later denied him leave to proceed on appeal.

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

Culver now moves for leave to proceed on appeal.  Because the district court assessed the filing fee, and Culver has consented to paying it, the only remaining issue regarding his motion for leave to proceed is whether an appeal would be frivolous.  28 U.S.C. § 1915(e)(2)(B).  "[A]n action is frivolous if it is without arguable merit either in law or fact."  *Napier v. Preslicka*, 314 F.3d 528, 531 (11th Cir. 2002) (quotation marks omitted).

The same standards apply to dismissals for failure to state a claim under both Fed. R. Civ. P. 12(b)(6) and § 1915A.  *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278–79 (11th Cir. 2001).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege sufficient facts to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Under *Bivens*, prisoners may bring civil actions against federal officers for the violation of their constitutional rights.  *Behrens v. Regier*, 422 F.3d 1255, 1263 n.15 (11th Cir. 2005).  To determine if a prison policy is constitutional, the district court must determine whether the policy is "reasonably related to legitimate penological interests."  *Turner v. Safely*, 482 U.S. 78, 89 (1987).  "[T]he existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns."  *Id.* at 90.

Here, Culver offered several readily available alternatives to the prison's policy, which arguably supported a facially valid constitutional claim that was sufficient to survive both the Rule 12(b)(6) motion to dismiss and preliminary review under § 1915A.  *Iqbal*, 556 U.S. at 678; *Turner*, 482 U.S. at 90.  Accordingly, his motion for leave to proceed on appeal is GRANTED because he can raise at least one non-frivolous issue on appeal.

__/s/ Kevin C. Newsom__
UNITED STATES CIRCUIT JUDGE

# Certificate of Service

# COS

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing pleading has been mailed to Brian S. Culver, Register No. 26299-001at USP Yazoo City, PO Box 5000, Yazoo City, MS  39194 on this the 15th day of September, 2020.

*/s/ Herbert S. Lindsey*                    .
HERBERT S. LINDSEY
Assistant United States Attorney